1  Charles A. Jones, Esq., SBN 6698
2  Kelly McInerney, Esq., SBN 7443
   JONES LAW FIRM
3  9585 Prototype Court, Suite B
   Reno, Nevada 89521
4  Telephone: (775) 853-6440
   Facsimile:  (775) 853-6445
5  Caj@cjoneslawfirm.com
   Kelly@cjoneslawfirm.com
6
7  Attorneys for Plaintiffs

8

9                    UNITED STATES DISTRICT COURT

10                   FOR THE DISTRICT OF NEVADA

11

12  ERNESTO AMADOR, and LUIS              Case No. 3:15-CV-00022-HDM-VPC
    ANGUIANO, as individuals, and on behalf of
13  all others similarly situated,        **STIPULATION AND [~~PROPOSED~~]**
                                          **ORDER ALLOWING PLAINTIFFS**
14                                        **TO FILE THIRD AMENDED**
                  Plaintiffs,             **COMPLAINT**
15
                  v.
16
17  BULLY'S SPORTS BAR & GRILL, INC., a
    Nevada Corporation, and SHARLING "JO"
18  SONNER, and individual.
19
20                Defendants.
21
22
23        Plaintiffs ERNESTO AMADOR and LUIS ANGUIANO ("Plaintiffs") and Defendants

24  BULLY'S SPORTS BAR & GRILL, INC., and SHARLING "JO" SONNER ("Defendants"), by

25  and through their undersigned counsel, hereby agree and stipulate as follows:

26  1.    Pursuant to Fed. R. Civ. P. 15(a)(2) the Parties stipulate (and Defendants consent) to the

27  filing of Plaintiffs' Proposed Third Amended Complaint, attached hereto as Exhibit 1.

28

---
                                    1
        STIPULATION ALLOWING PLAINTIFFS TO FILE THIRD AMENDED COMPLAINT

2.      The Parties also stipulate that the deadline for Defendants to file their Answer to the Third Amended Complaint shall be thirty days from the date this stipulation and order is filed.

    This stipulation is sought in good faith and not for the purposes of delay.

**IT IS SO STIPULATED:**

Dated September 12, 2016                    JONES LAW FIRM

                                           By:  /s/ Charles A. Jones
                                           Charles A. Jones, Esq.
                                           Attorneys for Plaintiff

Dated September 12, 2016                    HOLLAND & HART LLP

                                           By:  /s/ Anthony Hall
                                           Anthony Hall, Esq.
                                           Attorneys for Defendant

                                           **IT IS SO ORDERED:**

                                           _Howard D. McKibben_
                                           United States District Court Judge

                                           DATED:  September 21, 2016

## CERTIFICATE OF SERVICE

I, the undersigned, declare as follows:

I am employed in the County of Washoe, State of Nevada.

I am over the age of eighteen (18) years and not a party to the within action; my business address is 9585 Prototype Court, Suite B, Reno Nevada, 89521.

On September 14, 2016, I served the foregoing documents describes as:

1.    STIPUATION AND [PROPOSED] ORDER ALLOWING PLAINITFFS TO FILE THIRD AMENDED COMPLAINT.

on all interested parties in this action addressed to the addressee as follows:

R. Calder Huntington, Esq.
Anthony L. Hall
AHall@hollandhart.com
RCHuntington@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Suite 200
Reno, Nevada 89511
*Attorneys for Defendant*

___X___   VIA ELECTRONIC MAIL.

I declare under penalty of perjury under the laws of the State of Nevada that the above is true and correct.

Executed on September 14, 2016, at Reno, Nevada.


