Charles A. Jones, Esq., SBN 6698
Kelly McInerney, Esq., SBN 7443
JONES LAW FIRM
9585 Prototype Court, Suite B
Reno, Nevada 89521
Telephone: (775) 853-6440
Facsimile:  (775) 853-6445
Caj@cjoneslawfirm.com
Kelly@cjoneslawfirm.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ERNESTO AMADOR, LUIS ANGUIANO, and JUAN CARLOS "VICTOR" MARTINEZ as individuals, and on behalf of all others similarly situated <br><br> Plaintiffs, <br><br> v. <br><br> BULLY'S SPORTS BAR & GRILL, INC., a Nevada Corporation, and SHARLING "JO" SONNER, an individual. <br><br> Defendants. | Case No. 3:15-CV-00022-HDM-VPC <br><br> PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS <br><br><br> Date: TBD <br> Time: TBD |

Plaintiffs, LUIS ANGUIANO, FERNANDO TORRES BARRON, JAMIE CASTILLO,

CYNTHIA BARRON TORRES, ALONSO GARCIA, JAMIE LUGO, OSMAN RIVERA,

FELICIANO SANTOS,  MAURICIO (EDUARDO) SILVA,  SANTOS HERNANDEZ,

OCTAVIO GASPAR,  JUAN ANGIANO BARAJAS,  ANTONIO GARCIA PACHECO,

ANGEL RAUDALES, AND DARWIN HERNANDEZ, (FLSA COLLECTIE ACTION GROUP 2

PLAINTIFFS) hereby move this Honorable Court for an Order awarding attorneys' fees and costs.

# TABLE OF CONTENTS

Table of Contents ..................................................................................................... i, ii

Table of Authorities .............................................................................................. iii, vi

I.      INTRODUCTION ............................................................................................ 2

II.     RELEVENT CASE HISTORY ......................................................................... 3

III.    ARGUMENT .................................................................................................. 6

    A.     Legal Standard ...................................................................................... 6

        1.    Recovery of Attorneys' Fees and Cost is Mandatory
            Pursuant to The Rule 68 Offer of Judgment ................................. 6

        2.    Plaintiffs Are Also Entitled to Attorneys' Fees and Costs as
            the Prevailing Party Under the FLSA ........................................... 7

    B.     The Lodestar Method is the Appropriate Method for Determining the
       Amount of Attorneys' Fees to Be Awarded to Plaintiffs ................................... 10

        1.    The Hourly Rates Sought by Plaintiffs' Counsel Are
            Reasonable .................................................................................. 12

    C.     Plaintiffs' Apportionment of the Work Performed in This Case
       Between Two Subclasses is Reasonable ......................................................... 15

    D.     An Analysis of the 12 Factors Does Not Support a Downward
       Departure From Plaintiffs' Lodestar ................................................................ 17

        1.    Time and Labor Required ............................................................ 18

        2.    The Novelty and Difficulty of the Questions ............................... 18

        3.    The Skills Requisite to Perform Legal Service Properly ............... 19

        4.    The Preclusion of Employment by the Attorney Due to
            Acceptance of Case. .................................................................... 20

        5.    The Customary Fee and Whether the Fee is Fixed or
            Contingent .................................................................................. 20

        6.    Time Limitations Imposed by the Client or the Circumstances ........... 21

        7.    The Amount Involved and the Results Obtained ......................... 21

        8.    The Experience, Reputation, and Ability of the Attorney ............. 23

        9.    The "Undesirability" of the Case ................................................. 25

        10.   The Nature and Length of the Professional Relationship with
            the Client .................................................................................... 25

# TABLE OF CONTENTS

Table of Contents ......................................................................................... i, ii

Table of Authorities .................................................................................. iii, vi

I.      INTRODUCTION ................................................................................2

II.     RELEVENT CASE HISTORY .............................................................3

III.    ARGUMENT .......................................................................................6

      A.      Legal Standard...........................................................................6

            1.      Recovery of Attorneys' Fees and Cost is Mandatory
                  Pursuant to The Rule 68 Offer of Judgment .........................6

            2.      Plaintiffs Are Also Entitled to Attorneys' Fees and Costs as
                  the Prevailing Party Under the FLSA ....................................7

      B.      The Lodestar Method is the Appropriate Method for Determining the
          Amount of Attorneys' Fees to Be Awarded to Plaintiffs ..................10

            1.      The Hourly Rates Sought by Plaintiffs' Counsel Are
                  Reasonable .........................................................................12

      C.      Plaintiffs' Apportionment of the Work Performed in This Case
          Between Two Subclasses is Reasonable ........................................15

      D.      An Analysis of the 12 Factors Does Not Support a Downward
          Departure From Plaintiffs' Lodestar ............................................17

            1.      Time and Labor Required ....................................................18

            2.      The Novelty and Difficulty of the Questions.......................18

            3.      The Skills Requisite to Perform Legal Service Properly ......19

            4.      The Preclusion of Employment by the Attorney Due to
                  Acceptance of Case. ............................................................20

            5.      The Customary Fee and Whether the Fee is Fixed or
                  Contingent ..........................................................................20

            6.      Time Limitations Imposed by the Client or the Circumstances...........21

            7.      The Amount Involved and the Results Obtained ..................21

            8.      The Experience, Reputation, and Ability of the Attorney ...................23

            9.      The Undesirability of the Case.............................................25

            10.     The Nature and Length of the Professional Relationship with
                  the Client ............................................................................25

1

           11.    Awards in Similar Cases ........................................................................25

IV.    COSTS ..................................................................................................................25

V.    CONCLUSION ....................................................................................................26

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**SUPREME COURT CASES**

*Aleyska Pipeline Serv. Co. v. Wilderness Society*
    (1975) 421 U.S. 240, 261-62 fn. 34-36 ................................................................. 7

*Blanchard v. Bergeron*
    (1989) 489 U.S. 87, 96, 109 S.Ct. 939, 946, 103 L.Ed.2d 67 .......................... 11, 20

*Blum v. Stenson*
    (1984) 465 U.S. 886, 898-900, 104 S.Ct. 1541, 1548-49, 79 L.Ed.2d 891 ...... 10, 18

*Cabrales v. City of Los Angeles*
    (1989) 490 U.S. 1087, 109 S.Ct. 2425, 104 L.Ed.2d 982 ................................. 9

*Christiansburg Garment Co. v. EEOC*
    (1978) 434 U.S. 412, 416 and fn. 5-6 .......................................................... 7

*Fegley v. Higgins*
    (1994) 513 U.S. 875, 115 S.Ct. 203, 103 L.Ed.2d 134 ................................. 8

*Garcia v. San Antonio Metro. Transit Auth.*
    (1985) 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 ............................. 9

*Hensley v. Eckerhart*
    (1983) 461 U.S. 424, 430, 433-34, 103 S.Ct. 1933, 76 L.Ed.2d 40 ............... 10, 11

*Kerr v. Screen Extras Guild, Inc.*
    (1976) 425 U.S. 951, 96 S.t. 1726 .......................................................... 11

*Marek v. Chesny*
    (1985) 473 U.S. 1,5-6,105 S.Ct. 3012, 87 L.Ed.2d 1 ................................. 6, 7

*Pennslyvania v. Delaware Valley Citzens' Counsil for Clean Air*
    (1985) 478 U.S. 546, 564-65, 106 S.Ct. 3088, 3098-99,92 L.Ed.2 439 ............... 10

**FEDERAL CASES**

*Ballen v. City of Redmond*
    (9th Cir. 2006) 446 F.3d 736, 746 .......................................................... 10

*Bonnette v. California Health & Welfare Agency*
    (9th Cir. 1983) 704 F.2d 1465, 1473 ....................................................... 9

*Brand v. Comcast Corp.*
    (N.D. Ill. 2012) WL 4482124 *7 ............................................................. 24

