Anthony L. Hall, Esq.
Nevada Bar No. 5977
ahall@hollandhart.com
R. Calder Huntington, Esq.
Nevada Bar No. 11996
rchuntington@hollandhart.com
Erica C. Smit, Esq.
Nevada Bar No. 13959
ecsmit@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000; Fax: (775) 786-6179

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ERNESTO AMADOR and JUAN CARLOS "VICTOR" MARTINEZ, as individuals and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BULLY'S SPORTS BAR & GRILL, INC. a Nevada Corporation, and SHARLING "JO" SONNER, and individual,<br><br>Defendants. | CASE NO.: 3:15-CV-00022- HDM-VPC<br><br>**DEFENDANT BULLY'S SPORTS BAR & GRILL, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS** |

Defendants Bully's Sports Bar & Grill, Inc. ("Bully's") and Sharling "Jo" Sonner ("Sonner") (jointly, "Defendants" or "Bully's"), hereby oppose Plaintiffs' Motion for Attorneys' Fees and Costs. This Opposition is based on the following memorandum of points and authorities.

DATED October 14, 2016.

/s/ Anthony L. Hall
Anthony L. Hall, Esq.
Nevada Bar No. 5977
R. Calder Huntington, Esq.
Nevada Bar No. 11996
Erica C. Smit, Esq.
Nevada Bar No. 13959
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000; Fax: (775) 786-6179

*Attorneys for Defendant*

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This matter focuses exclusively on whether the requested attorney's fees and costs in this collective action case involving the Fair Labor Standards Act ("FLSA") are reasonable under the circumstances. While Plaintiffs may be entitled to an award of attorney's fees and costs, the $600 hourly rate that Plaintiffs seek is grossly excessive for this community, and it is far above the rate at which attorneys in the same practice charge paying clients. An attorney should not be able to recoup a higher hourly rate because of a fee-shifting statute than he or she would if a client was paying the attorney hourly for the same work. In addition to the excessively high hourly rate, Plaintiffs seek attorney's fees and costs on pending claims for which they are not the prevailing party, nor are they likely to be. To avoid billing for still-pending claims, Plaintiffs proposed an across-the-board 40 percent reduction to the total amount of attorney time and costs expended in this action. This is not the proper method for determining the reasonable lodestar. Rather, Plaintiffs bear the burden of demonstrating that their billing records were only for the successful claims, not pending or unsuccessful ones. For the reasons stated herein, Plaintiffs have failed to meet this burden and Plaintiffs' requested lodestar should be reduced as explained below.

## BACKGROUND

On January 16, 2015, Plaintiffs filed a collective action complaint against Bully's for failure to pay wages and overtime under 29 U.S.C. §§ 201, 207 (2012). The collective action focused on three groups of employees: kitchen managers ("KMs"), assistant kitchen managers ("AKMs"), and salaried cooks. The parties stipulated to several matters during the case, such as a stipulation to file a First Amended Complaint ("FAC"), a stipulation conditionally certifying the action and approving the circulation of notice, a stipulation to extend discovery deadlines, a stipulation to file a Second Amended Complaint ("SAC"), a stipulation to file a Third Amended Complaint ("TAC"), and a stipulated proposed judgment. Even though defense counsel explained that there were three distinct groups, the FAC divided the class of KMs, AKMs, and salaried cooks into two separate subclasses: 1) KMs and AKMs, and 2) salaried cooks. The SAC maintained this

distinction. ECF No. 72, ¶ 1. However, discovery convinced Plaintiffs' counsel that Defendants' initial position was correct, and the TAC divided the classes further, resulting in three subclasses: 1) KM, 2) salaried cooks, and 3) AKMs. ECF No. 98, ¶ 1. Additionally, this level of cooperation is uncommon in these types of matters, as Plaintiffs' counsel readily admits in his declaration supporting Plaintiffs' Motion. *See* Declaration of Charles A. Jones, attached to Plaintiffs' Motion for Attorneys' Fees and Costs, at ¶ 13 [hereinafter Jones Decl.]. This was an effort to engender cooperation and maintain lower fees on both sides of this litigation. The stipulated proposed judgment ensued after Bully's made a Rule 68 offer of judgment solely for the cook-subclass for $375,000, excluding attorney's fees and costs, which were to be awarded on post-judgment briefing. The cook-subclass accepted the offer of judgment. Thereafter, Plaintiffs moved this Court for $234,180 in attorney's fees and $8,861.94 in costs.

## ARGUMENT

### I. Entitlement to Attorney's Fees

Bully's does not dispute that Plaintiffs are entitled to an award of attorney's fees, as such an award was anticipated by the offer of judgment. But those fees must be limited to a "reasonable" amount. *See* 29 U.S.C. § 216(b) ("[I]n addition to any judgment awarded to the plaintiff or plaintiffs, [a court shall] allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). Nonetheless, Bully's disputes the *amount* of attorney's fees requested as unreasonable. *See, e.g.*, *Tallman v. CPS Sec. (USA), Inc.*, 23 F. Supp. 1249, 1260 (D. Nev. 2014) (recognizing that the amount of an award is discretionary and must be reasonable).

### II. Calculation of Attorney's Fees

#### A. Lodestar versus Percentage-of-Recovery Method

There are two methods for calculating an award of attorney's fees: the lodestar method and the percentage-of-recovery method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). In a non-common fund settlement, such as this, the Ninth Circuit applies the lodestar method. *Id.* at 941-42 (recognizing that "[t]he 'lodestar method' is appropriate in class actions brought under fee-shifting statutes," while either test may be used for a common fund

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

settlement). To calculate an attorney's fee award under the lodestar method, courts "multiply[] the number of hours the prevailing party *reasonably* expended on the litigation (as supported by *adequate documentation*) by a *reasonable* hourly rate for the *region* and for the experience of the lawyer." *Id.* at 941 (emphasis added). The Court uses its discretion in making these determinations. *See Tallman*, 23 F. Supp. at 1260

Here, as a non-common fund settlement, the lodestar method applies. The lodestar amount requested by Plaintiffs is $234,180.00. *See* Motion, at 11. Plaintiffs determined this amount by multiplying 390.3 hours by a $600 hourly rate. *Id.* This amount is unreasonable for at least two reasons. First, the allocation of hours is unreasonable because it is based on a percentage of successful plaintiffs versus plaintiffs with pending claims, instead of using the caselaw-regarded method of a line-item entry of actual work performed on the successful claims. Second, the requested rate of $600 per hour far exceeds the reasonable hourly rate for the Northern Nevada legal community in this type of wage and hour and class/collective action litigation.

**B. Allocation of Hours in Collective Action Partial Settlement**

If a collective action is partially settled, an attorney's fees may only include work on the successful claims and not any pending or unrelated claims. *See Lane Capital Acquisitions & Mgmt. Co.*, 554 F. Supp. 2d 1345, 1348 (S.D. Fla. 2008) (prohibiting a fee award on "excessive and unnecessary work"). "Work on any unsuccessful claims is not 'deemed to have been expended in pursuit of the ultimate result achieved.'" *Id.* at 1348 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). If a request for attorney's fees does involve time spent on other claims, "an award to a prevailing party requires that any 'unrelated claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim.'" *Id.* at 1348-49 (quoting *Hensley*, 461 U.S. at 435).[1]

[1] Plaintiffs' argument that the Rule 68 offer of judgment did not specify the allocation of attorney's fees, entitling Plaintiffs "to seek attorney's fees for the entire time spent prosecuting this case on behalf of both groups" is entirely inaccurate. *See* Motion, at 15-16. Beyond the case law prohibiting otherwise, *see Hensley*, 461 U.S. at 435, the plain language of the offer of judgment and corresponding award of attorney's fees clearly only applies to the successful claims—the cooks.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

This general rule places the burden on the party requesting attorney's fees to prove that all requested fees were related to the underlying judgment and not other unsuccessful or pending claims. This burden must be met by an examination of the actual billing entries, not a general estimation of time spent. *Cf. Tallman*, 23 F. Supp. at 1260 (analyzing the reasonable hours expended by scrutinizing billing entries); *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 13 (S.D.N.Y. 2015) ("[F]or purposes of lodestar, we will identify the line-items in counsel's records attributable to the unsuccessful motion to certify and reduce the award accordingly."). In essence, the same rules that apply to billing in the private attorney-client relationship apply to FLSA awards of attorney's fees. *See Hensley*, 461 U.S. at 434 ("In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority." (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980)).