Nikki Coverston

# EXHIBIT 1

Charles A. Jones, Esq., SBN 6698
Kelly McInerney, Esq., SBN 7443
JONES LAW FIRM
9585 Prototype Court, Suite B
Reno, Nevada 89521
Telephone: (775) 853-6440
Facsimile: (775) 853-6445
Caj@cjoneslawfirm.com
Kelly@cjoneslawfirm.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ERNESTO AMADOR, LUIS ANGUIANO, and JUAN CARLOS "VICTOR" MARTINEZ as individuals, and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>BULLY'S SPORTS BAR & GRILL, INC., a Nevada Corporation, and SHARLING "JO" SONNER, an individual.<br><br>Defendants. | Case No. 3:15-CV-00022-HDM-VPC<br><br>**PLAINTIFFS' THIRD AMENDED COLLECTIVE ACTION COMPLAINT FOR:**<br><br>1) Failure to Pay Wages for All Hours Worked in Violation of 29 U.S.C. § 201 *et seq*.<br><br>2) Failure to Pay Overtime in Violation of 29 U.S.C. § 207. |

Plaintiffs ERNESTO AMADOR, LUIS ANGUIANO and JUAN CARLOS "VICTOR" MARTINEZ on behalf of themselves and all others similarly situated allege the following:

1.     This case is brought as a collective action pursuant to 29 U.C.S. § 216(b) of the Fair Labor Standards Act ("FLSA") which states: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for

and on behalf of himself or themselves and other employees similarly situated." As alleged in detail herein, Plaintiffs allege that Defendants uniformly misclassified their "Kitchen Managers" "Assistant Kitchen Managers," and "Cooks" as exempt from overtime under the FLSA. This action is brought to recover unpaid wages, unpaid overtime, liquidated damages, penalties, costs of suit and attorney's fees on behalf of the following groups of similarly situated persons:

FLSA Collective Action Group 1:

All persons who, at any time between January 16, 2012, through judgment, are or were employed by Defendants at one of their sports bars in Nevada as salaried "Kitchen Managers."

FLSA Collective Action Group 2:

All persons who, at any time between January 16, 2012, through the date that Defendants reclassified them as hourly non-exempt employees, are or were employed by Defendants at one of their sports bars in Nevada as "Salaried Cooks."

FLSA Collective Action Group 3:

All persons who, at any time between January 16, 2012, through judgment, are or were employed by Defendants at one of their sports bars in Nevada as salaried "Assistant Kitchen Managers."

## I.

## **JURISDICTION AND VENUE**

2.     This Court has original jurisdiction over the claims alleged herein pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) and federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331.

3.     Venue is proper in this Court because the Defendants employed the Plaintiffs in Washoe County, Nevada, the Plaintiffs reside in Washoe County, Nevada, the Plaintiffs performed work for Defendants in Washoe County, Nevada, the Defendants' corporate headquarters and principal place of business is located in Washoe County, Nevada, and many of the acts complained of herein occurred in Washoe County, Nevada.

## II.

## FACTUAL ALLEGATIONS

4.      Defendant BULLY'S SPORTS BAR & GRILL, Inc., (hereinafter "Bully's" or "Defendants") is a Nevada Corporation with its corporate headquarters and principal place of business located in Washoe County, Nevada.  Defendants own and operate approximately seven (7) sports bars in Washoe County and Carson City, all of which commonly operate under the name of "Bully's." The locations of the sports bars owned and operated by Defendants can be found on Defendants' web site www.bullyssportsbar.com.  At all times relevant hereto, Defendants were the employers of Plaintiffs, and all others similarly situated, and were engaged in commerce for the purposes of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*  At all times material to this action Defendants have been an "employer" of Plaintiffs, and all others similarly situated, as defined by § 203(d) of the FLSA.  At all times relevant hereto, Defendants authorized, suffered, and permitted Plaintiffs, and all others similarly situated, to work in excess of forty (40) hours per week without paying Plaintiffs, and all others similarly situated, overtime at the rate of one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours per week.

5.      Defendant SHARLING JO SONNER is the sole corporate officer of Defendant BULLY'S SPORTS BAR & GRILL, Inc.   During the liability period, January 16, 2012 through judgment, Ms. SONNER was Bully's sole president, secretary, director and Chief Executive Officer.  In addition, SONNER owns 85% of the shares in Defendant Bully's.  During the liability period, SONNER has had the ability to, and actually did, hire and fire Kitchen Managers, Assistant Kitchen Managers and salaried Cooks. SONNER is the sole individual authorized to sign paychecks for Plaintiffs and other Kitchen Managers, Assistant Kitchen Managers and salaried Cooks.  SONNER has been responsible for the conditions of employment and working hours of

Plaintiffs and other Kitchen Managers, Assistant Kitchen Managers and salaried Cooks.  SONNER has also determined the rates of pay and method of payment for the Plaintiffs and other Kitchen Managers, Assistant Kitchen Managers and salaried Cooks.  Finally, SONNER has also maintained and/or been responsible for maintaining the employment records of Plaintiffs and other Kitchen Managers, Assistant Kitchen Managers and salaried Cooks.