*Camacho v. Bridgeport Fin., Inc.*
  (9ʰ Cir. 2008) 523 F.3d 973, 979-80, 982 ..................................................... 11, 12

*Carbonell v. INS*
  (9th Cir. 2005) 429 F.3 894, 899 ................................................................. 9

*Cabrales v. City of Los Angeles*
  (9th Cir. 1988) 864 F.2d 1454, 1464-65 ..................................................... 9

*Cabrales v. City of Los Angeles*
  (9th Cir. 1989) 886 F.2d 235 ..................................................................... 9

*Caudle v. Bristow Optical Co., Inc.*
  (9th Cir. 2000) 224 F.3d 1014, 1028 .......................................................... 11

*Clark v. City of Los Angeles*
  (9th Cir. 1986) 803 F.2d 987, 992 .............................................................. 11

*Cleveland v. City of Los Angeles*
  (9th Cir. 2005) 420 F.3d 981, 988 .............................................................. 4

*Cordes v. Gates*
  (9th Cir. 1991) 947 F.2d 374, 377-78 ......................................................... 20

*Costa v. Social Sec. Admin.*
  (9th Cir. 2012) 690 F.3d 1135 ................................................................... 10

*Currie-White v. Blockbuster, Inc.*
  (N.D. Cal. 2010) WL 1526314 .................................................................. 24, 25

*Doornbos v. Pilot Travel Centers*
  (N.D. Cal. 2005) WL 6166032 ................................................................... 24

*Dunmire v. Dunlap*
  (1979) 100 Idaho 697, at 700, 604 P.2d 711,714 ......................................... 8

*Erdman v. Cochise County., Arizona*
  (9th Cir. 1991) 926 F.2d 877, 880 .............................................................. 7, 16

*Fegley v. Higgins*
  (6th Cir. 1994) 19 F.3d 1126, 1134-35 ....................................................... 8

*Flitton v. Primary Residential Mortg., Inc.*
  (10th Cir. 2010) 614 F.3d 1173, 1178 ........................................................ 9

*Garcia v. Tyson Foods, Inc.*
  (10th Cir. 2014) 770 F.3d 1300, 1311-12 .................................................... 9

*Gonzalez v. City of Maywood*
  (9th Cir. 2013) 729 F.3d 1196, 1201-02, 1205-1206, 1209 .................... 9, 11

*Gurrero v. California Department of Corrections and Rehabilitation*
  (N.D. Cal. 2016) WL 3360638 *12.......................... 15

*Harris v. Marhoefer*
  (9th Cir. 1994) 24 F.3d 16, 18 .......................... 17

*Herrington v. County of Sonoma*
  (9th Cir. 1993) 12 F.3d 901, 907 .......................... 7

*Johnson v. Georgia Highway Exp., Inc.*
  (5th Cir. 1974) 488 F.2d 714, 717-719 .................... 11, 12, 23

*Jordan v. Multnomah County*
  (9th Cir. 1987) 815 F.2d 1258, 1262 .......................... 18

*Kerr v. Screen Extra Guild, Inc.*
  (9th Cir. 1975) 526 F.2d 67 at 70 .......................... 11

*Laffey V. Northwest Airlines*
  (D.C. Cir. 1984) 746 F.2d, 4, 11 .......................... 8

*Lang v. Gates*
  (9th Cir. 1994) 36 F.3d 73, 75 .......................... 7

*Lemus v. Timberland Apts., LLC.*
  (D. OR 2012) 876 F. Supp. 2d 1169, 1176 .......................... 8

*Maddrix v. Dize*
  (4th Cir. 1946) 153 F.2d 274 .......................... 8

*Morales v. City of San Rafael*
  (9th Cir. 1996) 96 F.3d 359, 363 .......................... 10

*Newhouse v. Roberts Ilima Tours*
  (9th Cir. 1983) 708 F.2d 436, 441 .......................... 12

*Posner v. The Showroom, Inc.*
  (6th Cir. 1985) 762 F.2d 1010 .......................... 9

*Reindeau et al, v. Carson Partners LP*
  (Dist. AZ 2013) WL 6728141 .......................... 8

*Russell v. Illinois Bell Tel. Co.*
  (N.D. Ill. 2010) 721 F. Supp. 2d 804, 815 .......................... 24

*Stanley v. McDaniel*
    (Ct. App. 1996) 128 Idaho 343, 349, 913 P.2d 76, 82 ............................................ 8

*United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n Local 307 v. G & M Roofing and Sheet Metal Co.*
    (6th Cir. 1984) 732 F.2d 495, 502, 503 ........................................................ 8, 9

*United States v. $28,000.00 in U.S. Currency*
    (9th Cir. 2015) 802 F.3d 1100, 1108 .............................................. 17, 18, 20

*United States v. $186,416.00 in U.S. Currency*
    (9th Cir. 2011) 642 F.3d 753, 755 ............................................................ 20

*Van Gerwen v. Guar. Mut. Life Co.*
    (9th Cir. 2000) 214 F.3d 1041, 1048 ........................................................ 20

*Wright v. W.H. Carrigg*
    (4th Cir. 1960) 275 F.2d 448 ..................................................................... 8

**STATE CASES**

*Graham v. Daimler*
    (2004) 34 Cal. App. 4th 553, 580, 101 P.3d 140 ...................................... 21

**STATUTES**

29 C.F.R. § 541.100 ............................................................................... 5, 19

29 U.S.C. § 201 ......................................................................................... 3

29 U.S.C. § 207 ......................................................................................... 3

29 U.S.C. § 216(b) ............................................................................ *Passim*

**RULES AND REGULATIONS**

Fed. Rule. Civ. P. Rule 54 ........................................................................ 2

Fed. Rule. Civ. P. Rule 68 .................................................................. *Passim*

District of Nevada Local Rule 54-16 ...................................................... 2

Fair Labor Standards Act .......................................................................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This Motion for Attorneys' Fees and Costs stems from the FLSA Collective Action Group 2 Plaintiffs' acceptance of Defendants Rule 68 offer of judgment and is made pursuant to Fed. Rule. Civ. P. Rules 68 and 54, Local Rule 54-16, and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  Defendants' Rule 68 offer of Judgment specifically states that Defendants offered to allow Judgment to be entered against them for $375,000 paid to Plaintiffs, *plus attorneys' fees and costs* to be determined on post-judgment briefing before this Court.  See, DN 91.  Plaintiffs are entitled to an award of attorneys' fees and costs both in connection with the Rule 68 offer of judgment and as prevailing parties under 29 U.S.C. §216(b).

As set forth in detail below, Plaintiffs seek an award of attorneys' fees in the amount of $234,180 and costs in the amount of $8,861.94.  The amount of time spent by the attorneys for Plaintiffs in relation to prosecuting the claims of FLSA Collective Action Group 2 is 390.3 hours. Similarly, Plaintiffs request an hourly rate of $600 per hour.  Plaintiffs believe that the requested amount of attorneys' fees is reasonable in light of the following:

1.      As set forth in the Declaration of Plaintiffs' counsel, Charles A. Jones, Plaintiffs have reduced their total hours worked in this case by 40% in order to allocate the time spent between the members of FLSA Collective Action Groups 1 and 2.  Plaintiffs believe this is a fair apportionment of the work in light of the fact that 60% of the total plaintiffs in this case, 15 out of 25, are members of FLSA Collective Action Group 2 (the Salaried Cook subclass);

2.      In addition to the 40% reduction, in the exercise of billing judgment, counsel also reduced the total hours spent in this case to eliminate any perceived duplication of work performed by the two attorneys involved in this case, and also wrote off time spent communicating with defense counsel that was deemed to be *de minimis*.

3.      Although Plaintiffs' counsel believe an upward adjustment form their lodestar is warranted in this case, counsel are not seeking an upward adjustment of their lodestar; and

3.      The amount of the Judgment obtained on behalf of the fifteen (15) Plaintiffs of FLSA Collective Action Group 2, which represent 60% of the total number of Plaintiffs in this case, is substantial.