In this case, Plaintiffs calculated their requested lodestar by applying a 40 percent reduction to the total hours billed for successful and still-pending claims. *See* Motion, at 11. Plaintiffs' rationale was that because 60 percent of the individuals comprising the entire collective action were salaried cooks (15 out of 25 Plaintiffs were salaried cooks), this entitled Plaintiffs to 60 percent of the total hours worked for the partial settlement of the collective action (390.3 hours instead of 650.5 hours). *Id.* This is an inappropriate calculation. Plaintiffs, instead, should have demonstrated which billing entries pertained only to the salaried cooks, excluding those that applied to pending claims.[2] And, to the extent that the remaining billing entries cannot be divided because the tasks apply to both successful and pending claims, the 60 versus 40 percent split is still improper. *Cf. Montanez v. Simon*, 755 F.3d 547, 557 (7th Cir. 2014) ("'No algorithm is available' for adjusting a lodestar to reflect partial or limited success. When the judge cannot easily separate the successful and unsuccessful work, 'there is nothing to do but make an across-the-board reduction that seems appropriate in light of the ratio between winning and losing claims.'").

[2] If the remaining Plaintiffs are successful on their claims, counsel will have the opportunity to seek these fees.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Once the wholly unrelated (or otherwise objectionable) billing entries are deducted, a 60-40 split is improper for the remaining tasks that applied "equally" to all three subclasses because the work was not increased on a per-plaintiff basis. Rather, the only distinction between the work is its relationship to each class. Indeed, each entry must be examined to see if it relates to one or all three subclasses as the KMs and AKMs were further split into two groups because they have factual and legal distinctions. *See* ECF No. 98, ¶ 1. Plaintiffs allege that when they conducted research on issues, said research "equally" helped the KMs, AKMs, and cooks. Defendants agree that in most instances this is correct. This admission, in turn, requires that such entries be divided by one-third (*e.g.*, one-third for each group to which the research applied "equally"). Thus, because of the purported equal contribution to each of the three subclasses, a one-third split is proper instead of a 60-40 split. This one-third split should apply in all circumstances in which billing entries "applied equally to both subclasses," which, as Plaintiffs point out, includes "all of the legal research, motion practice, written discovery, investigation, and depositions." Motion, at 16. Thus, if Plaintiffs' Motion is taken at its face, the allocation should be one-third to each class for the entries that do not apply to one class only.

Even before Plaintiffs amended their complaint to officially separate the KMs and AKMs, there were always three distinct classifications: the KMs, AKMs, and cooks. And, the legal issues pertaining to the cooks were more *limited* than those of the KMs and AKMs and primarily focused on issues of willfulness, good faith, and the fluctuating workweek (how overtime should be calculated). However, because liability was never a significant focus of the cooks, these issues that applied to the cooks were equally applicable to the KMs and AKMs. Thus, the legal issues surrounding the cooks were a fraction of the overall case. This is evidenced by the discovery in this case. For example, in Bully's Responses to Plaintiffs' First Set of Interrogatories, answers one and two apply to the KMs and AKMs, respectively, and each answer was approximately three pages. *See* Exhibit 2. The answer regarding the cooks was two small paragraphs.[3] *Id.*

[3] While Plaintiffs' requests may have been evenly split between the three subclasses, the responses and documents such requests called for, and thus the review time for plaintiffs, was greatly skewed toward the KMs and AKMs.

Moreover, the vast amount of deposition time was spent discussing management (*i.e.*, KMs and AKMs) and not the cooks' claims. *See* Hall Decl. ¶ 10.[4] Specifically, discovery predominantly centered on whether the KMs and AKMs were properly classified as managers. *Id.* This issue involved significant discovery relating to the KMs and AKMs' duties, including the discretion and independent judgment that they exercised in filling out par sheets, setting schedules, hiring employees, making recommendations for awards, promotions, and raises, handling call-ins and replacements workers for cooks that could not work, and supervising the kitchen while on and off duty. *Id.* Plaintiffs argued that the general managers, not the KMs or AKMs, were responsible for these managerial duties, and thus, the KMs and AKMs were improperly classified. *Id.* It was undisputed, however, that the cooks did not perform these managerial duties. *Id.* Thus, the primary focus throughout discovery was determining whether defendants properly classified the KMs and AKMs based on their managerial duties. *Id.*

In conclusion, Plaintiffs bear the burden of demonstrating to this Court under a line-item review which of its billing entries applied to the cooks.[5] A lodestar amount is based on *actual time worked*, not an estimation of what should be appropriate based on a percentage allocation that does not correlate with the time expended. *See Tallman*, 23 F. Supp. at 1260. Nevertheless, with regard to time entries that relate "equally" to the KMs, AKMs, and cooks classes, this Court should apply a one-third percentage split, instead of Plaintiff's proposed 60-40 percentage split. This is a conservative allocation because a true allocation of work performed, as evidenced by the discovery in this case, would be 80 percent attributable to the KMs and AKMs and 20 percent attributable to the cooks.

---

[4] Further, the Jones Declaration states that his firm spent a lot of time analyzing schedules and that "[t]hese documents are crucial to this case as they will be used by Plaintiffs to demonstrate that the Plaintiffs did not customarily and regularly direct the work of 2 or more other employees." Jones Decl. ¶ 16. However, analyzing whether a plaintiff supervised two or more employees is a function reserved only for the KMs or AKMs and does not apply to the cooks. Thus, as per Jones' own admission, time spent analyzing these schedules was unnecessary to the cook-subclass, particularly since prior disclosed information admitted the cooks did not supervise other cooks.

[5] Bully's has included as an exhibit an itemized objection list to Plaintiffs' billing records. *See* Exhibit 1. Those items not specifically objected to should be split one-third for each group, as explained above.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**C. Hourly Rates Must Reflect What Would Actually Be Billed to a Paying Client**

Under the lodestar method, a reasonable hourly rate should reflect the "prevailing market rates in the relevant community," with "community" referring to "the forum in which the district court sits." *Tallman*, 23 F. Supp. 3d at 1257 (quoting *Gonzales v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) and *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)). A district court must ensure that an attorney's rate is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1110 (9th Cir. 2014). To determine whether an attorney's rate is reasonable for the community, courts may rely on affidavits from other attorneys. *See United Steelworks of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990) ("Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."); *Gonzalez-Rodriguez v. Mariana's Enters.*, No. 2:15-cv-00152-JCM-PAL, 2016 WL 3869870, at *9 (D. Nev. July 14, 2016) ("[T]he hourly rates of $450 and $650 per hour are well over the range of hourly rates approved in this district. The affidavit does not aver that these rates are usual or customary for this type of work in this locality, only that these rates are what each lawyer typically charges.").

To determine the prevailing market rate, a court should examine the rate at which attorneys *actually* bill paying clients for similar work. *See Montanez*, 755 F.3d at 553 ("The best evidence of the market rate is the amount the attorney actually bills for similar work . . . ."). Otherwise, attorneys can enter into contingency fee agreements with nonpaying clients, agreeing to an excessively high hourly rate, because the client, who cannot afford to pay those hourly rates, is off the hook for the bill and, therefore, can agree to such high hourly rates. *See id.* at 554. Thus, if an attorney charged paying clients a significantly lower hourly rate, such rate should be indicative of the market value of the attorney's services, compared to an arbitrary rate agreed to by clients that know they will not be responsible for paying. For example, in *Montanez*, the Seventh Circuit determined that the lower court did not abuse its discretion in lowering a requested hourly rate

despite the fact that the contingent fee agreement provided for the higher hourly rate:

> [Plaintiff]'s lawyers tried to establish hourly rates between $400 and $450 for the two most experienced lawyers on the team and between $250 and $300 for the other attorneys. The primary support for these rates was a collection of the attorneys' retainer agreements with other clients. Most of these were contingency agreements, however, and the judge reasonably found this evidence unhelpful. *Although the clients "acknowledged" that the attorneys would charge up to $450 per hour, the agreed-upon rate was really a percentage of the winnings (usually 40%); clients would only pay the $450 rate if they changed lawyers before final judgment.* The judge did not abuse her discretion by giving little weight to these agreements as evidence of market hourly rates for the attorneys' services.