6.  During the liability period,  SONNER has had the authority to, and actually has, performed the following acts relative to Plaintiffs and other Kitchen Managers, Assistant Kitchen Managers and salaried cooks:

(a)  signed paychecks, bonus checks and checks for accrued but unused vacation on behalf of Bully's for Plaintiffs and other Kitchen Managers, Assistant Kitchen Managers and salaried cooks;

(b)  attended and participated in safety meetings attended by Plaintiffs and other Kitchen Managers, Assistant Kitchen Managers and salaried Cooks;

(c)  adjusted the salaries and rates of pay for Kitchen Managers, Assistant Kitchen Managers and salaried Cooks;

(d)  changed the classification of salaried Cooks from exempt salaried employees to non-exempt hourly paid employees;

(e)  disciplined and authored written corrective action notices and/or notes to employee files for Kitchen Managers, Assistant Kitchen Managers and salaried Cooks;

(f)  authored and approved job descriptions for Kitchen Manages, Assistant Kitchen Managers, salaried Cooks, and hourly cooks;

(g)  authored and issued positive performance awards for Plaintiffs and other Kitchen Managers, Assistant Kitchen Managers and salaried Cooks;

(h)     authored and/or approved all of the policies and procedures set forth in Bully's employee hand book, including Bully's policies and procedures relating to the classification of employees as either exempt or non exempt from the overtime pay requirements set forth in the Fair Labor Standards Act, and Bully's policies and procedures with respect to the payment of overtime to its employees; and

(i)     determined whether Bully's employees will be classified as either exempt or non-exempt from the overtime pay requirements set forth in the Fair Labor Standards Act.

7.      In addition to the facts set forth above, during the liability period, SONNER has been actively engaged in the day to day operations of Defendant Bully's Sports Bars. Specifically, SONNER has been responsible for making the final decision with respect to important decisions relating to the operations of Bully's sports bars including, but not limited to, approving and changing the food items sold in the restaurants, setting the prices for the food items sold in the restaurants, entering into contracts with vendors, and determining whether Bully's employees should be classified as either exempt or non-exempt from the FLSA's overtime pay requirements.

8.      The FLSA defines the term "employer" broadly to include "any person acting directly or indirectly in the interest of an employer in relation to any employee. 29 U.S.C. §203(d). Furthermore, the term "person" is also broadly defined under the FLSA to include, inter alia, an "individual." 29 U.S.C. §203(a). Individual corporate officers and directors who act directly or indirectly in the interest of an employer in relation to an employee may be subject to individual liability under the FLSA. 29 C.F.R. §791.2(b)(2). Plaintiffs' allege that, at all times relevant hereto, SONNER has acted directly and indirectly in the interest of Defendant Bully's in relation to Plaintiffs and all others similarly situated and is therefore subject to individual liability under § 203(d) of the FLSA and 29 C.F.R. §791.2(b)(2). SONNER has exercised significant control over

the nature and structure of the employment relationship for Plaintiffs and all others similarly situated and has also exercised significant economic control over Bully's and the relationship of Plaintiffs and all other similarly situated with Bully's. SONNER has had the power to hire and fire members of FLSA Collective Action Groups 1 and 2, has supervised and controlled their work schedules and conditions of employment, has determined their rates and method of pay and has maintained and/or been responsible for maintaining their employment records. As a result of the facts alleged herein, SONNER is an "employer" of Plaintiffs and all others similarly situated and is individually liable for the violations of the FLSA alleged herein. At all times relevant hereto, SONNER authorized, suffered, and permitted Plaintiffs, and all others similarly situated, to work in excess of forty (40) hours per week without paying Plaintiffs, and all others similarly situated, overtime at the rate of one and one-half times their regular hourly rate of pay for all hours worked in excess of forty (40) hours per week.