## II.     RELEVANT CASE HISTORY

On January 16, 2015 Plaintiff Amador filed his original Collective Action Complaint against Defendant Bully's alleging violations of 29 U.S.C. §201 (failure to pay wages for all hours worked) and §207 (failure to pay overtime).  See, DN 1.  The Complaint, filed as a collective action pursuant to 29 U.S.C. §216(b), seeks unpaid wages and unpaid overtime wages on behalf of "all persons who, at any time during the three years prior to the filing of this action through judgment, are or were employed by Defendant at one of its sports bars in Nevada as salaried Kitchen Managers, Assistant Kitchen Managers or Salaried Cooks." *Id.*  The crux of the Complaint is that Bully's misclassified its salaried Kitchen Managers (hereinafter "KMs") Assistant Kitchen Managers (hereinafter "AKMs") and Salaried Cooks (hereinafter "Cooks") as exempt from the mandatory overtime pay provisions of the FLSA. *Id.*   On February 10, 2015 Bully's filed its Answer and on February 20, 2015, Bully's filed its Motion for Judgment on the Pleadings. See, DNs 6, 7).  On February 20, 2015, Plaintiff filed his Motion to Facilitate Notice of this Action pursuant to 29 U.S.C. §216(b). See, DN 9.  On March 10, 2015, this Court approved the parties' stipulation allowing Plaintiff to file a First Amended Complaint and Stipulation regarding the mailing of Notice to potential opt-in Plaintiffs.  See, DN 33.

On March 10, 2015, Plaintiff filed his First Amended Complaint adding Plaintiff Anguiano as a named Plaintiff and creating two subclasses, FLSA Collective Action Group 1 (consisting of KMs and AKMs) and FLSA Collective Action Group 2 (consisting of Cooks).  See, DN 34. On

April 29, 2016, this Court approved the parties' stipulation and ordered that Notice be provided to similarly situated persons so that they many have an opportunity to opt-in to this case as party Plaintiffs. See, DNS 50, 51. In total, 25 individuals opted-in to this case as Plaintiffs, including the named Plaintiffs. Of the total 25 opt-in Plaintiffs, 15 Plaintiffs opted-in to FLSA Collective Action Group 2, also referred to as the Salaried Cook Sub-Class. The number of Plaintiffs in FLSA Collective Action Group 2, who have obtained Judgments against Defendants, represent 60% of the total Plaintiffs in this case.

As discussed in the Declaration of Charles A. Jones, the claims of the KMs, AKMs and Cooks are related in that all of the claims asserted by both FLSA subclasses rest on a common nucleus of operative facts and also assert the same legal theories – that Bully's uniformly misclassified all KMs, AKMs and Cooks as exempt from the overtime pay provisions of the FLSA. See, DN. 34 (FAC). Additionally, the same causes of action are asserted by both groups. Specifically, all Plaintiffs alleged that pursuant to Defendants' uniform policies and procedures, all KMs, AKMs and Cooks are/were classified as exempt from the overtime pay requirements of the FLSA under the "Executive Exemption" and that none of the plaintiffs was paid overtime when he/she worked over 40 hours per week. Plaintiffs further allege that, regardless of their title as KM, AKM, or Cook, none of the Plaintiffs meets/met the criteria for overtime exemption under the FLSA because: (1) they did not meet the salary basis test of $455 per week; (2) they did not customarily and regularly direct the work of two or more other employees; (3) their primary duty was that of a cook, not a manager; and (4) they did not have the authority to hire or fire other employees.[1]

---

[1] See, 29 C.F.R. §541.100 (outlining the 4 factor test under the executive exemption.) Under this test, **all four factors** must be met in order to classify an employee as exempt from the FLSA's overtime pay requirements. FLSA exemptions are construed narrowly against the employer who seeks to assert them. *Cleveland v. City of Los Angeles*, 420 F.3d 981, 988 (9th Cir. 2005) (noting that the FLSA is construed liberally in favor of employees). Further, an FLSA exemption will not be found except in contexts "plainly and unmistakably" within the given exemption's terms and "spirit." *Id.*

Since April of 2015, the parties have engaged in substantial written discovery and depositions regarding the claims alleged in the FAC and the suitability of this case to proceed as a collective action.[2]  A detailed summary of the type of work performed in this case by counsel is et forth in the Declaration of Charles A. Jones at ¶¶10-20.  In total, Plaintiffs propounded a total of 40 Interrogatories to Defendant Bully's, 157 Document Requests to Defendant Bully's, and 24 Interrogatories to Defendant Sonner.  In addition, Plaintiffs conducted the Rule 30(b)(6) depositions of two of Bully's designates on 44 separate topics.  In turn, Bully's propounded a total of 18 Interrogatories to Plaintiffs and 70 Document requests on Plaintiffs.  In total, 6,197 pages of documents have been produced in this case: 1,300 by Plaintiffs, 4,448 by Defendants and 449 via subpoena to a third party.[3] See, Jones Decl. ¶15.  Bully's and Sonner have conducted the depositions of 4 Plaintiffs as of the date of the filing of this Motion.

Notably, Bully's reclassified the Cook position from exempt to non-exempt status, and began paying overtime to the Cooks, after the filing of the Complaint. See, Jones Decl. ¶27. Nonetheless, despite having multiple opportunities to do so, Bully's and Sonner have steadfastly continued to deny that the Cooks were misclassified as exempt employees and that they were entitled to overtime pay, thereby forcing Plaintiffs to conduct discovery, depositions, and trial preparations regarding the Cooks' claims. See, Jones Decl. ¶20.  The Court will recall that in January of 2016, the Parties attended a confidential status conference with the Court following a mediation whereby they sought the Court's guidance on a proposed settlement which would have resolved all claims and causes of action on behalf of both FLSA subclasses.  See, DNS 77, 80; Jones Decl. ¶18.  As the discussions with the Court surrounding this settlement proposal were sealed, Plaintiffs will not go in to detail regarding the specifics of this proposal.  Unfortunately,

---

[2] On November 4, 2015, Plaintiffs filed a detailed Motion to Amend the Complaint adding Defendant Sonner as an additional Defendant in this Action.  See, DN 63.
[3] Bully's and Sonner served Plaintiffs with 13 supplemental Rule 26 disclosures.

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

Defendants Bully's and Sonner unilaterally reneged on the parties' settlement proposal thereby forcing Plaintiffs to continue to litigate this case on behalf of all Plaintiffs. *Id.*

On August 25, 2016, Defendants served Plaintiffs with their Rule 68 Offer of Judgment on behalf of FLSA Collective Action Group 2 (the Salaried Cook Subclass). Each of these Plaintiffs accepted the Rule 68 offer of Judgment on September 6, 2016. See, DN 91.

## III.   ARGUMENT

### A.   Legal Standard

Plaintiffs are entitled to an award of attorneys' fees and costs both under Fed. Rule. Civ. P. Rule 68 and also as prevailing parties under 29 U.S.C. §216(b).

#### 1.   Recovery of Attorneys' Fees and Costs Is Mandatory Pursuant to The Rule 68 Offer Of Judgment

The plain language of Defendants' Rule 68 offer of judgment confirms that Plaintiffs are entitled to an award of attorneys' fees and costs. Specifically, the Rule 68 offer plainly and unambiguously states:

> [Defendants] hereby offer and allow Plaintiff Luis Anguiano ("Plaintiff" or "Anguiano") and each opt-in plaintiff who has opted into the "Salaried Cook" subclass (also known as the "FLSA Collective Action Group 2" in Plaintiffs' Second Amended Complaint (ECF No. 72)) to take judgment against Defendants in the amount of $375,000, **plus attorneys' fees and costs to be determined on post-judgment briefing before the Court.** See, DN 91 [emphasis added].