*Montanez*, 755 F.3d at 553-54 (affirming a reduction of attorney's fees from $400,000 to $110,000).

When an attorney does not actually bill a client, the requested hourly rate and billing entries are more suspect. *See Betancourt v. Giuliani*, 325 F. Supp. 2d 330, 333 (S.D.N.Y. 2004) ("Defendants persuasively argue that those rates far exceed the typical rates at which a civil rights attorney would actually charge a paying client. . . . [T]he fact that the fees here were not actually charged by [Plaintiff's law firm] to any client suggests that the Court must take a closer look as to whether the hourly rates are reasonable."). A court should take a closer look because, with paying clients, an attorney's bills are generally scrutinized to avoid unreasonable or excessive charges, but such scrutiny does not exist with a client that is not responsible for, and likely even sent, an attorney's billing record. *Cf. Fed. Deposit Ins. Corp. v. Martinez Almodovar*, 674 F. Supp. 401, 402 (D.P.R. 1987) (recognizing that billing entries were reasonable because "such bills were zealously scrutinized by a client who is very cost conscious. Unreasonable or excessive charges would have not been tolerated").

In this case, Plaintiffs are requesting a $600 hourly rate based in part on the fact "that each of the Plaintiffs agreed in their fee agreements with counsel that an hourly rate of $600 would be used to compensate Counsel in the event any disputes aris[e] regarding the value of counsel's services." Motion, at 14 n.7. This hourly rate of $600 is suspect and, in fact, a complete fiction. It is arbitrary and completely unrepresentative of what rate actual paying clients would be charged.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

The rate at which attorneys in the community charge paying clients should be the standard because it avoids situations in which attorneys bargain for unreasonably high rates in contingency fee agreements, knowing the client will not have to pay, but hoping to prevail under a fee-shifting statute in which the attorney can claim he or she is entitled to the higher rate. This is supported by Mr. Thierman's declaration, in which he states that Mr. Jones' "rate is in line with the hourly rates charged by other practicing attorney's [sic] in Nevada who handle *contingency fee* wage and hour class can [sic] collective action litigation on behalf of employees." Thierman Decl. ¶ 10 (emphasis added). Thus, Thierman acknowledges that this rate can only exist in contingency fee agreements, **where clients do not actually have to pay anything out of their own pockets.**

Attorneys in the Reno area practicing plaintiff's side wage and hour litigation charge *paying* clients significantly less. The declaration of Anthony Hall, Esq. demonstrates that the range of hourly rates for a paying client for a wage and hour attorney in Reno is between $200 to $350, with the average hourly rate at $237.50. *See* Hall Decl. ¶ 6. This is the appropriate rate at which the lodestar should be set. The four plaintiff side attorneys discussed in the declaration of Mr. Hall refused to submit their own declarations based upon their personal loyalties toward Mr. Jones and/or the plaintiffs' bar. *Id.* While their refusal is not attributable to Mr. Jones, it deprives this Court of the actual, most relevant declarations that reflect the true prevailing market rate of plaintiff-attorneys in the Reno area. Nevertheless, the four plaintiff-attorneys disclosed their hourly rates, which averaged to $237.50. *Id.* To support their requested $600 hourly rate, Plaintiffs only relied on the declaration of one other attorney, who, like Plaintiffs, has a similarly invented rate that does not reflect the rates charged to clients in the community. As Plaintiffs bear the burden of demonstrating their rate is reasonable, Plaintiffs have failed to meet that burden.

Moreover, Plaintiffs' professed contingency rate also exceeds those billed by defense counsel on these types of matters. *See id.* ¶¶ 4, 7; Beko Decl. ¶ 4;[6] Bruch Decl. ¶ 4; Felts Decl. ¶ 4;

---

[6] Though the declarations of Mr. Beko, Ms. Bruch, and Ms. Felts were not submitted for this case, they are relevant and should be considered because they are in the same forum in which this Court sits, they only declare their own rates and not case-specific information, and they are recent (from October 7, 2016). *Cf. F. v. Blue Shield of Cal.*, No. 09-cv-2037-PJH, 2016 WL 1059459, at

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Mercado Decl. ¶ 5; Oldenburg Decl. ¶ 5. For example, Alice Campos Mercado, a partner at a Reno law firm, who has been practicing employment law for over twenty years, including wage and hour litigation, charges $200 to $250 per hour, which aligns with other partners at her firm. *See* Mercado Decl. ¶ 5. Victoria Oldenburg, another partner at a Reno law office, who has been practicing wage and hour law for over fifteen years, charges between $225 to $300 per hour. *See* Oldenburg Decl. ¶ 5. The average hourly rate for partners who practice labor and employment defense range from $195 to $350 per hour, with the average of those rates being $277 per hour. *See* Hall Decl. ¶ 7.

These figures, $237.50 and $277, are representative of the prevailing market rate for plaintiff-attorneys and defense attorneys, respectively, because they are the average rates that clients in the community are willing to actually pay attorneys for similar work.[7] *See Betancourt*, 325 F. Supp. 2d at 333 (stating that "negotiation and payment of fees by sophisticated clients are solid evidence of their reasonableness in the market"); *see, e.g.*, *Tallman*, 23 F. Supp. 3d at 1259 (lowering requested hourly rate from $475 to a fee of $400 for Leon Greenberg out of Las Vegas (a higher cost, though similar, market), who has over 20 years of experience in wage and hour litigation, with experience in class action litigation); *Gonzalez-Rodriguez*, 2016 WL 3869870, at *8 (collecting cases and stating: "A rate of $400 per hour has been described as 'at the top of the market,' but has been found reasonable in complex matters").

Thus, the fact that Plaintiffs' attorneys "bargained" for (in reality, imposed) a $600 hourly rate in the contingency fee agreement should not be considered evidence of the prevailing market rate because Plaintiffs were not going to be responsible for the hourly rate and could, therefore,

---

*8 (N.D. Cal. Mar. 17, 2016) (considering the four declarations submitted even though the declarations were from another case).

[7] It is not surprising that defense attorneys' rates, which average $277, are higher than the average rate charged by plaintiff's attorneys for the same work because civil defense attorneys generally represent business clients, which are more capable and willing to pay a higher hourly rate. Plaintiff-attorneys, on the other hand, typically represent individuals, which demands a lower hourly rate based on an individual's ability to pay. For instance, in this case, it is undisputed that the cooks, who make around $20,000 per year, would not be able to pay $600 per hour for attorney's fees nor could they, in reality, pay $237.50 per hour.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

agree to whatever rate proposed. In light of the foregoing, Bully's requests that this Court lower the requested hourly rate to $237.50 (plaintiff rates), or at the highest, $277 (defendant rates).

**D. A Downward Adjustment to the Lodestar Is Warranted**

Beyond lowering the hourly rate, a "court may adjust the lodestar 'to account for factors not already subsumed within the initial lodestar calculation.'" *Tallman*, 23 F. Supp. 3d at 1256 (quoting *Mendez v. Cty. of San Bernardino*, 540 F.3d 1109, 1129 (9th Cir. 2008)). These factors include:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.* (quoting *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.8 (9th Cir. 1996)). Here, because Plaintiffs do not advocate for an upward adjustment to the lodestar, *see* Motion, at 18, Bully's only addresses the factors that support a downward adjustment.