9.      At all times relevant to this Complaint, the wage and hour and all related employee compensation policies of its sports bars were dictated by, controlled by, and ratified by Defendants. Throughout the remainder of this Complaint, Defendant BULLY'S and Defendant SONNER will be collectively referred to as Defendants.

10.     Plaintiff ERNESTO AMADOR is a natural person who resides in Washoe County, Nevada. At all times relevant hereto, AMADOR was employed by Defendants as a salaried exempt "Kitchen Manager." Specifically, during the three year period prior to the filing of this action, AMADOR was employed by Defendants as a salaried exempt Kitchen Manager at the Bully's sports bar located at 18156 Wedge Parkway in Reno, Nevada (referred to by Defendants as Bully's #2). During his employment with Defendants, AMADOR was paid a salary of approximately $43,000 per year. AMADOR resigned from his employment with Defendants in September of 2014. During his employment with Defendants, AMADOR regularly worked in

excess of sixty (60) hours per week without receiving overtime pay. During his employment with Defendants, Defendants authorized, suffered and permitted AMADOR to work in excess of forty (40) hours per week each week that he was employed by Defendants without receiving overtime pay as required by the Fair Labor Standards Act.

11.     Plaintiff LUIS ANGUIANO is a natural person who resides in Washoe County, Nevada. At all times relevant hereto, ANGUIANO was employed by Defendants as a salaried exempt "Cook." Specifically, during the three year period prior to the filing of this action, ANGUIANO was employed by Defendants as a salaried exempt Cook at the following Bully's sports bar locations: (1) 2898 Vista Boulevard in Sparks, NV; (2) 2955 N. McCarran Blvd. in Sparks, NV; (3) 18156 Wedge Parkway in Reno, NV and (4) 9725 Pyramid Way in Sparks, NV. During his employment with Defendants as a salaried Cook, ANGUIANO was paid a salary of approximately $31,000 per year. ANGUIANO resigned from his employment with Defendants in January of 2015. During his employment with Defendants, ANGUIANO regularly worked in excess of sixty (60) hours per week without receiving overtime pay. During his employment with Defendants, Defendants authorized, suffered and permitted ANGUIANO to work in excess of forty (40) hours per week each week that he was employed by Defendants without receiving overtime pay as required by the Fair Labor Standards Act.

12.     Plaintiff JUAN CARLOS "VICTOR" MARTINEZ is a natural person who resides in Washoe County, Nevada. At all times relevant hereto, MARTINEZ has been employed by Defendants as a salaried exempt "Assistant Kitchen Manager" and "Kitchen Manager" Specifically, during the three year period prior to the filing of this action, MARTINEZ was employed by Defendants as a salaried exempt Assistant Kitchen Manager at the Bully's sports bar located on Robb Drive in Reno, Nevada (referred to by Defendants as Bully's #10). During his employment with Defendants, MARTINEZ was paid a salary regardless of the number of hours he

worked per week.    During his employment with Defendants, MARTINEZ regularly worked in excess of sixty (60) hours per week without receiving overtime pay.  During his employment with Defendants, Defendants authorized, suffered and permitted MARTINEZ to work in excess of forty (40) hours per week each week that he was employed by Defendants without receiving overtime pay as required by the Fair Labor Standards Act.

13.    Defendants' sports bars are true "chain store" operations.  For example, all of Bully's sports bars are virtually identical in product, service and operation.  Defendants' maintain uniformity of operations throughout the sports bars by implementing standardized employee training and standardized operating policies and procedures.  The duties of the salaried Kitchen Managers, Assistant Kitchen Managers and Cooks are set forth by uniform written company-wide policies and procedures.  The performance of salaried Kitchen Managers, Assistant Kitchen Managers and Cooks in the sports bars is and has been closely monitored by their supervisors to ensure strict compliance with those policies and procedures.  The salaried Kitchen Managers, Assistant Kitchen Managers and Cooks do not and have not exercised independent judgment or discretion and have been disciplined for deviating from the detailed company guidelines of how the sports bars are to be operated.