Plaintiffs timely accepted Defendants' Rule 68 offer on all of the terms and conditions set forth in the offer, including the provision that attorneys' fees and costs would be determined by the Court on post-judgment briefing. See, DN 91. The "plain purpose" of Rule 68 and its cost-shifting provision "is to encourage settlement and avoid litigation." *Marek v. Chesny,* 473 U.S. 1, 5, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985) ("The Rule prompts both parties to a suit to evaluate the risks and costs of litigation, and to balance them against the likelihood of success upon trial on the merits."). The "critical feature" of Rule 68's fee-shifting provision is "that the offer be one that *allows judgment to be taken against the defendant for both the damages caused by the challenged conduct*

*and the costs then accrued. *1038* " Marek,* 473 U.S. at 6, 105 S.Ct. 3012 (emphasis in original). The Ninth Circuit has recognized that "[t]he requirements for a valid Rule 68 offer are simple." *Herrington v. Cnty. of Sonoma,* 12 F.3d 901, 907 (9th Cir.1993). A Rule 68 offer of judgment must (1) specify a definite sum for which judgment may be entered, (2) be unconditional, and (3) include costs then accrued. *See id.*[4]

        To determine whether an offer of judgment meets Rule 68's requirements, courts are to apply "the usual rules of [contract] construction." *Id.* (citing *Erdman v. Cochise Cnty., Arizona,* 926 F.2d 877, 880 (9th Cir.1991)). "[A]mbiguities will be construed against the offeror as the drafting party and, where such ambiguities are found to exist, extrinsic evidence of the parties' actual intentions will be examined to clarify those ambiguities and arrive at the meaning of the offer's material terms." *Id.*  In this case, there is no doubt that Defendants' Rule 68 offer is valid and that Plaintiffs' acceptance of the offer, including the provision that the offer **includes** additional attorneys' fees and costs to be determined by this Court, is also valid.  As such, Plaintiffs are entitled to an award of attorneys' fees and costs pursuant to the plain language of the accepted Rule 68 offer.

### 2.    Plaintiffs Are Also Entitled To Attorneys' Fees And Costs As The Prevailing Party Under The FLSA

        The FLSA provides that the Court, in an action under the act, "*shall,* in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b).  *see also, Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 416 and fn. 5-6 (1978); *Aleyska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 261-62 fn. 34-36 (1975).  In contrast to many other fee-shifting statutes where an award of attorneys' fees to the prevailing party is discretionary, an award of attorneys' fees

---

[4] The Ninth Circuit has expressly approved of Rule 68 offers that require the acceptance of multiple plaintiffs. *See Lang v. Gates,* 36 F.3d 73, 75 (9th Cir. 1994).

incurred at the trial court level by the prevailing party is mandatory under the FLSA. *See e.g.,* *Reindeau et al, v. Carson Partners LP,* 2013 WL 6728141 (D. AZ 2013); *Lemus v. Timberland Apts., LLC.,* 876 F. Supp. 2d 1169, 1176 (D. OR 2012) *Stanley v. McDaniel,* 128 Idaho 343, 349, 913 P. 2d 76, 82 (Ct. App. 1996) *citing Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994), *certiorari denied* 115 S.Ct. 203, 513 U.S. 875, 130 L.Ed.2d 134; *In re Dunmire v. Dunlap,* 100 Idaho 697, at 700, 604 P. 2d 711, 714 (1979) *citing, Wright v. W.H. Carrigg,* 275 F.2d 448 (4th Cir. 1960).

The purpose of the FLSA attorney fees provision is "to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984). The mandatory nature of an award of attorneys' fees and costs in FLSA actions such as this is consistent with the express purpose of the FLSA which is to rectify and eliminate "labor conditions detrimental to the maintenance of the minimum standard of living" for workers. *Id.* Congress' mandate that all successful FLSA plaintiffs are entitled to an award of attorney's fees and cost was intended as an incentive for private litigants to act as "private attorneys general" and vindicate the FLSA rights in the courts. *Id.*; *see also Laffey v. Northwest Airlines,* 746 F. 2d 4, 11 (D.C. Cir. 1984).[5]

In determining the amount of attorneys' fees to be awarded in FLSA actions such as this, courts have been instructed not to place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees "encourage[s] the vindication of congressionally

---

[5] Moreover, by shifting the responsibility for a successful plaintiffs' attorneys' fees to the employer, "Congress intended that the wronged employee would receive his full wages ... without incurring any expense for legal fees or costs." *See Roofers Local 307,* 732 F. 2d at 502 (quoting *Maddrix v. Dize,* 153 F. 2d 274, 274 (4th Cir. 1946)).

identified policies and rights." *United Slate, Tile & Composition Roofers, supra,* 732 F.2d at 503.

Consistent with this policy, courts have upheld "substantial awards of attorney's fees even though a

plaintiff recovered only nominal damages." *Posner v. The Showroom, Inc.,* 762 F.2d 1010, 1985

WL 13108 at *2 (6th Cir.1985) (unpublished); *Garcia v. Tyson Foods, Inc.,* 770 F.3d 1300, 1311–

12 (10th Cir. 2014)[Although jury awarded only 8% of damages sought by plaintiffs, attorney fee

award of $3,389,207 was affirmed.]; *Flitton v. Primary Residential Mortg., Inc.,* 614 F.3d 1173,

1178 (10th Cir.2010)[ upholding the district court's decision to award the full amount of fees

requested, based on "substantial success," even though the plaintiff obtained only about 1.3% of

the damages she had requested]; *Bonnette v. California Health & Welfare Agency,* 704 F.2d 1465,

1473 (9th Cir. 1983) *disapproved of on other grounds by Garcia v. San Antonio Metro. Transit

Auth.,* 469 U.S. 528, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985)[despite $20,000 recovery for

plaintiffs, court awarded $100,000 in attorney's fees]; *Cabrales v. Cty. of Los Angeles,* 864 F.2d

1454, 1464–65 (9th Cir. 1988), *cert. granted, judgment vacated,* 490 U.S. 1087, 109 S. Ct. 2425,

104 L. Ed. 2d 982 (1989), and *opinion reinstated,* 886 F.2d 235 (9th Cir. 1989)[court awarded

$152,284 in attorneys' fees where jury award and $150,000 in damages.]; *Gonzalez v. City of

Maywood,* 729 F.3d 1196, 1209 (9th Cir. 2013)[ it is not per se unreasonable for attorneys to

receive a fee award that exceeds the amount recovered by their clients].  In this case, the amount of

the Judgment obtained on behalf of the FLSA Collective Action Group 2 Plaintiffs ($375,000)

exceeds the fees sought by counsel.

There is no doubt that Plaintiffs are "prevailing parties" in this case and entitled to an award

statutory attorneys' fees in light of the fact that Plaintiffs obtained a $375,000 judgment against

Defendants, plus attorneys' fees and costs. See, DN 101, Judgment[confirming that judgment is

entered in favor of Plaintiffs "as to each of their individual claims against Defendants"]; *Carbonell

v. INS,* 429 F.3d 894, 899 (9th Cir.2005) ("[W]e have also found that a litigant prevailed when he

entered into a legally enforceable settlement agreement."); *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). Here, the policies and rights vindicated by Plaintiffs' $375,000 Judgment against Defendants are the payment of overtime wages for all hours worked in excess of forty hours per week. As discussed below in Section III(D)(7) and in the Jones Decl. at ¶27, Plaintiffs have achieved an excellent result in this case as evidenced by the fact that at least one of the Plaintiffs will recover nearly $60,000 in unpaid overtime which equates to nearly three years worth of his salary.