**1. Time and Labor Required**

Billing in quarter-hour increments is unreasonable, particularly under a fee-shifting statute, because it is "a fee-enhancing, rather than a fee-constraining, mechanism." *Bench Billboard Co. v. City of Toledo*, 759 F. Supp. 2d 905, 914 (N.D. Ohio 2010) (citing several jurisdictions that have concluded quarter-hour increments are unreasonable), *aff'd in part, rev'd in part*, 499 F. App'x 538 (6th Cir. 2012) ("[T]he district court did not abuse its discretion in reducing the attorneys' fees awarded on the basis of quarter-hour billing increments.").

When an attorney bills in quarter-hour increments compared to tenth-hour increments, the billing entries may be 15 percent higher, or a total of nine minutes higher for each quarter-hour entry. Thus, courts have adjusted downward the total lodestar to account for the increase in billing increments based on quarter-hour billing entries. *See id.* at 915 (adjusting the lodestar downward by 7.5 percent based on splitting the 15 percent increase down the middle to account for billing

entries that legitimately were fifteen minutes); *see also Weyker v. Quiles*, No. 14-CV-782-PP, 2015 WL 5177970, at *3-4 (E.D. Wis. Sept. 4, 2015) (adjusting the lodestar downward by 5 percent because the quarter-hour billing entries statistically would have raised the total numbers of hours charged).

In this case, Bully's requests that this Court reduce the total lodestar by 7.5 percent because of the quarter-hour billing entries. Out of approximately 349 billing entries, 114 entries were billed at 0.25, which included simple tasks, such as reviewing an email or making a telephone call. *See* Motion, exhibit 1. If each billing entry were overcharged by nine minutes, that would equate to 3,141 minutes (349 entries multiplied by nine minutes), which equals 52.35 hours (3,141 minutes divided by 60). At Plaintiffs' requested hourly rate, these hours would amount to $31,410 in attorney's fees, which may not even reflect work performed but may simply be the product of quarter-hour billing, instead of the more accurate and widely accepted practice in this community—the tenth-hour billing increment. *See* Hall Decl. ¶ 7. Although this figure may change if this Court is inclined to reduce the hourly rate requested to conform with the prevailing market rate in the community, Bully's respectfully requests that the lodestar be reduced by an additional 7.5 percent or, at the least, one-half of the total amount of billed hours based on the formula calculated above.

Additionally, Plaintiffs bear the burden of demonstrating that any pre-complaint billing entries are recoverable as an expense of litigation. *See, e.g.*, *Pure Wafer, Inc. v. City of Prescott*, No. CV-13-08236-PCT-JAT, 2014 WL 3797850, at *8 (D. Ariz. 2014). "[A]lthough a court can award fees for pre-complaint investigation, there is no presumption of validity for such claims." *Id.* In this case, the cooks were not added as a subclass until the FAC. *See* ECF No. 34. Plaintiffs have failed to demonstrate that the pre-complaint billing entries were necessary to the litigation of the *cooks*. Based on the inadequate descriptions in Plaintiffs' billing entries, it is unclear which subclass the pre-complaint billing entries pertain to, and Mr. Jones' declaration does not provide further guidance. It is clear, however, that the billing entries regarding the original complaint are unrelated because Plaintiffs did not have any cooks in their action. The first mention of potential

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

witnesses beyond the original complaint was February 11, 2015, and it is unclear if the "potential witnesses" were cooks, KMs, or AKMs. Even if the pre-FAC billing entries applied, the billing entries prior to the existence of the cooks, which amount to fifty-one hours, are unrelated and should be deducted from the total before applying the one-third allocation. However, because Plaintiffs have failed to meet the burden of demonstrating pre-FAC billing entries were necessary to the litigation of the *cooks*, all pre-FAC billing entries (prior to March 5, 2015) should be deducted before applying a one-third allocation, which amounts to 131 hours.

**2. The Skill Requisite to Perform the Legal Service Properly**

Clerical work may not be billed at an attorney's rate, but work performed by non-attorneys may be billed separately. *See Trs. of Constr. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*, 460 F.3d 1253, 1257 (9th Cir. 2006) ("[F]ees for work performed by non-attorneys such as paralegals may be billed separately, at market rates, if this is 'the prevailing practice in a given community.'").

> It is appropriate to distinguish between legal work, in the strict sense, and investigation, clerical work, compilation of facts and statistics and other work which can often be accomplished by non-lawyers but which a lawyer may do because he has no other help available. Such non-legal work may command a lesser rate. Its dollar value is not enhanced just because a lawyer does it.

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989).

When an attorney lists together non-attorney work and legal work in the same billing entry such that a court may not be able to separate out the appropriate time, a court can adjust the lodestar downward to account for the block billing that includes clerical work. *See, e.g.*, *James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341, 1352-53 (S.D. Fla. 2007) ("In this case, the time entries reflect that attorneys with more than 30 years of experience charged for tasks that could have been performed by a paralegal or at the very least, a less senior attorney. . . . Because, once again, these times entries are lumped together with other, more legal, tasks, the Court finds it difficult to separate the claims and deduct the appropriate number of hours. Accordingly, the Court

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

finds this is yet another factor contributing to its decision that a reduction in the overall amount of fees charged to the Defendant by the Plaintiff is warranted.").

Here, Plaintiffs unreasonably bill for several non-attorney tasks for Plaintiffs' counsel's own convenience, as they even concede. *See* Jones Decl. ¶ 6 (stating that Plaintiffs' firm only has "one full time legal secretary" and "Unlike larger litigation firms, nearly all of the work completed in the cases that my firm handles is completed by an attorney").[8] In the billing entries, the majority of clerical tasks are lumped together with legal work, making it difficult, based on the inadequate billing records, to separate the actual time spent. For example, the following table illustrates a sample of work that should have been completed by a secretary or paralegal, but many more objectionable entries exist—a lot of which include non-attorney work lumped together with attorney work. All of these objections to billing entries are listed in Exhibit 1.

| Date | Description | Time Spent | Objection |
|---|---|---|---|
| 2/16/2015 | Review and analyze additional documents produced by Plaintiffs including multiple versions of Bully's employee handbook + employee schedule (review schedules to determine if 2 or more ee's working per shift) + review additional time and attendance records. | 5 hours | Non-attorney work: reviewing handbooks and employee schedules involves clerical/paralegal work. |
| 3/10/2015 | Review documents produced by Plaintiffs regarding time records, hours works, dates of employment for Bully's, begin draft of spreadsheet allocating overtime hours for each client for each week worked, draft Rule 26 Disclosures. | 6.5 hours | Non-attorney work: the first two entries are clearly clerical/ paralegal work. |
| 4/2/2015 | Update spreadsheet re hours worked & time spent for all new opt-in Plaintiffs + analyze schedules and draft spreadsheets showing whether 2 or more persons employed for each shift. | 5.25 hours | Non-attorney work: Updating spreadsheets and reviewing schedules are clerical/paralegal work. |

[8] This further goes to the issues addressed above regarding reasonable rates. No paying client would accept a $600 hourly rate for the completion of paralegal tasks in Northern Nevada. The Jones Law Firm's choice not to reasonably staff a case is its choice; however, those choices cannot be reasonably passed on to Defendants.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

In addition to work that is clerical, Plaintiffs bill for work that could have been performed by associates at a lower rate but was not because Plaintiffs chose not to properly staff their firm and this case. *See, e.g.*, *In re Music Merchants, Inc.*, 208 B.R. 944, 948 (9th Cir. 1997) (affirming district court's reduction of attorney's fees based on tasks that "could have been performed by a . . . junior associate"); *Schneider v. Cty. of San Diego*, 32 F. App'x 877, 880 (9th Cir. 2002) (affirming district court's finding that attorney failed to "delegate tasks that could have been performed by associates at a lower rate"). For example, in *Howard v. Shay*, the United States District Court for the Central District of California reduced a requested lodestar by 30 percent based on the attorneys' failure to delegate tasks, such as research, to associates. *Howard v. Shay*, CV-91-0146-DT-GHKX, 1998 WL 566648, at *4 (C.D. Cal. Aug. 10, 1998). The court stated the following:

> This Court believes that such a task could have been performed by a lower billing associate, with supervision and periodic briefing with the supervising partner. *In fact, it appears that all the attorneys working on this matter for Plaintiffs were billing at partner rates. Billing partner rates for every task performed by an attorney in this litigation reflects an inefficient use of resources.* There are numerous relatively unsophisticated tasks that should and could have been performed by associates with partner supervision. Such tasks include, but are not limited to: (1) drafting the Complaint, (2) all research for the drafting of memoranda of points and authorities, and (3) drafting responses to evidentiary objections.