14.    During the three year statute of limitations period, each of Defendants' sports bars is and was staffed with a large number of salaried exempt "managers."  Specifically, each of the sports bars is/was staffed with a salaried exempt General Manager, Assistant General Manager, Kitchen Manager, Assistant Kitchen Manager and up to 4 salaried Cooks (prior to the reclassification of the Cooks to non-exempt status).  All of the aforementioned salaried exempt positions were expected to, and actually did, work in excess of forty (40) hours per week without receiving overtime pay.

15.     The salaried General Manager is the lead position in Defendants' sports bars and is responsible for the day to day operations of the sports bars.  The salaried Assistant Manager is responsible for the day to day operations of the sports bars when the General Manager is not present. This action is *not* brought on behalf of the salaried exempt General Managers and Assistant General Managers.  The salaried Kitchen Managers, Assistant Kitchen Managers and Cooks all work *together* in the small kitchen areas located within the Defendants' sports bars. These salaried "managers" are not responsible for the day to day operations of the sports bars.  The salaried exempt Kitchen Managers, Assistant Kitchen Managers and Cooks were expected to, and actually did, work in excess of sixty (60) hours per week, on average.  In addition to the these salaried exempt positions, the  sports bars are/were staffed with a number of hourly paid, non-exempt employees such as bartenders, wait staff, and bussers.

16.     During the three year statute of limitations period, the locations where Plaintiffs worked were staffed with the following salaried exempt employees: a General Manager, an Assistant General Manager, a Kitchen Manager, an Assistant Kitchen Managers and a number of salaried Cooks.

17.     Beginning in February of 2015, after the filing of the original Complaint in this action, Defendants reclassified all of the salaried Cooks from salaried exempt employees to hourly non-exempt employees and began paying the formerly salaried Cooks overtime when they worked over forty (40) hours in a week.  Subsequent to the reclassification, when paying the formerly salaried Cooks overtime, Defendants determined the salaried Cooks overtime rate of pay by multiplying their hourly rate of pay by 1.5.  For example, if a formerly salaried Cook earned $10.00 an hour, Defendants paid the formerly salaried cook $15.00 an hour for all hours worked in excess of forty (40) hours per week.

PLAINTIFFS' THIRD AMENDED COLLECTIVE ACTION COMPLAINT

18.     During the three year statute of limitations period, Defendants have employed a uniform illegal policy and practice of classifying persons employed as Kitchen Managers, Assistant Kitchen Managers and Cooks, as salaried exempt "executive" employees and has uniformly failed to pay overtime for any hours worked in excess of forty (40) hours per week to its salaried Kitchen Managers, Assistant Kitchen Managers and Cooks.  As alleged herein, Defendants' uniform practice of classifying persons employed as Kitchen Managers, Assistant Kitchen Managers and Cooks as salaried exempt "executive" employees is/was unlawful because these positions do not meet the criteria to be classified as exempt from overtime pay under the FLSA.

19.     During the statute of limitations period, Defendants have maintained a uniform policy and practice of tightly restricting and minimizing the use of overtime for hourly paid employees.  In order to meet Defendants' uniform operating policies and customer services standards, Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2, and 3 have been forced to work far more than forty (40) hours per week without receiving overtime pay.

20.     Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, were required to provide, and did provide, the number of hours they actually worked each week to Defendants via Defendants' automated time keeping system (Point of Sale System).  In addition to keeping track of Plaintiffs' hours and those of all others similarly situated members of FLSA Collective Action Groups 1, 2 and 3, via Defendants' Point of Sale System, Defendants are/were also aware of the number of hours worked per week by Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, based on the weekly kitchen schedules which reflect the days and hours worked each week for Plaintiffs and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3.  Defendants are in possession of the records of hours worked by Plaintiffs, and all others similarly situated members

of FLSA Collective Action Groups 1, 2 and 3, each week through its automated time records as well as the kitchen schedules.  Further, Defendants were aware of the fact that Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, regularly worked in excess of forty (40) hours per week during each week that they were employed by Defendants from January 16, 2012 through the present.  While Plaintiffs are unable to state at this time the exact amount owed to them, Plaintiffs propose to obtain such information by appropriate focused discovery proceedings to be taken promptly in this action, and request damages be awarded according to proof thus obtained and presented to the Court.