### B.      The Lodestar Method is the Appropriate Method for Determining the Amount of Attorneys' Fees to Be Awarded To Plaintiffs

Consistent with the Supreme Court's decision in *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), to determine the amount of a reasonable fee in FLSA cases such as this, district courts typically proceed in two steps. First, courts generally "apply ... the 'lodestar' method to determine what constitutes a reasonable attorney's fee." *Costa v. Commissioner of Social Sec. Admin.,* 690 F.3d 1132, 1135 (9th Cir. 2012); *Morales v. City of San Rafael,* 96 F.3d 359, 363 (9th Cir.1996); *Ballen v. City of Redmond,* 466 F.3d 736, 746 (9th Cir.2006). Under the lodestar method, the district court "multiplies the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Ballen,* 466 F.3d at 746 (internal quotation marks omitted); *Hensley,* supra, 461 U.S. at 433. This "presumptively reasonable fee," known as the lodestar figure, may then in "rare" and "exceptional" cases be "adjusted" on the basis of "other considerations." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 3098–99, 92 L.Ed.2d 439 (1985) (quoting in part *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). While district courts have discretion to adjust the presumptively reasonable lodestar figure, this circuit "requires a district court to calculate an award of attorneys' fees by *first* calculating the

'lodestar' " before departing from it. *Caudle v. Bristow Optical Co., Inc.*, 224 F.3d 1014, 1028 (9th Cir.2000) (emphasis added); *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008). Notably, the time spent establishing the entitlement to an amount of fees (preparing and defending a motion for attorney's fees) is also compensable. *Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir. 1986).

Plaintiffs' lodestar in this case for FLSA Collective Action Group 2 amounts to $234,180. (390.3 hours multiplied by the hourly rate of $600 per hour.) Jones Decl. ¶9. In support of their lodestar figure, Plaintiffs' counsel have attached detailed contemporaneously created time records setting forth both the type of work performed by the two attorneys representing the Plaintiffs (Mr. Jones and Ms. McInerney) as well as the amount of time spent on said work. See, Jones Decl. ¶¶8-20; Exhibit 1, records of hours worked. Plaintiffs have reduced the total number hours expended in this case by 40% (260.2 hours) in order to attribute their time to only the settling Plaintiffs who are part of FLSA Subclass 2 (the Salaried Cook subclass). *Id.* at ¶¶8-9. In producing detailed time records of the hours spent by Plaintiffs' counsel in this case, Plaintiffs have met their burden of producing evidence sufficient to allow the court to determine the number of hours worked on this case. See, *Gonzalez*, supra, 729 F.3d at 1202. The reasonableness of the hourly rates charged by Plaintiffs' counsel is discussed below in Section III(B)(1).

After calculating the presumptively reasonable fee, the district court may then adjust the lodestar upward or downward based on 12 factors. *See Hensley,* supra, 461 U.S. at 430 n. 3 (citing *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717 (5th Cir. 1974) *abrogated on other grounds by Blanchard v. Bergeron,* 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989) (*Johnson's* "list of twelve" thus provides a useful catalog of the many factors considered in assessing the reasonableness of an award of attorney's fees ... ." ); *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 at 70 (9th Cir. 1975) *cert. denied,* 425 U.S. 951, 96 S. Ct. 1726, (1976) (applying

*Johnson* factors to FLSA case); *Newhouse v. Roberts Ilima Tours,* 708 F. 2d 436, 441 (9th Cir. 1983) (referring to the *Johnson* factors as *Kerr* factors.).

The twelve facts are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[6] *See Johnson,* 488 F.2d at 717–19.  The application of these factors to the instant case is discussed below in Section III(D).

**1.     The Hourly Rates Sought By Plaintiffs' Counsel Are Reasonable**

In computing the lodestar amount, this Court must determine a reasonable hourly rate to use for Plaintiffs' counsel. *Gonzalez, supra,* 729 F.3d at 1205-1206.  The established standard used to determine a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.  *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  The relevant "community" is the forum in which the district court sits.  *Gonzalez,* supra, 729 F.3d at 1205-1206.  It is well recognized that affidavits of the plaintiffs' attorneys and other attorneys in the community regarding prevailing fees in the community, and rate determinations in other cases are satisfactory evidence of the prevailing market rate. *Camacho, supra,* 523 F.3d at 980.

Here, Plaintiffs submit the following evidence in support of the reasonableness of their hourly rate:

---

[6] These 12 factors are the same as the factors required by L.R. 54-16.

(1)     The declaration of Mr. Jones outlining the experience, qualifications, and the hourly rates charged by Plaintiffs' counsel as well as the market rate for services rendered in this community;

(2)     The declaration of Mark Thierman of Thierman Buck, LLP, the only other firm in Northern Nevada other than Jones Law Firm that also prosecutes complex collective action cases on behalf of employees, setting forth the rates charged by the members of that firm for similar legal services; and

(3)     Fee determination awards that Plaintiffs' counsel has received from other courts in support of the reasonableness of their hourly rates.  See, Jones Decl. ¶¶21-23; Exhibits 2-5 [fee determination awards from other cases for Plaintiffs'counsel]; Thierman Decl. ¶¶9-13.

Plaintiffs' counsel have been working together for the last thirteen years and, during that time,  have handled more than thirty-five (35) complex class and collective action cases such as this on behalf of employees on a wide range of wage and hour related issues. See, Jones Decl. ¶¶3-7 [listing a sampling of the cases that Plaintiffs' counsel have handled].  During this time, Plaintiffs' counsel have secured several multimillion dollar settlements in similar class or collective actions in both California and Nevada.  *Id.* at ¶6.  A summary of such cases include:

- *Young v. Cannery Casino Resorts, LLC,* [Eighth Judicial District Court of Nevada, Honorable Kenneth C. Cory (Case No. A-10-628271-C)]  $1, 850,000 settlement of class action alleging failure to pay for all hours worked under the Nevada labor code;

- *Blake v. Nevada Property 1, LLC,* [Eighth Judicial District Court of Nevada, Honorable Rob Bare (Case No. A-13-675007-C)] $1,500,000 settlement of class action alleging failure to pay for all hours worked under the Nevada labor code;

- *Staples Overtime Cases,* [Orange County Superior Court, Honorable Ronald L. Bauer (JCCP Case No. 4235)] $38,000,000 settlement of class action brought under the California Labor Code alleging the misclassification of employees as exempt from overtime;

- *West v. Circle K Stores, Inc,*[ United States District Court for the Eastern District of California, Honorable William B. Schubb (Case No. S-04-0438)] $5,000,000 settlement of

class action brought under the California Labor Code alleging failure to pay for all hours worked and missed meal and rest breaks;

- *Doornbos v. Pilot Travel Centers, LLC* [ United States District Court for the Southern District of California, Honorable Roger T. Benitez (Case No. 04CV00044), $3,900,000 settlement of class action brought under the California Labor Code alleging the misclassification of employees as exempt from overtime.

Further, Plaintiffs' counsel represent one of only two firms in this community who prosecute complex class and collective action cases alleging violations of state and federal wage and hour laws on behalf of employees. Jones Decl. ¶22. The rates sought by Plaintiffs counsel here ($600 per hour) are reasonable and in line with those charged by Thierman Buck, LLP which consists of lawyers of comparable skill, experience, and reputation. *Id;* Thierman Decl. ¶10. For example, Mr. Thierman's current hourly rate for cases such as this is $800 an hour, $200 an hour more than the rate charged by Plaintiffs' counsel here. *Id.* The rates for the other attorneys in Thierman Buck LLP are $500 for Josh Buck, who has been practicing law for eight years, and $400 an hour for Leah Jones who has been practicing law for seven years. Jones Decl. ¶22; Thierman Decl. ¶¶9-11. Plaintiffs' counsel in this case (Mr. Jones and Ms. McInerney) have each been practicing law for eighteen years, justifying the increase in their hourly rates over that of Mr. Buck and Ms. Jones.[7]

The reasonableness of the rates sought by Plaintiffs counsel are also confirmed by the fee awards they have received from other cases setting their hourly rates at $600 an hour or higher. Specifically, as discussed in the Jones Declaration at ¶23, the hourly rates sought by Plaintiffs' counsel have been approved in the following cases:

- 2015, *Rauenzahn v. Corgenix Medical Corporation*, (Second Judicial Case No. CV-14-01907)[approving Mr. Jones hourly rate of $600 an hour based on a lodestar analysis] Ex. 2 and 3;

---

[7] Further support for the reasonableness of the hourly rates charged by Plaintiffs' counsel is the fact that each of the Plaintiffs agreed in their fee agreements with counsel that an hourly rate of $600 would be used to compensate Counsel in the event any disputes arising regarding the value of counsel's services.