*Id.* (emphasis added).

Here, Plaintiffs do not have associates at their firm. *See* Jones Decl. ¶ 6 ("My firm consists of two full time attorneys, myself and Kelly McInerney, and one full time secretary."). And, thus, there are many billing entries involving tasks that could have been performed by an associate at a lower rate, such as drafting the complaint, performing basic research, and drafting responses to discovery. *See* Exhibit 1. In addition to lowering Plaintiffs' hourly rate to reflect the prevailing market rate in Reno, this Court should also apply a downward adjustment to the lodestar. Simply lowering the hourly rate is not sufficient. Rather, lowering the hourly rate only results in Plaintiffs' hourly rate being commensurate with other *partners* in the Reno legal community. It does not

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

follow, however, that all such billing entries by a partner were appropriate. Even with a lowered hourly rate, Plaintiffs unnecessarily bill at a partner rate for unsophisticated work that could have been performed by an associate. Thus, this factor supports a downward adjustment to the lodestar.

**3. Preclusion of Other Employment Due to Acceptance of the Case**

Plaintiffs ague that because of the complexity of the case, "counsel were precluded from taking additional cases." Motion, at 20. However, the hours billed simply do not support this assertion. The hours requested for this subclass amount to only 390.3 hours, and that figure represents billing for two attorneys. This is hardly the type of workload that would prevent two attorneys from accepting other cases. Moreover, even taking into account the total hours spent on the entire case—successful and still-pending claims—two attorneys only billed 650.5 hours for almost a two-year period (December 2014 to September 2016). This equates to an average of only about 6.25 hours per week. *See* Motion, at exhibit 1. However, because the United States Supreme Court requires courts to treat billing entries for pending or unsuccessful claims as if they arose from an entirely different case, *see Hensley*, 461 U.S. at 435, it is more accurate to state that two attorneys billed only 390.3 hours (according to Plaintiffs' allocation) for an almost two year period. Thus, this factor supports a downward adjustment to the lodestar.

**4. The Customary Fee**

Plaintiffs contend that their requested hourly billing rate "is well within the market rate for contingency fee lawyers of this caliber," relying on Mr. Jones' and one other lawyer's declaration. *See* Motion, at 20. As discussed in Part C, *supra*, Plaintiffs' requested hourly billing rates far exceed that of other wage and hour attorneys in the Reno area and the actual rate that clients pay to said attorneys. Plaintiffs fail to meet their burden to demonstrate that their rates are commensurate with the forum in which this Court sits. Although Plaintiffs cite to multiple Nevada victories they have obtained, *see* Motion, at 13-14, those citations do not state what hourly rates Plaintiffs were awarded. Additionally, the citations Plaintiffs submit to substantiate their hourly rates are mainly from California—where fees are substantially higher. The one local case offered does not demonstrate that Mr. Jones was awarded $600 per hour. Rather, Mr. Jones, as local counsel in that

case, submitted a declaration stating that his hourly rate was $600 per hour and he worked 38 hours. *See* Motion, exhibit 2. However, the order and final judgment of the district court awarded $250,000 to the plaintiffs' attorneys, but that figure included lead counsel from New York. The order and judgment does not specify what amount was awarded to each attorney and whether it followed or departed from Mr. Jones' declaration. *See* Motion, exhibit 3.

Plaintiffs attempt to distinguish themselves by narrowing the market to wage and hour attorneys that practice *complex* class/collective action litigation.[9] *See* Motion, at 19. However, this is a distinction without a difference. Many attorneys that practice wage and hour litigation also handle class/collective action litigation. And, as stated *supra*, the legal issues involving the cooks were not overly complex, as liability was never the key issue.[10] Rather, the focus was on the fluctuating workweek for purposes of determining overtime damages—an issue that applies equally to all three subclasses. Thus, though Plaintiffs may also practice in San Francisco, which would warrant a higher rate for cases in that jurisdiction, the customary fees for Reno, Nevada, in the area of wage and hour litigation, average $237.50 per hour for plaintiff-work.

Of note, Plaintiffs rely on the declaration of Mr. Thierman and claim that Plaintiffs' requested rates of $600 are less than Mr. Thierman's hourly rate of $800, which, therefore, makes the rates reasonable. *See* Motion, at 14 (stating: "The rates sought by Plaintiffs here ($600 per hour) are reasonable and in line with those charged by Thierman Buck, LLP," and noting that Thierman bills at a rate of $800 per hour, while his partner bills at $500 and his associate bills at $400 per hour).[11] However, this Court has already rejected Mr. Thierman's excessive hourly rates for him and his colleagues, concluding that Mr. Thierman was entitled to a $600 hourly rate, while

---

[9] Notably, in attempting to justify a $600 hourly rate, Plaintiffs argue that the skill involved for complex collective action cases, such as this, requires a lawyer with specialized skill. However, the billing entries do not reflect the level of expertise that Plaintiffs allege to justify such high rates because many entries involve excessive hours for research that more likely reflects an associate familiarizing him or herself with an issue, than an experienced and specialized attorney. For specific instances of excessive billing, see Exhibit 1.

[10] While Defendants did not admit to liability in their responses to interrogatories, they all but did, and Bully's quickly reclassified the salaried cooks as non-exempt after the initiation of this litigation. *See, e.g.*, Exhibit 2, Answer to Interrogatory No. 3.

[11] Paying Nevada clients do not pay $400 per hour for associates.

HOLLAND & HART LLP

5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

other attorneys in his firm received $350 and $250 per hour. *See Sargant v. H.G. Staffing*, No. 3:13-cv-00453-LRH-WGC (D. Nev. June 6, 2014). Remarkably, though, this Court substantiated the $600 award, as excessive as it is, based solely on the declaration of Mr. Jones, who claimed he charges $600 per hour. *Id.* Thus, Mr. Jones and Mr. Thierman create arbitrarily high rates that their clients do not pay because they are contingency clients, then rely on declarations from each other to support such high rates. These rates are not customary for this area, nor are they customary for this practice. Therefore, this factor supports a downward adjustment of the lodestar.

Plaintiffs also state that the amount of the contingency fee cannot be used as a factor in a lodestar adjustment. *See* Motion, at 20. While this is true, the United States Supreme Court has stated that the contingency fee agreement can be considered by courts to determine the reasonableness of the award. *See Blanchard*, 489 U.S. at 93 ("The presence of a pre-existing fee agreement may aid in determining reasonableness. The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating attorney's fee expectations when he accepted the case." (internal quotation marks omitted)); *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G&M Roofing & Sheet Metal Co.*, 732 F.2d 495, 504 (6th Cir. 1984) (stating that a contingency fee agreement "may be considered by a district court as an element to be considered in determining the market value of an attorney's services, but the court is not bound in any sense by that agreement"). In this case, with a contingency agreement allowing 40 percent recovery, Plaintiffs would have recovered $150,000 in attorney's fees ($375,000 judgment multiplied by 0.40). Nevertheless, Plaintiffs request $234,180 in attorney's fees. While this difference is not a basis for adjusting the lodestar, it is indicative of the reasonableness of Plaintiffs' hourly rates.