21.    Despite the fact that Defendants authorized, suffered and permitted Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, to work in excess of forty (40) hours per week, and was aware that Plaintiffs, and all others similarly situated, routinely worked in excess of forty (40) hours per week, Defendants maintained a uniform policy of failing to pay Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, overtime wages equal to one and one-half times their regular hourly rate for all hours worked in excess of forty (40) hours a week.  During the relevant time period, Defendants knowingly, intentionally and recklessly classified Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, as exempt from the overtime provisions of the Fair Labor Standards Act.  Specifically, Plaintiffs are informed, believe and therefore allege, that Defendants knowingly and willfully misclassified them and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, as exempt from overtime pay based on the "executive exemption." As alleged in more depth below, Plaintiffs, and all others similarly situated members of FLSA Collective Action Groups 1, 2 and 3, did not meet the criteria to be classified as exempt based on the executive exemption, or any other exemption from overtime.

22.     At all times relevant hereto, Defendants were aware that the primary duty of Plaintiffs, and all others similarly situated members of FLSA Collective Action Groups 1, 2 and 3, was not the management of the enterprise or a customarily recognized department or subdivision thereof.  To the contrary, the primary duty of Plaintiffs, and all others similarly situated members of FLSA Collective Action Groups 1, 2 and 3, was to prepare food, cook food, and clean. Similarly, Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, did not customarily and regularly direct the work of two or more other employees.  To the contrary, Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, routinely worked in the kitchen either with only one other hourly non-exempt employee, or with a number of other *salaried* exempt employees.  As a result, Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, did not customarily and regularly direct the work of two other full time hourly non-exempt employees, as is required to qualify as an executively exempt employee under the FLSA.

### III.

### COLLECTIVE ACTION ALLEGATIONS

23.     Plaintiffs re-allege and incorporate by this reference all of the paragraphs above in this Complaint as though fully set forth herein.

24.     Plaintiffs bring this action on behalf of themselves and all other similarly situated salaried "Kitchen Managers," "Assistant Kitchen Managers," and salaried Cooks as a collective action under the FLSA (29 U.S.C. § 216(b)).  The FLSA Collective Action Groups at issue are defined as follows:     FLSA Collective Action Group 1:

> All persons who, at any time between January 16, 2012, through judgment, are or were employed by Defendants at one of their sports bars in Nevada as salaried "Kitchen Managers."

FLSA Collective Action Group 2:

All persons who, at any time between January 16, 2012, through the date that Defendants reclassified them as hourly non-exempt employees, are or were employed by Defendants at one of their sports bars in Nevada as "Salaried Cooks."

FLSA Collective Action Group 3:

All persons who, at any time between January 16, 2012, through judgment, are or were employed by Defendants at one of their sports bars in Nevada as salaried "Assistant Kitchen Managers."

25.     Pursuant to the Court's Order dated April 29, 2015, this Court conditionally certified this case as a Collective action pursuant to  29 U.S.C.§ 216(b).  This Court also approved the mailing of Notice and Consent to Join forms to potential Opt-In Plaintiffs.  The date to Opt-In to this case and file a Consent to Join from expired in August of 2015.  In total 25 persons have filed Consent to Join forms, including Plaintiffs.  Plaintiff AMADOR represents all persons employed by Defendant since January 16, 2012, as salaried Kitchen Manages .   Plaintiff ANGUIANO represents all persons employed by Defendant since January 16, 2012, as salaried Cooks. Similarly, Plaintiff MARTINEZ represents all persons employed by Defendant since January 16, 2012, as salaried Assistant Kitchen Managers.  Plaintiffs are similarly situated to those whom they represent for the following reasons:

A.     Like the Plaintiffs, Defendants employed a number of salaried "Kitchen Managers," "Assistant Kitchen Managers," and salaried "Cooks" all of whom were paid a set salary irrespective of the number of hours that they actually worked.  Plaintiffs, like the other similarly situated "Kitchen Managers," "Assistant Kitchen Managers," and salaried "Cooks" employed by Defendants, were suffered and permitted by Defendants to work a significant number of hours per week without receiving straight or overtime wages of one and one half times their regular rate of pay for all hours worked over forty (40) hours in a work week.