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

- 2012, *Puchalski v. Taco Bell Corp.* (San Diego Superior Court Case No. 870429)[approving the hourly rates of Mr. Jones and Ms. McInerney in a class action case that settled during its fourth month of trial] Ex. 4;

- 2006, *Vicki West v. Circle K Stores Inc.*, (Case No. S-04-0438 WBS)[approving the hourly rates of Mr. Jones and Ms. McInerney in excess of $700 an hour under a lodestar analysis] Ex. 5.

The reasonableness of the rate sought by Plaintiffs' counsel is also confirmed by reference to other decisions in which the hourly rates of attorneys with similar years of experience have been set. For example, in *Gurrero v. California Department of Corrections and Rehabilitation*, 2016 WL. 3360638 at \*12 (N.D. Cal. 2016) the court approved an hourly rate of $654.50 per hour for an attorney who, like Plaintiffs' counsel, also has been practicing law for eighteen years. Based on the above, Plaintiffs submit that the hourly rates charged by counsel are reasonable.

### C.    Plaintiffs' Apportionment of the Work Performed in This Case Between the Two Subclasses is Reasonable

As the Court is aware, the present settlement pertains to only FLSA Collective Action Group 2 (the Salaried Cook Subclass) and not FLSA Collective Action Group 1. As a result, during the hearing on the acceptance of the Rule 68 offer of judgment, the Court inquired as to how the hours spent on this case would be apportioned between the two subclasses for purposes of this fee application. See, DN96. As a starting point, the Rule 68 Offer of Judgment is silent on the issue of apportionment. See, DN. 91. Nor does the Rule 68 Offer of Judgment limit the recovery of attorneys' fees only to the time spent litigation the case on behalf of FLSA Subclass 2 (the Salaried Cook Subclass). Instead, the Rule 68 Offer simply states, *plus attorneys' fees and costs to be determined on post-judgment briefing before the Court. Id. (emphasis added).* Because the Rule 68 Offer is silent on the issue of apportionment and does not specifically limit the recovery of attorneys' fees and costs only to the prosecution of FLSA Collective Action Group 2, Plaintiffs would be well within their rights to seek attorneys' fees for the entire time spent prosecuting this

case on behalf of both groups.  See, *Erdman v. Cochise Cnty., Arizona,* 926 F.2d 877, 880 (9th Cir.1991)[confirming that ambiguities in a Rule 68 offer will be construed against the offeror as the drafting party.]

Nevertheless, Plaintiffs' counsel only seeks attorneys' fees for the hours attributed to the prosecution of FLSA Collective Action Group 2.  Jones Decl. ¶¶8-9.  As noted previously, the claims of both FLSA Collective Action groups stem from the same common nucleus of operative facts, the causes of action asserted for both groups are identical, and the same law applies equally to both groups entitlement to unpaid overtime wages.  This is due to the fact that Defendants uniformly classified <u>both</u> FLSA subclass groups as exempt from overtime pursuant to the <u>same</u> overtime exemption – the executive exemption. *Id.*

In this case, all of the legal research, motion practice, written discovery, investigation, and depositions applied equally to both subclasses due to the fact that all Plaintiffs were classified as exempt under the executive exemption.  In addition, the same law regarding how to properly calculate overtime wages applied equally to both classes as well. *Id.*  For example, the time spent by Plaintiffs' counsel researching and drafting the Motion to Facilitate Notice of this Action Pursuant to 29 U.S.C. §216(b) applied equally to all members of FLSA Collective Action Groups 1 and 2.  The same is true with the time spent deposing Defendant Sonner and researching and drafting the Motion to File a Second Amended Complaint asserting that Sonner is a joint employer and jointly and severely liable with Bully's for the violations of the FLSA. See, DN 63.

In apportioning the hours spent between the two subclasses in this case for purposes of calculating the time spent and corresponding lodestar amount, counsel for Plaintiffs initially reduced the hours worked on this case by roughly 10% in order to eliminate any perceived duplication in the work performed by the two Plaintiffs attorneys working on this case, administrative work performed by non-attorneys, and time spent on phone calls with defense

counsel which were deemed to be *de minimis*. See, Jones Decl. ¶8. After making these reductions, the total time spent by Plaintiffs' counsel on this case, as a whole, amounts to 650.5 hours. *Id.;* Ex. 1, attorney time records. Of this amount, Mr. Jones spent 608.75 hours working on this case and Ms. McInerney spent 41.75 hours. *Id.* In order to arrive at the total time spent on the prosecution of this case attributable to only FLSA Collective Action Group 2, for which Plaintiffs seek attorney's fees, Plaintiffs' counsel further reduced the total hours worked by both attorneys on this case by 40% or 260.2 hours. *Id* at ¶9. This reduction was made based on the fact that 60% of the total Plaintiffs in this case (15 out of 25) are part of FLSA Subclass 2 (the Salaried Cook subclass). *Id.* After making this deduction, the total time spent prosecuting this case on behalf of FLSA Collective Action Group 2 amounts to 390.3 hours. Applying the same 40% reduction to the total time spent, Mr. Jones spent 365.25 hours and Ms. McInerney spent 25 hours prosecuting this case on behalf of the FLSA Collective Action Group 2 Plaintiffs. *Id.* Plaintiffs submit that the allocation made is more than fair to Defendants under the circumstances.

### D. An Analysis of the 12 Factors Does Not Support A Downward Departure From Plaintiffs' Lodestar

As noted in Section III(B), after calculating the presumptively reasonable fee (the lodestar amount), the district court may then adjust the lodestar *upward* or downward based on 12 factors. However, the Ninth Circuit has repeatedly cautioned that "only in rare instances should the lodestar be adjusted on the basis of other considerations." *Harris v. Marhoefer,* 24 F.3d 16, 18 (9th Cir.1994); *United States v. $28,000.00 in U.S. Currency*, 802 F.3d 1100, 1108 (9th Cir. 2015). Additionally, it is error to reduce fees based on facts that are subsumed in the lodestar calculation. *United States v. $28.000, supra,* 802 F.3d at 1108. Of the twelve factors discussed below, the following factors have been deemed to be subsumed in the lodestar calculation and therefore "cannot serve as independent bases for adjusting fee awards: (1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the

results obtained." *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 n. 6 (9th Cir. 1987) [citing *Blum*, 465 U.S. at 898–900, 104 S.Ct. at 1548–1549.)] In addition, the Ninth Circuit has also held that the existence of a contingent fee agreement is a subsumed factor.  See, *United States v. $28.000, supra*, 802 F.3d at 1108.

Before discussing each of these factors, it is important to note that Plaintiffs are <u>not</u> requesting an upward adjustment to the lodestar, even though such an increase is warranted in this case.  Additionally, an analysis to the twelve factors does not warrant a downward adjustment to Plaintiffs' lodestar.  To the contrary, each of the twelve factors discussed below support the fees requested by Plaintiffs' counsel.

### 1.    Time and Labor Required.

As set forth in Exhibit 1, attorney time records, Plaintiffs' counsel have spent a significant amount of time litigating the claims of FLSA Collective Action Group 2.  In addition to the time records, Plaintiffs' counsel have also provided a declaration setting forth in more detail a synopsis of the type of work performed on this case and the hourly rates charged by Plaintiffs' counsel for such work.  See, Jones Decl. ¶¶10-19.  Briefly, the type of work completed on this case includes numerous meetings with prospective witnesses and plaintiffs, drafting and revising complaints and amended complaints, motion practice on significant issues, researching complex areas of law such as similarly situated status under 29 U.S.C. §216(b) and joint employers under the FLSA, substantial written discovery, the review and analysis of voluminous records and documents, conducting and defending numerous depositions on a host of topics, mediation preparation, and trial management.