## III. Calculation of Costs

Plaintiffs submit a memorandum of costs totaling $14,769.91, which applies to the entire case, not the subclass of the cooks. *See* Jones Decl. ¶ 28. Plaintiffs applied a 40 percent reduction to the total amount of costs, instead of omitting costs that were not attributable to the cook-subclass. *Id.* ("In order to apportion the costs of the FL[S]A Collective Action Group 2 Plaintiffs

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

only, the total amount of costs sought by Plaintiffs have been reduced by 40%."). As a preliminary matter, Bully's objects to the following costs based on the Local Rules for the United States District Court for the District of Nevada:

| Date | Description | Amount | Objection |
|---|---|---|---|
| Jan. 6-7, 2016 | Travel/Lodging, including:<br>1. Uber<br>2. Flight to/from Las Vegas Mediation<br>3. Parking—Reno Tahoe Airport | Total: $290.21<br>1. 20.03<br>2. 256.18<br>3. 14.00 | LR 54-11(k):<br>"The following costs will not ordinarily be allowed:<br>(k) An attorney's travel expenses." |
| Unknown | Legal Research, including:<br>1. West Law<br>2. Lexis Nexis | Total: $1,761.43<br>1. 1,731.68<br>2. 29.75 | LR 54-11(g): "The following costs will not ordinarily be allowed: (g) Computer research fees." |
| Unknown | Consultant/Expert Witness Fees: Pete Magee, CPA | Total: $1,903.50 | LR 54-11(a), (h): "The following costs will not ordinarily be allowed:<br>(a) Accountant's fees incurred for investigation;<br>(h) Expert witness fees." |
| Unknown | Interpreter Fees:<br>1. Language Connection<br>2. Language Connection | Total: $2,550.00<br>1. 1,575.00<br>2. 975.00 | Under LR 54-4(5) and LR 54-5(c), an interpreter may be allowed as a deposition cost, but Plaintiffs fail to document whether these fees relate just to depositions or the other purposes of the interpreter in the memorandum of costs or in the Jones declaration. |

Beyond these costs, Bully's also objects to the allocation of costs based on the reasons described in Part II(B), *supra*—mainly that a 60-40 percent split on work is inappropriate in this case because the issues regarding the cooks were limited, and the majority of discovery involved the KMs and AKMs. Upon a line-item review of the costs, two depositions that belonged to KMs or AKMs were included in the costs: the depositions of Ernesto Amador and Juan Carlos "Victor," which are $307.30 and $463.50, respectively. These two depositions are related to Plaintiffs'

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

pending claims, not this subclass, because their testimony only relates to the subclass in which they are in.

Based on the deductions included above, Bully's respectfully requests that this Court reduce the cost award by $7,275.94 (the sum of the table above and the two unrelated depositions). Afterward, the remaining costs would equate to $7,493.97 ($14,769.91 minus $7,275.94). Then, this Court should apply the allocation percentage to the $7,493.97 total. Under Plaintiff's proposed 60 percent allocation, Bully's would be responsible for $4,496.38 in costs. Under Bully's proposed 33.3 percent allocation, Bully's would be responsible for $2,495.49 in costs. Bully's submits that, under the reasoning in Part II(B), *supra*, this Court should apply a one-third allocation to any remaining costs.

## CONCLUSION

When an attorney's hourly rate is challenged, courts analyze whether it is the prevailing market rate in the community in which the forum sits and for that area of law. While this rate may fluctuate based on the experience and expertise of an attorney and even the complexity of the case, the standard is still the same. What Plaintiffs propose in this case is a double standard: one for cases where the opponent pays and one for where the client pays. A defendant under a fee-shifting statute should not be liable for more attorney's fees than what the client would have been liable for if the client had directly paid the attorney. This practice is an abuse of the system because attorneys can enter into contingency fee agreements with clients for an exorbitantly high hourly rate simply because the clients will not dispute those rates as they will not be liable to pay them.

Here, Plaintiffs' $600 hourly rate far exceeds that of the local community for wage and hour litigation and class/collective action cases. Even in Mr. Thierman's declaration in support of Plaintiffs' motion, Mr. Thierman states that $600 per hour is in line for what other attorneys are charging in *contingency fee* cases. The law does not support this double standard, and Bully's respectfully submits that this Court should not either. The true prevailing market rate for wage and hour attorneys that do class/collective action cases is, on average, $237.50 for paying clients.

Beyond the hourly rate, Plaintiffs' billing records are inadequate and include unnecessary work on claims that are still pending. Bully's objections to these billing entries are included as Exhibit 1.

Also, Plaintiffs' proposed allocation of 60 percent of the work to the cook-subclass is not representative of the nature of the claims between the three groups: cooks, KMs, and AKMs. Plaintiffs are simply attempting to recoup as much attorney's fees from the *entire* case as possible for the cook-subclass because it is the only successful claim thus far. Because there are truly three subclasses, as demonstrated by the discovery and the TAC, *see* ECF No. 98, the allocation of work that cannot be divided based on subclass should be split into thirds to all remaining entries after this Court deducts unrelated, non-lawyer, unnecessary, and/or excessive billing entries. Finally, Plaintiffs attempt to recover for costs that are specifically prohibited by the Local Rules. After those costs are deducted from the total, along with the two depositions of non-cooks, this Court should apply the one-third allocation to the remaining costs.

In light of the foregoing, Bully's respectfully requests that this Court lower Plaintiffs' hourly rates, adjust the lodestar downward by striking unnecessary, inadequate, and clerical time entries, and further adjust the lodestar downward to account for excessive billing practices from Plaintiffs' use of the quarter-hour billing system.

DATED October 14, 2016.

/s/ Anthony L. Hall
Anthony L. Hall, Esq.
Nevada Bar No. 5977
ahall@hollandhart.com
R. Calder Huntington, Esq.
Nevada Bar No. 11996
rchuntington@hollandhart.com
Erica C. Smit, Esq.
Nevada Bar No. 13959
ecsmit@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000; Fax: (775) 786-6179

*Attorneys for Defendant*

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 14th day of October 2016, I served a true and correct copy of the foregoing **OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS** by electronic transmission to the parties on electronic file and/or depositing same in the United States mail, first class postage fully prepaid to the persons and addresses listed below:

Charles A. Jones, Esq.
Kelly McInerney
JONES LAW FIRM
9585 Prototype Court, Suite B
Reno, NV 89521
*Attorneys for Plaintiffs*

/s/ Marcia Filipas
Marcia Filipas

9160823_5

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Anthony L. Hall, Esq.
Nevada Bar No. 5977
ahall@hollandhart.com
R. Calder Huntington, Esq.
Nevada Bar No. 11996
rchuntington@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000; Fax: (775) 786-6179

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ERNESTO AMADOR,

Plaintiffs,

v.

BULLY'S SPORT'S BAR & GRILL, INC. a Nevada,

Defendant.

CASE NO.: 3:15-CV-00022- HDM-VPC

**DECLARATION OF ANTHONY L. HALL, ESQ. IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

I, Anthony L. Hall, declare as follows:

1. I have personal knowledge of the matters attested to below. If called as a witness, I would be competent to testify as to the matters stated in this declaration.

2. I am a partner at Holland & Hart, LLP, located in Reno, Nevada. I am an attorney at law admitted to practice before the State of Nevada, all federal courts located in Nevada, as well as the State of California and all federal courts located therein.

3. I have been practicing law for 20 years and have specialized in labor and employment law for all 20 years. My practice focuses on defense of wage and hour litigation, which involves class/collective action cases.

4. My current hourly rate varies from $245 to $435 per hour. However, my average rate actually billed is $356. The hourly rates charged by Dora Lane (the other partner at my firm's local Reno office for labor and employment law) range from $245 to $360 per hour, with an actual average

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

billed rate of $317, while associates charge between $195 to $270 per hour, with an average actual billed rate of $218.

5. I understand that the hourly rate allegedly charged by Charles Jones and Kelly McInerney in this matter is $600 per hour based on 18 years of experience in class/collective action litigation on behalf of employees. Based on my experience, this rate far exceeds the hourly rates charged by other practicing attorneys in Nevada, particularly Reno, who handle wage and hour and class/collective action litigation on behalf of employees.