B.     Defendants maintained a uniform policy and practice of misclassifying and failing to pay overtime wages to Plaintiffs and all other salaried "Kitchen Managers," "Assistant Kitchen Managers," and salaried "Cooks" equal to one and one half times their regular rate of pay for all hours worked over forty (40) hours in a work week.

C.     The job duties, responsibilities and work tasks performed by Plaintiff AMADOR and all other similarly situated members of FLSA Collective Action Group 1 (salaried "Kitchen Managers" ) were similar and were dictated by Defendants' uniform operating policies and procedures.

D.     The job duties, responsibilities and work tasks performed by Plaintiff ANGUIANO and all other similarly situated members of FLSA Collective Action Group 2 (salaried "Cooks") were similar and were dictated by Defendants' uniform operating policies and procedures.

E.     The job duties, responsibilities and work tasks performed by Plaintiff MARTINEZ and all other similarly situated members of FLSA Collective Action Group 3 (salaried "Assistant Kitchen Managers") were similar and were dictated by Defendants' uniform operating policies and procedures.


F.     Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, are challenging Defendants' uniform and unlawful policy and practice of failing to pay overtime then overtime for any hours worked in excess of forty (40) hours per week.

F.     Common questions exist as to whether Defendants' policy and practice of failing to pay overtime to Plaintiffs and all other salaried "Kitchen Managers," "Assistant Kitchen Managers," and "Cooks" violates federal law.

## IV.

## FIRST CAUSE OF ACTION

Failure to Pay Wages in Violation of the FLSA, 29 U.S.C. § 201, *et seq*.

(On behalf of Plaintiffs and all others similarly situated members

of FLSA Collective Action Groups 1, 2 and 3 against all Defendants)

26.     Plaintiffs re-allege and incorporate by this reference all the paragraphs above in this Complaint as though fully set forth herein.

27.     Pursuant to the FLSA, 29 U.S.C. § 201, *et seq*., Plaintiffs, and all others similarly situated members of FLSA Collective Action Groups 1, 2 and 3, are entitled to compensation at their regular rate of pay or minimum wage rate, whichever is higher, for all hours actually worked.

28.     29 U.S.C. § 206(a)(l) states that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: $7.25 an hour."

29.     Once the work day has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's regular rate of pay, whether scheduled or not.

30.     Plaintiffs allege, on information and belief, that they, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, were not paid at least $7.25 per hour for all weeks worked during their employment with Defendants.  By failing to pay Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, at least $7.25 per hour for all of their actual hours worked and instead classifying them as salaried "exempt" employees, Defendants violated 29 U.S.C. § 201, *et seq.*

31.     Defendants' unlawful conduct, as alleged herein, has been knowing, intentional, widespread, repeated, and willful.  Plaintiffs are informed, believe, and therefore allege that Defendants knew that the illegal conduct alleged herein violated the Fair Labor Standards act and/or showed reckless disregard for whether its actions complied with the Fair Labor Standards Act.

32.     Wherefore, Plaintiffs demand that Defendants pay Plaintiffs, and all others similarly situated members of FLSA Collective Action Groups 1, 2 and 3, wages at a rate of $7.25 per hour for all hours worked during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

**V.**

**SECOND CAUSE OF ACTION**

Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207

(On behalf of Plaintiffs and all other similarly situated members

of FLSA Collective Action Groups 1, 2 and 3 against all Defendants)

33.     Plaintiffs re-allege and incorporate by this reference all of the paragraphs above in this Complaint as though fully set forth herein.