### 2.    The Novelty and Difficulty of the Questions

This factor is deemed to be subsumed in the initial lodestar calculation.  As discussed in the Jones Declaration, Plaintiffs' counsel is one of only two firms in Northern Nevada that practice

complex wage and hour collective action litigation such as is involved in the instant case on behalf of employee-plaintiffs. Jones Decl. ¶22; Thierman Decl. ¶10.  As this Court can appreciate, litigating this case on behalf of 25 Plaintiffs, as opposed to a single Plaintiff, increased the difficulty of prosecuting this action substantially.  *Id.* at ¶10.  Further, prosecuting cases such as this as a collective action is inherently complex.  Doing so requires specialized knowledge and skill in collective action law, procedure, and trial methodology. *Id.* at 11.  This case presents several difficult issues including: (1)  obtaining collective action status under 29 U.S.C. §216(b); (2) maintaining collective action states under 29 U.S.C. §216(b); (3) determining whether the plaintiffs qualify as exempt from overtime under the four prong executive exemption test set forth in 29 C.F.R. §541.100; (4) determining the proper method to use when calculating back overtime pay; and (5) analyzing discrete legal issues such as whether and in what circumstances individuals can be held as joint employers under the FLSA. See, Jones Decl. ¶10-20.

### 3.  The Skill Requisite to Perform the Legal Service Properly

This factor is also deemed to be subsumed in the initial lodestar calculation. Prosecuting multi-plaintiff cases such as this a collective action requires specialized, knowledge, training and skill and also requires an in-depth understanding of not only the substantive law but also trial methodology. See, Jones Decl. ¶24. The skill and specialized knowledge required to prosecute cases such as this is reflected by the fact that there are only a handful of lawyers in Northern Nevada that prosecute complex cases such as this on behalf of employees as class or collective actions.  In addition, this Court can appreciate that litigating a complex collective action case such as this against a well known defendant represented by a well respected law firm such as Holland and Hart in an unsettled area of law is not appealing to most lawyers. Jones Decl. ¶24.  Plaintiffs submit that the work completed by Plaintiffs' counsel to date in this case, as well as the result

achieved on behalf of FLSA Collective Action Group 2, speak to the skill with which this case has been prosecuted to date.  See, Jones Decl. ¶13.

4.    **The Preclusion of Employment by the Attorney Due to Acceptance of the Case.**

As reflected in Exhibit 1, the amount of work performed on this case has been substantial. As a result of the significant time restraints imposed by this case, as well as the complexity of the issues involved, counsel were precluded from taking additional cases. Jones Decl. ¶26.  Certainly this factor does not warrant a downward departure from the lodestar.

5.    **The Customary Fee and Whether the Fee is Fixed or Contingent**

To date, Plaintiffs' counsel has received no payment for the substantial amount of time, and out of pocket expenses, devoted to this case. Jones Decl. ¶24.  Nor will Plaintiffs' counsel receive any contingency fee award from the FLSA Collective Action Group 2 Plaintiffs' individual judgment amounts.  *Id.*  While it is true that Plaintiffs' counsel have a contingency fee agreement with each of the 25 plaintiffs involved in this case, it is well established that the attorney's fee provided for in a contingent-fee agreement is <u>not</u> a ceiling upon the fees recoverable and does <u>not</u> act as a cap on the amount of statutory fees to be awarded. See, *Blanchard v. Bergeron*, 489 U.S. 87, 96, 109 S. Ct. 939, 946, 103 L. Ed. 2d 67 (1989): *Corder v. Gates,* 947 F.2d 374, 377–78 (9th Cir.1991); *United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 755 (9th Cir. 2011). As a result, a court "may not rely on a contingency agreement to increase or decrease" the lodestar, *Van Gerwen v. Guar. Mut. Life Co.*, 214 F.3d 1041, 1048 (9th Cir.2000). *United States v. $28,000.00, supra,* 802 F.3d 1100 at 1108.

Plaintiffs' counsel assumed a very real risk in taking this case on a contingency basis, investing time, effort, and money in the action with no guarantee of recovery. As discussed above in Section III(B)(1), the hourly billing rate of Plaintiffs' counsel is well within the market rate for contingency fee lawyers of this caliber. *See,* Jones Decl. ¶¶21-24; Thierman Decl. ¶¶9-12. In

considering the contingent nature of the work performed by Plaintiffs' Counsel, the market rate for such services, as well as the risk involved in the costs and expenses that have been advanced, these factors support the fee award requested. *See Graham v. Daimler Chrysler Corp.,* 34 Cal.4th 553, 580, 101 P.3d 140 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted).

6.   <strong>Time Limitations Imposed by the Client or the Circumstances</strong>

The time and effort put forth by Plaintiffs' counsel in this case is discussed above and detailed further in the Jones Decl. at ¶¶8-20.  An additional factor that bears mention is that none of the Plaintiffs involved in this case is a native English speaker and, due in large part to this fact, many of the Plaintiffs were hesitant to step forward and press their claims in court. *Id.* at ¶ 12. This is especially true in light of the fact that at the time this litigation was commenced many of the Plaintiffs were currently employed by Defendants and were fearful that their participation would cause them to lose their job.  *Id.* Here again, this factor does not support a downward adjustment from the lodestar.

7.   <strong>The Amount Involved and the Results Obtained</strong>

Plaintiffs, and their counsel, are extremely pleased with the result achieved in this case both in terms of the <u>amount</u> of the judgment obtained as well as the <u>affect</u> that this litigation had on Defendants' business practices. See, Jones Decl. ¶27.  As noted above, <u>after</u> the filing of this litigation Defendants changed their business practices and reclassified <u>all</u> of their Cooks from salaried exempt employees to hourly non-exempt employees. Once this reclassification occurred, Defendants began paying the Cooks overtime for all hours worked in excess of forty (40) hours per week. Thus, this litigation not only benefited the Plaintiffs who were working for Defendants as

Cooks at the time this litigation was filed, but also those persons who will be employed by Defendants as Cooks in the future. *Id.*

The amount of each Plaintiffs individual Judgment against Defendants is set forth in DN 101. Setting aside the fact that the combined amount of the Judgment is $375,000, the individual awards to the Plaintiffs are substantial. In fact, nine of the fifteen Plaintiffs have obtained a Judgment against Defendants far in excess of $10,000 in back overtime wages. This amount is truly significant given the amounts paid to these Plaintiffs during their employment with Defendants. On average, the members of FLSA Collective Action Group 2 earned $27,481.15 per year during their employment with Defendants and worked 58.5 hours per week. Jones Decl. ¶27. This means that the average hourly rate for these Plaintiffs amounted to only $9.02 per hour. As a result, the amount of the Judgment obtained on behalf of these Plaintiffs is truly meaningful.