6. While preparing the opposition to Plaintiffs' motion for attorney's fees and costs, I contacted several plaintiff side attorneys that handle employment cases, including wage and hour and class/collective action cases. Some of these attorneys, such as Ian Silverberg and Brian Morris initially agreed to sign declarations about the rates they charge to actual paying clients. However, both of them, based upon their personal loyalties toward Mr. Jones and/or the Plaintiffs' bar, subsequently declined. Upon reflection, both were just not willing to cross the line and support a defendant in an employment matter. Although Ian Silverberg and Brian Morris unilaterally changed their minds, they did disclose to me what their hourly rates were for paying clients and made a clear distinction of those rates compared to hourly rates listed in a contingency fee agreement (e.g., the contingency fees rates were much higher). Hourly rates charged to paying clients are more reflective of the true prevailing market rate because it demonstrates the value of an attorney's work, which is the same value regardless of whether the attorney enters into a contingency fee agreement or not. According to Mr. Morris and Mr. Silverberg, these hourly rates ranged from $200 to $350 per hour. When we discussed what the average was that they actually charged between these rates, both gave the same response, that the average actually charged was about $250 per hour. In addition, I talked to Mark Mausert and Jeff Dickerson. Both declined to do declarations, for similar reasons that Mr. Morris and Mr. Silverberg changed their minds, but told me that their rate from paying clients (as opposed to contingency clients) was $200 to $250, for both. The average for both of them for paying clients was $225 per hour. This means that the average rate, which is actually charged in Reno by the four seasoned plaintiffs' attorneys, is $237.50 per hour.

7. I also contacted most of the defense attorneys in town that handle employment cases,

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

including wage and hour and class/collective action cases. Attached to the opposition to plaintiffs' motion for attorney's fees and costs are several declarations of defense attorneys, including Thomas Beko, Rebecca Bruch, Victoria Oldenburg, Alice Campos Mercado, and Charity Felts. Also, from my capacity as a board member on the Committee to Aid Abused Women, I have first-hand knowledge of the hourly rate of Bonnie Drinkwater. Specifically, since I am on the board and cannot provide legal counsel, Bonnie Drinkwater was engaged as employment counsel and the rate is currently $233. All of these partner level defense attorneys practice in the Reno area. With the exception of Ms. Felts, who is an associate, the hourly rates of these partners, as declared, including myself and Dora Lane, average $277 per hour.[1] As an associate, Ms. Felt's hourly rate ranges from $175 to $250, with an median hourly rate of $212.50. Thus, the average rate for partners in Reno for Plaintiff's side attorneys is close to that of defense attorney rates (e.g., $237.5 versus $277 per hour). The overall average is about $258 (rounded up to the nearest whole dollar).

8. From my own experience and from asking other attorneys in the area, such as Thomas Beko, the common and widely accepted practice in the community is to bill at tenth-hour increments, not quarter-hour increments. I know from personal experience that the preference at the law firms of Holland & Hart, LLP, Littler Mendelson, and Jack Kennedy & Associates is to bill in tenth-hour increments.

9. After reviewing Plaintiffs' proposed allocation for attorneys' fees incurred on behalf of the entire collective action, Plaintiffs' proposed allocation of 60 percent of work attributable to the cooks and 40 percent of work attributable to the kitchen managers and assistant kitchen managers is inaccurate. Although Plaintiffs divided themselves into two official subclasses, I explained to Plaintiffs' counsel from the beginning of the case that three distinct subclasses existed: the cooks, kitchen managers, and assistant kitchen managers. Plaintiffs eventually reclassified the subclasses to reflect the three different groups in the Third Amended Complaint.

10. The existence of three, rather than two, subclasses is evident from the discovery and is a

---

[1] This average was computed by adding the average rates of myself ($356), Dora Lane ($317), and Bonnie Drinkwater ($233), coupled with the median of Victoria Oldenburg ($262.50), Alice Campos Mercado ($225), Thomas Beko ($300), and Rebecca Bruch ($245). The summation totaled $1,938.50, which, when divided by the seven attorneys, averages out to $276.93 per hour.

reflection of the actual work done in this case relating to three groups, not two. Further, the vast amount of discovery and depositions focused on the two manager groups, not the cook group. The legal issues surrounding the managers were more complex as Plaintiffs needed to establish the supervisory nature of the management positions, compared to the cooks, which focused primarily on how the overtime would be calculated under the fluctuating workweek. Specifically, discovery predominantly centered on whether the KMs and AKMs were properly classified as managers. This issue involved significant discovery relating to the KMs and AKMs' duties, including the discretion and independent judgment that they exercised in filling out par sheets, setting schedules, hiring employees, making recommendations for awards, promotions, and raises, handling call-ins and replacements workers for cooks that could not work, and supervising the kitchen while on and off duty. Plaintiffs argued that the general managers, not the KMs or AKMs, were responsible for these managerial duties, and thus, the KMs and AKMs were improperly classified. It was undisputed, however, that the cooks did not perform these managerial duties. Thus, the primary focus throughout discovery was determining whether defendants properly classified the KMs and AKMs based on their managerial duties. I believe that approximately 80 percent of the work done in this case, including depositions of cooks, relates to the AKM and KM issues and not the cooks.

11. Based on my experience and involvement with the case, the allocation of the three different subclasses is more properly represented by attributing a minimum of one-third of the non-separable billing entries to the cooks. This is a conservative allocation because a true allocation of work performed, as evidenced by the discovery in this case, would be 80 percent attributable to the KMs and AKMs and 20 percent attributable to the cooks. However, accepting the admissions of Plaintiffs' in their motion and declaration, a one-third allocation could be applied to "equal" work that benefitted the three subclasses after unrelated work is deducted from the total lodestar. After reviewing Plaintiffs' billing entries, I noticed that many entries involve tasks solely attributable to non-cooks. In Exhibit 1 to the Opposition, these entries have been objected to as "unrelated work." Only once these inapplicable billing entries (and other objectionable entries) are deducted should this Court apply a one-third allocation to the remaining billing entries that involved equal work.

I declare under penalty of perjury under the law of the State of Nevada and the United States

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

that the foregoing is true and correct.

DATED this 13th day of October, 2016.

ANTHONY L. HALL, ESQ.

9168433_6

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Anthony L. Hall, Esq.
Nevada Bar No. 5977
ahall@hollandhart.com
R. Calder Huntington, Esq.
Nevada Bar No. 11996
rchuntington@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000; Fax: (775) 786-6179

*Attorneys for Defendant*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

ERNESTO AMADOR,

Plaintiffs,

v.

BULLY'S SPORT'S BAR & GRILL, INC. a Nevada,

Defendant.

CASE NO.: 3:15-CV-00022- HDM-VPC

**DECLARATION OF ALICE CAMPOS MERCADO, ESQ. IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

I, ALICE CAMPOS MERCADO, declare as follows:

1. I have personal knowledge of the matters attested to below. If called as a witness, I would be competent to testify as to the matters stated in this declaration.

2. I am currently a shareholder/partner at Lemons, Grundy & Eisenberg, located in Reno, Nevada.

3. I am an attorney at law admitted to practice in the State of Nevada, all federal courts located in Nevada, as well as in state and federal courts in California.

4. I have been practicing law for 24 years and have practiced employment law, including wage and hour, for approximately 20 years. My practice focuses largely on the defense of employment litigation, including wage and hour matters.

5. My current hourly rate for employment matters, including wage and hour cases, is between $200 and $250 per hour. The hourly rates charged by other partners at my firm for employment

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

litigation also ranges from $200 to $250 per hour. The hourly rates for associate attorneys range between $175 to $185 per hour, and the hourly rates for paralegals range between $75 to $90 per hour.

I declare under penalty of perjury under the law of the State of Nevada and the United States that the foregoing is true and correct.

DATED this 4th day of October, 2016.

ALICE CAMPOS MERCADO

9160541_2

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

Anthony L. Hall, Esq.
Nevada Bar No. 5977
ahall@hollandhart.com
R. Calder Huntington, Esq.
Nevada Bar No. 11996
rchuntington@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000; Fax: (775) 786-6179

*Attorneys for Defendant*

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| ERNESTO AMADOR,<br><br>Plaintiffs,<br><br>v.<br><br>BULLY'S SPORT'S BAR & GRILL, INC. a Nevada,<br><br>Defendant. | CASE NO.: 3:15-CV-00022- HDM-VPC<br><br>**DECLARATION OF VICTORIA T. OLDENBURG, ESQ. IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS** |

I, Victoria T. Oldenburg, declare as follows:

1. I have personal knowledge of the matters attested to below. If called as a witness, I would be competent to testify as to the matters stated in this declaration.