34.     The FLSA regulates, among other things, the payment of overtime pay by employers whose employees are engaged in commerce, or engaged in the production of goods for commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

35.     Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1) provides as follows: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty (40) hours unless such an employee received compensation for his employment in

excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." Defendants are, and were, subject to the requirement to pay Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, one and one-half times their regular rate of pay for all hours worked in a workweek in excess of forty (40) hours. Defendants violated the FLSA by failing to pay Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per week.

36.     Exemptions from the requirement to pay overtime to employees are found at §§ 207 and 213 of the Fair Labor Standards Act. For example, 29 U.S.C. § 213 (a)(1) states that § 207 does not apply if the employee is employed in a bona fide executive, administrative, or professional capacity, or in the capacity of outside salesman. In view of the remedial purpose of the FLSA, it is well settled that the various statutory exemptions are to be narrowly construed and that the burden is always on the employer to prove that its employees fall squarely within the scope of a particular exemption. In this case, for the reasons set forth above, Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, did/do not qualify for any of the exemptions which would permit Defendants from failing to pay them overtime for all hours worked in excess of forty (40) hours per week.

37.     Section 16(b) of the Fair Labor Standards Act [29 U.S.C. § 216(b)] states: "Any employer who violates the provisions of § 6 or § 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."

38.     Section 17 of the Fair Labor Standards Act [29 U.S.C. § 217] states:  "The district courts . . . shall have jurisdiction, for cause shown, to restrain violations of § 215 of this title, including in the case of § 215(a)(2) of this title the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter . . . ."

39.     The statute of limitations for violations of the FLSA is three years if the violations are willful.  At all times relevant hereto, Defendants have willfully, knowingly and improperly failed to pay Plaintiffs, and all others similarly situated members of FLSA Collective Action Groups 1, 2 and 3, overtime at the rate of one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours per week.  Defendants' unlawful conduct, as alleged herein, has been knowing, intentional, widespread, repeated, and willful.  Plaintiffs are informed, believe, and therefore allege that Defendants knew that the illegal conduct alleged herein violated the Fair Labor Standards act and/or showed reckless disregard for whether its actions complied with the Fair Labor Standards Act.  Specifically, Plaintiffs alleges that Defendants purposely elected not to pay them, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, their overtime hours worked at the correct legal rate of pay in order to save on its labor costs and increase profits and instead knowingly misclassified them as exempt from overtime pay.

40.     Therefore, Plaintiffs seek the following from Defendants: unpaid overtime at one and one-half times their regular rate of pay, liquidated damages in an equal amount, plus attorney's fees and costs, for themselves, and all others similarly situated members of FLSA Collective Action Groups 1, 2 and 3, from January 16, 2012, through the date of judgment after trial, plus interest and costs as allowed by law.

**V.**

### **PRAYER FOR RELIEF**

Wherefore Plaintiffs, on their own behalf and on behalf of all similarly situated "Kitchen Managers," "Assistant Kitchen Managers," and salaried "Cooks," as defined above, pray for relief against all Defendants as follows:

1.     For damages according to proof for overtime wages owed to Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, at the applicable rate under federal law for all hours worked in excess of forty (40) hours per week;

2.     For damages according to proof for straight time wages at an hourly rate of at least $7.25 per hour owed to Plaintiffs, and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, for all hours worked;

3.     For liquidated damages pursuant to 29 U.S. C. § 216(b);

4.     For interest as provided by law at the maximum legal rate;

5.     For reasonable attorneys' fees as authorized by statute;

6.     For costs of suit incurred herein;

7.     For pre-judgment and post-judgment interest, as provided by law; and

8.     For an Order determining that Defendant SHARLING "JO" SONNER is and was an "employer" of Plaintiffs and all other similarly situated members of FLSA Collective Action Groups 1, 2 and 3, within the meaning of § 203(d) of the FLSA and 29 C.F.R. §791.2(b)(2), and is jointly and severally liable along with Defendant  BULLY'S SPORTS BAR & GRILL, INC. for the violations of the FLSA set forth herein.

9.     For such other and further relief as the Court may deem just and proper.

1    Dated September 14th, 2016                    JONES LAW FIRM

2                                                  By:  /s/ Charles A. Jones

3                                                  Attorneys for Plaintiffs

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28