With respect to the amount of the Judgment obtained, one of the primary issues in dispute between the parties in this case is the proper method for calculating back overtime pay. Defendants contend that the fluctuating work week method ("FWW") for calculating back overtime pay applies in this case. See, DN84-3. Plaintiffs strongly disagree and contend that unpaid overtime is properly calculated at one and one half times the employee's hourly rate of pay and that the FWW method does not apply in this case. See, DN84-2. The difference between the two methods for computing back overtime pay is significant. Below is a chart listing the amount of the Judgment for each Plaintiff in this case versus the amount that each Plaintiff would recover under the FWW method for computing back overtime pay which Defendants contend applies to this case:

| PLAINTIFF | AMOUNT OF JUDGMENT | AMOUNT UNDER FWW |
|---|---|---|
| Fernando Torres Barron | $28,731.23 | $8,055.63 |
| Luis Anguiano | $46,319.94 | $13,082.10 |

| | | |
|---|---|---|
| Jamie Castillo | $48,067.06 | $13,181.97 |
| Cynthia Barron Torres | $38,820.33 | $11,509.37 |
| Alonso Garcia | $17,304.97 | $5,697.87 |
| Jamie Lugo | $7,102.14 | $2,330.59 |
| Osman Rivera | $29,026.42 | $8,420.40 |
| Feliciano Santos | $24,452.50 | $7,522.21 |
| Mauricio (Eduardo) Silva | $39,797.14 | $11,228.84 |
| Santos Hernandez | $3,165.26 | $1,040.56 |
| Octavio Gaspar | $1,248.44 | $575.82 |
| Juan Angiano Barajas | $4,027.31 | $1,347.83 |
| Antonio Garcia Pacheco | $59,394.67 | $11,338.76 |
| Angel Raudales | $9,662.84 | $2,837.66 |
| Darwin Hernandez | $17,879.75 | $8,326.65 |
| TOTAL | $375,000 | $106,496.26 |

As reflected in the chart above, Plaintiffs obtained a judgment in excess of 350% of the damages Defendants contend that Plaintiffs are owed.[8]  Plaintiffs submit that such a result is exceptional.

### 8.    The Experience, Reputation, and Ability of the Attorney.

The qualification and experience of counsel for Plaintiffs is set forth in detail in the Jones Decl.  In *Johnson*, *supra*, 488 F.2d at 718-19, the court noted that an attorney who specializes in a particular area of law "may enjoy a higher rate for his expertise than others, providing his ability corresponds with his experience." Briefly, counsel are experienced in complex wage and hour cases such as the instant case and are one of only two firms in this jurisdiction who handle such

---

[8] As Defendant maintained records of the hours worked and salaries paid to each of the Plaintiffs involved in this case, the amount of the Judgment for each Plaintiff directly corresponds with the amount of unpaid overtime worked by each Plaintiff.

cases. Jones Decl. ¶¶2-7.   In addition to obtaining several settlements in complex class and collective action cases such as this, Plaintiffs' counsel have been involved in several cases which helped shape the law relating to class and collective actions.

For example, In *Doornbos v. Pilot Travel Centers,* the Honorable Jeffrey T. Miller of the United States District Court for the Southern District of California (Case No. 04CV00044), granted Plaintiffs' motion for the facilitation of notice pursuant to 29 U.S.C. §216(b) to a <u>nationwide</u> class of over 550 current and former managers alleging that they were misclassified as exempt from overtime under the FLSA.  See, Ex. 6, Order granting Plaintiffs' Motion to Facilitate Notice in *Doornbos v. Pilot Travel Centers, LLC*.  In that same case, Plaintiffs' counsel defeated the defendant's Motion to Decertify the Conditional FLSA Class. See, *Doornbos v. Pilot Travel Centers,* 2005 WL. 6166032 (N.D. Cal. 2005).  In the Order denying Motion to Decertify Conditional FLSA Certification, the Honorable Roger T. Benitez held that in motions to certify or decertify collective actions under the FLSA courts need not focus on whether the defendant employers' policy violated the law. This is an important decision interpreting the appropriate standard to be used by courts when determining whether employees are similarly situated under 29 U.S.C. §216(b) in collective action cases. This decision has been cited with approval by other courts.  See, *Russell v. Illinois Bell Tel. Co.*, 721 F. Supp. 2d 804, 815 (N.D. Ill. 2010); *Brand v. Comcast Corp.*, No. 12 CV 1122, 2012 WL 4482124, at *7 (N.D. Ill. Sept. 26, 2012).

Similarly, in *Currie-White v. Blockbuster, Inc.*, 2010 WL 1526314  (N.D. Cal. Apr. 15, 2010) Plaintiffs' counsel were successful in obtaining an Order allowing Plaintiffs, pre-certification, to obtain the discovery of the contact information for a large number of putative class members in a class action brought Fed. Rule. Civ. P. Rule 23. The pre-certification production of the contact information for putative class members remains to be a hotly contested area of law in both class and collective action cases.   To this day, the *Currie-White* decision is frequently cited

by District Courts in this Circuit in large class and collective action cases when determining whether to allow Plaintiffs to obtain the contact information for putative class or collective members before certification is ruled upon.  According to Westlaw, this decision has been cited eighteen times by Courts in addressing similar issues. Jones Decl. ¶7; Ex. 7, Westlaw citations for *Currie-White v. Blockbuster, Inc.*, 2010 WL 1526314 (N.D. Cal. Apr. 15, 2010).

Plaintiffs submit that these cases, as well as those discussed in the Jones Declaration at ¶¶6-7, speak to the experience, reputation and ability of Plaintiffs' counsel.

9.    **The Undesirability of the Case**

This factor is not applicable.

10.    **The Nature and Length of the Professional Relationship with the Client**

Plaintiffs' counsel has represented the Plaintiffs in this action beginning in early January of 2015.

11.    **Awards in Similar Cases**

Our research has not revealed fee awards from this jurisdiction in similar collective action cases alleging that groups of employees were misclassified as exempt and entitled to unpaid overtime.  However, as discussed above in Section III(B), courts routinely award attorneys' fees in cases such as this where the fees exceed that recovered by the plaintiff.  This is not the case here.

IV.    **COSTS**

The Rule 68 Offer of Judgment specifically states that Defendants allow Judgment to be entered against them for attorney's fees and <u>costs</u>.  Plaintiffs' counsel have incurred $14,769.91 in costs associated with the prosecution of this action on behalf of FLSA Collective Action Groups 1 and 2 through the date of the acceptance of the Rule 68 offer. See, Jones Decl. ¶28; Exhibit 8, Memorandum of Costs. In order to apportion the costs to the FLA Collective Action Group 2 Plaintiffs only, the total amount of costs sought by Plaintiffs has been reduced by 40%. As a result,

1   Plaintiffs seek the recovery of $8,861.94 in costs. The costs incurred include, court filing fees,

2   service of process fees, deposition costs, mediation fees, expert witness fees, interpreter fees, and

3   legal research fees. See, Jones Decl. ¶28; Exhibit 8.

4

5   **V.    CONCLUSION**

6          Based on the above, Plaintiffs respectfully request this Court to issue an Order awarding

7   Plaintiffs $234,180 in attorneys' fees and $8,861.94 in litigation costs.

8

9

10                                              Respectfully submitted,

11   Dated September 28th, 2016                 JONES LAW FIRM

12                                              By:   /s/ Charles A. Jones
                                                Attorneys for Plaintiffs
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

## CERTIFICATE OF SERVICE

I, the undersigned, declare as follows:

I am employed in the County of Washoe, State of Nevada.

I am over the age of eighteen (18) years and not a party to the within action; my business address is 9585 Prototype Court, Suite B, Reno Nevada, 89521.

On September 28, 2016, I served the foregoing documents describes as:

1.    PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS.

2.    DECLARATION OF CHARLES A. JONES IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS.

3.    DECLARATION OF MARK R. THIERMAN.

on all interested parties in this action addressed to the addressee as follows:

R. Calder Huntington, Esq.
Anthony L. Hall
AHall@hollandhart.com
RCHuntington@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Suite 200
Reno, Nevada 89511
*Attorneys for Defendant*

___X___ VIA ELECTRONIC MAIL.

___X___ VIA MAIL: The sealed envelope with postage thereon fully prepaid was placed for collection and mailing following ordinary business practices.  I am aware that on motion of the party served, service is presumed invalid if the postage cancellation date or postage meter date on the envelope is more than one day after the date of deposit for mailing set forth in this declaration. I am readily familiar with JONES LAW FIRM's practice for collection and processing of documents for mailing with the United States Postal Service the same day as the day of collection in the ordinary course of business.

I declare under penalty of perjury under the laws of the State of Nevada that the above is true and correct.

Executed on September 28, 2016, at Reno, Nevada.

Nikki Nevarez