2. I am currently a partner at Oldenburg Law Office, located in Reno, Nevada.

3. I am an attorney at law admitted to practice in all courts of the State of Nevada, the U.S. District Court, District of Nevada, the Ninth Circuit Court of Appeals, and the tribal courts of the Reno-Sparks Indian Colony and the Washoe Tribe of Nevada and California.

4. I have been practicing law for 24 years and have practiced employment law, including wage and hour law, for 14 years in the public sector and 1 year, 4 months in the private sector. My employment law practice focuses on the defense of employment discrimination claims and wage and hour law disputes.

5. My current hourly rate for employment matters, including wage and hour cases, is between

$225.00 and $300.00 per hour with the exception of non-profit clients and State and Tribal government clients whose hourly rate ranges from $100.00 per hour to $150.00 per hour.

I declare under penalty of perjury under the laws of the State of Nevada and the United States that the foregoing is true and correct.

DATED this 5th day of October, 2016.

Victoria T. Oldenburg
Nevada Bar No. 4770

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511

1520
THOMAS P. BEKO, ESQ. (SBN 002653)
CHARITY F. FELTS, ESQ. (SBN 010581)
ERICKSON, THORPE & SWAINSTON, LTD.
99 West Arroyo Street, Reno, Nevada 89509
(775) 786-3930; Fax (775) 786-4160
*Attorneys for Defendant Laxmi Hotels, dba Hampton Inn & Suites*

Erickson, Thorpe & Swainston, Ltd.
P.O. Box 3559
Reno, Nevada 89505
Tel. (775) 786-3930 Fax (775) 786-4160

**IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA**

**IN AND FOR THE COUNTY OF WASHOE**

ANGELICA GODINEZ-GARCIA, on behalf of herself and ROSA CERDA,

Plaintiffs,

vs.

LAXMI HOTELS, dba HAMPTON INN & SUITES, HILTON WORLDWIDE, and DOES 1 through 50, inclusive,

Defendants
_______________________________/

Case No. CV15-01295

Dept. No. 3

**DECLARATION OF THOMAS P. BEKO, ESQ. IN SUPPORT OF DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS**

I, Thomas P. Beko, hereby declare as follows:

1. I have personal knowledge of the matters attested below. If called as a witness, I would be competent to testify as to the matters state in this declaration.

2. I am an attorney at law admitted to practice in all courts of the State of Nevada, all courts in the State of California, the U.S. District Court, District of Nevada, the Ninth Circuit Court of Appeals, and the United States Supreme Court.

3. I have been practicing law for 30 years and have practiced employment law, including wage and hour law, for more than 25 years. My employment law practice focuses on the defense of employment discrimination claims, wage and hour law disputes, and civil rights defense. I am the managing partner Erickson, Thorpe & Swainston, Ltd., where I have spent my entire legal carrier. I current serve a Judge Pro Tempore in the Nevada Short Trial

Program and I serve on the Washoe County and Nevada Supreme Court Bench-Bar Committees.

4. My current hourly rate for employment matters, inclucing wage and hour cases, varies between $250.00 and $350 depending upon the complexity of the case with the exception of certain long-term public entity clients whose hourly rate rate is generally $165 per hour.

5. I am consistently retained by several of the large hotel casinos in the northern Nevada area where I provide ongoing legal representation in litigated matters, including matters involving labor and employment issues.

I declare under penalty of perjury under the laws of the State of Nevada and the United States that the foregoing is true and correct.

The undersigned do hereby affirm that the preceding document does not contain the social security number of any person.

Dated this 7th day of October, 2016.

Thomas P. Beko
Nevada Bar No. 2653

1520
THOMAS P. BEKO, ESQ. (SBN 002653)
CHARITY F. FELTS, ESQ. (SBN 010581)
ERICKSON, THORPE & SWAINSTON, LTD.
99 West Arroyo Street, Reno, Nevada 89509
(775) 786-3930; Fax (775) 786-4160
*Attorneys for Defendant Laxmi Hotels, dba Hampton Inn & Suites*

**IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA**

**IN AND FOR THE COUNTY OF WASHOE**

ANGELICA GODINEZ-GARCIA, on behalf of herself and ROSA CERDA,

Plaintiffs,

vs.

LAXMI HOTELS, dba HAMPTON INN & SUITES, HILTON WORLDWIDE, and DOES 1 through 50, inclusive,

Defendants
_______________________________________/

Case No. CV15-01295

Dept. No. 3

**DECLARATION OF REBECCA BRUCH, ESQ. IN SUPPORT OF LAXMI HOTELS' OPPOSITION TO PLAINTIFF'S MOTION FOR FEES AND COSTS**

I, Rebecca Bruch, hereby declare as follows:

1. I have personal knowledge of the matters attested below. If called as a witness, I would be competent to testify as to the matters stated in this declaration.

2. I am an attorney at law admitted to practice in all courts of the State of Nevada, all courts in the State of California, the U.S. District Court, District of Nevada, the Ninth Circuit Court of Appeals, and the United States Supreme Court.

3. I have been practicing law for 16 years and have practiced employment law, including wage-and-hour law, for 15 years. My employment law practice focuses on the defense of employment discrimination claims and wage-and-hour law disputes.

4. My current hourly rate for employment matters, including wage-and-hour cases, is between $195 and $295 per hour with the exception of public entity clients whose

Erickson, Thorpe & Swainston, Ltd.
P.O. Box 3559
Reno, Nevada 89505
Tel. (775) 786-3930 Fax (775) 786-4160

hourly rate is generally $165 per hour.

I declare under penalty of perjury under the laws of the State of Nevada and the United States that the foregoing is true and correct.

The undersigned do hereby affirm that the preceding document does not contain the social security number of any person.

Dated this 7th day of October, 2016.

Rebecca Bruch
Nevada Bar No. 7289

1520

THOMAS P. BEKO, ESQ. (SBN 002653)
CHARITY F. FELTS, ESQ. (SBN 010581)
ERICKSON, THORPE & SWAINSTON, LTD.
99 West Arroyo Street, Reno, Nevada 89509
(775) 786-3930; Fax (775) 786-4160
*Attorneys for Defendant Laxmi Hotels, dba Hampton Inn & Suites*

**IN THE SECOND JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA**

**IN AND FOR THE COUNTY OF WASHOE**

ANGELICA GODINEZ-GARCIA, on behalf of herself and ROSA CERDA,

Plaintiffs,

vs.

LAXMI HOTELS, dba HAMPTON INN & SUITES, HILTON WORLDWIDE, and DOES 1 through 50, inclusive,

Defendants

______________________________/

Case No. CV15-01295

Dept. No. 3

**DECLARATION OF CHARITY F. FELTS, ESQ. IN SUPPORT OF LAXMI HOTELS' OPPOSITION TO PLAINTIFFS' MOTION FOR FEES AND COSTS**

I, Charity F. Felts, hereby declare as follows:

1. I have personal knowledge of the matters attested below. If called as a witness, I would be competent to testify as to the matters stated in this declaration.

2. I am an attorney at law admitted to practice in all courts of the State of Nevada, all courts in the State of California, the U.S. District Court, District of Nevada and the Ninth Circuit Court of Appeals.

3. I have been practicing law for nine years and have practiced employment law, including wage-and-hour law, for seven years. My employment law practice focuses on the defense of employment discrimination claims and wage-and-hour law disputes.

4. My current hourly rate for employment matters, including wage-and-hour cases, is between $175 and $250 per hour with the exception of public entity clients whose

Erickson, Thorpe & Swainston, Ltd.
P.O. Box 3559
Reno, Nevada 89505
Tel. (775) 786-3930 Fax (775) 786-4160

hourly rate is generally $165 per hour.

I declare under penalty of perjury under the laws of the State of Nevada and the United States that the foregoing is true and correct.

The undersigned do hereby affirm that the preceding document does not contain the social security number of any person.

Dated this 7th day of October, 2016.

Charity F. Felts
Nevada Bar No. 10581