ANTHONY L. HALL, ESQ.
Nevada Bar No. 5977
ahall@hollandhart.com
PETER D. NAVARRO, ESQ.
Nevada Bar No. 10168
pdnavarro@hollandhart.com
HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Telephone: (775) 327-3000; Fax: (775) 786-6179
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ERNESTO AMADOR, LUIS ANGUIANO, and JUAN CARLOS "VICTOR" MARTINEZ as individuals, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BULLY'S SPORTS BAR & GRILL, INC., a Nevada Corporation, and SHARLING "JO" SONNER, an individual,<br><br>Defendants. | CASE NO.:   3:15-CV-00022- HDM-VPC<br><br>**DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S RULING (ECF No. 122 )(LR IB 3-1)(LR IB 3-2) AND REQUEST FOR RECONSIDERATION BY THE DISTRICT COURT JUDGE** |

Defendants Bully's Sports Bar & Grill, Inc. ("Bully's") and Sharling "Jo" Sonner ("Sonner") (jointly, "Defendants"), hereby file an objection to the Magistrate Judge's February 15, 2017, Order ("Order") (ECF No. 122) striking 19 witnesses ("Supplemental Witnesses") listed in Defendants' Eighteenth Supplemental Rule 26 Disclosures ("18th Supplemental Disclosures").

Defendants respectfully request that the Court set aside the Order as clearly erroneous and contrary to the law of this circuit as the Order: (1) impermissibly shifts the burden from Plaintiffs to Defendants to demonstrate whether a violation of Rule 26 had occurred; (2) fails to address Defendants' claims of equitable and judicial estoppel, despite the fact that those claims were fully briefed and entirely unrefuted by Plaintiffs; (3) improperly relies on a December 2016 Case Management Conference Report as evidence that Rule 26 had been suspended in this matter; (4) makes no effort to analyze facts and circumstances as to each of the nineteen witnesses and instead excludes all of them, despite the fact that Plaintiffs had even conceded that one of the witnesses

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179

(Steven Brazelton) was properly disclosed; (5) fails to apply the five factors delineated by the Ninth Circuit in crafting an appropriate remedy under Rule 37; (6) fails to consider lesser sanctions before electing to strike all of the Supplemental Witnesses; and (7) exceeds the authority of the Magistrate by effectively deciding a dispositive and/or class certification related matter.

## I.    INTRODUCTION

This case was filed as a collective action under the Fair Labor Standards Act (29 USC §216(b)) concerning three classes of allegedly misclassified current and former employees of Defendants: (1) Kitchen Managers ("KM's"); (2) Assistant Kitchen Managers ("AKM's"); and (3) salaried Cooks.  This matter is currently before the Court upon Defendants' request that the Court reconsider the Magistrate's determination to strike all of the Supplemental Witnesses (and related declarations) included in Defendants' 18th Supplemental Disclosures, served on December 14, 2016, two days prior to the discovery cutoff.    These disclosures are not only essential to Defendants' ability to defend this case on its merits, but also crucial to Defendants' ability to establish that this matter is wholly inappropriate for treatment as a collective action.  Moreover, by erroneously excluding these witnesses, the Magistrate (as acknowledged during oral argument) has effectively issued a dispositive ruling against Defendants by denying them the opportunity to provide the trier of fact (in this case – the District Court Judge since the matter is set for a bench trial) with crucial facts rebutting the false testimony of Plaintiffs and opt-in Plaintiffs.

## II.    STATEMENT OF FACTS

Given that the Court must first consider whether a Rule 26 violation occurred before determining whether a Rule 37 remedy is required, Defendants have bifurcated their Statement of Facts to more effectively discuss each of those issues.  Section A addresses the chronology of events that led to Defendants' need to identify the Supplemental Witnesses during the final months of discovery in order to rebut dramatic variations in Plaintiffs' testimony that began shortly after Defendants refused to settle with the KM and AKM subclasses.  Section B discusses the voluminous evidence which demonstrates that even if the Supplemental Witnesses could be deemed as untimely disclosed, Plaintiffs' own discovery conduct, including knowing misrepresentations to the Court during oral argument on this matter, foreclose them from asserting

that they have suffered any harm or prejudice, or from claiming – that to the extent they have been

injured – such injury cannot be redressed through a modest discovery extension.

> **A.** **The Evidence Before The Court Demonstrates That Defendants Did Not Violate Rule 26 By Timely Supplementing Their Witness Disclosures Prior To The Close Of Discovery.**

> > **1.** **Since The Inception Of This Case, Discovery Extensions Have Never Been Conditioned On The Parties Serving Supplemental Rule 26 Disclosures By A Set Date.**

On January 16, 2015, Plaintiffs filed their Collection Action Complaint in the United Stated

District Court of the District of Nevada.[1]    ECF No. 1.   Plaintiffs' First Amended Complaint

Collective Action Complaint was filed on March 3, 2016 (ECF No. 34) and on April 29, the action

was conditionally certified.  ECF Nos. 50; 51.  On May 1, 2015, a Scheduling Order was issued,

setting the close of discovery for December 1, 2015.  ECF No. 55.  On August 20, 2015, the parties

submitted a joint stipulation to extend the discovery cutoff from December 1, 2015 to January 15,

2016. ECF No. 61.   Among the reasons cited for the extension were; (1) the fact that the deadline

for additional Plaintiffs to Opt-in the case did not expire until August 10, 2015; and (2) Plaintiffs'

counsel's ability to engage in discovery had been hampered because of family tragedy.  *Id.*  The

stipulation was granted on August 24, 2015, with the caveat: "There will be no further extensions,"

but at no point did the Court condition the stipulation on any variance of the parties rights' and/or

obligations pursuant to Rule 26.   ECF No. 62.   Accordingly, after the stipulation was granted,  the

parties continued to supplement their Rule 26 disclosures as appropriate.  **Ex. A**, Declaration of

Anthony Hall ("Hall Decl."), ¶4 (noting that Defendants 8th and 9th, Supplemental Disclosures

pursuant to Rule 26 were made on October 8, 2015 and October 14, 2015, respectively).

> > **2.** **Early Deposition Testimony Leads The Parties To Attempt Mediation.**

During the week of October 12, 2015, Defendants took three Plaintiffs depositions.   **Hall**

**Decl., ¶5.** As a result of testimony elicited from these depositions, Defendants realized that it might

---

[1]     On December 4, 2015, Plaintiffs filed their Second Amended Collective Action Complaint adding Sharling "Jo" Sonner as a defendant.  ECF No. 72.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179

be possible to mediate the KM and AKM classes, given that the KM and AKM deposed by Defendants acknowledged having job responsibilities consistent with their classification as exempt executive employees. *Id.* at ¶5.  By way of example, during the October 2015 depositions, Plaintiffs had acknowledged: (1) having discretion to run their kitchens; (2) attending management level meetings; (3) training employees; and (4) interviewing and subsequently hiring other kitchen employees. *Id.*

### 3.     Discovery In The Matter Was Effectively Stayed For 248 Days.

In anticipation of mediation, on November 10, 2015 the parties submitted a Joint Stipulation to Extend Discovery Deadlines Pending Private Mediation. ECF No. 64. This stipulation effectively sought to stay discovery for 67 days (commencing on November 13, 2015) so as to allow the parties to "fully prepare for and participate in mediation, and to gain the cost savings of engaging in mediation instead of continuing discovery." *Id.* at 2:10-11.  The Court approved the stipulation on November 17, 2015, and extend discovery until March 22, 2016.  ECF No. 62.  In granting the stipulation, the Court noted: "There will be no further extensions." *Id.*  However, once again, that admonition was devoid of any conditions being placed on the parties' Rule 26 rights and obligations, and the parties continued to make supplemental disclosures after the order. *See* e.g. **Hall Decl., ¶4** (noting that Defendants 10th and 11th Supplemental Disclosures pursuant to Rule 26 were made on December 22, 2015 and January 22, 2016, respectively).

Thereafter, on January 8, 2016, the parties conducted a private mediation, and on January 13, 2016, filed a Joint Request for Confidential Status Conference.  ECF No. 75.  A Confidential Status Conference was subsequently held on January 21, 2016, and following the conference, the Court ordered the matter stayed until further notice.  ECF No. 80.  On July 7, 2016, a Joint Case Management Report ("July Report") was filed, indicating that although the parties had not been able to settle the matter during the stay, it had resulted in Defendants making a settlement offer to the salaried Cook subclass.  ECF No. 84.  Specifically, the July Report stated:

> By way of background, during mediation, Judge Bell specified that the financial records Defendants were to provide to Plaintiffs were narrowly tailored and limited to documents needed to verify the company's financial condition. Although Defendants were prepared to provide documents meeting Judge Bell's direction, Plaintiffs demanded records and

**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada  89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

information that went well above and beyond what Judge Bell had delineated. In addition, further case law review indicated that the alleged Kitchen Manager and Assistant Manager "classes" had no viable claim, and Defendants focused on attempting to resolve the matter with the Cooks by making a settlement offer to the alleged Cooks class. Although the settlement offer was not accepted, Defendants remain willing to settle with the Cooks.

Approximately a week later,  on July 18, 2016, the Court lifted the stay and set December 16, 2016 as the close of discovery.  ECF No. 85.   By that time, and given the 67-day discovery extension granted by the Court on November 17, 2015 (ECF No. 66), discovery – and for the most part the entire action – had been stayed for over 8 months (November 13, 2015 through July 18, 2016).  ECF Nos. 66, 80, 85.

### 3. Post-Stay Testimony From Plaintiffs Begins To Vary Substantially From Testimony Given Prior To The Stay.

Less than a month after the stay was lifted, Defendants deposed a member of the salaried Cook subclass, Luis Anguiano.  **Hall Decl., at ¶6.** [2]  Mr. Anguiano's deposition is pivotal, because it was during his deposition that Defendants first began to realize that testimony provided by Plaintiffs after the stay appeared to be purposefully manipulated so as to be inconsistent with testimony from pre-stay depositions.  ***Id.   See* also Ex. B** Transcript of February 9, 2017 hearing (**"Feb. Tr."), 23:11-16.**[3]  Specifically, and as noted in his deposition transcript, during the first half of his deposition, Mr. Anguiano freely admitted that his supervisor, a KM Plaintiff named Ernesto Amador: (1) was not always in the kitchen; (2) was not necessarily in the kitchen even when there was a rush of customers; and (3) that he had no idea what Mr. Amador was doing when he was not

---

[2]	Nevertheless, as a result of the time the matter was stayed, the parties were ultimately able to arrive at a settlement with respect to the salaried Cook subclass and on September 6, 2016, Plaintiffs filed a Notice of Acceptance of Defendants' Rule 68 Offer of Judgment on Behalf of Plaintiffs Anguiano and all Members of the Salaried Cook Subclass.  ECF No. 91.

[3]	Transcript: "After it was stayed, the parties went back to conducting discovery and we started noticing that the depositions that were being done after the stay were dramatically different, radically different, in fact, from the ones before.  Plaintiffs' opt-ins were now completely abdicating responsibilities they said that they did but were not primary responsibilities, now were responsibilities that they never had. It was, at that point, that we looked at the list of people who had been identified by plaintiff, all of the cooks and former employees, and we set to talk to those people."

in the kitchen.  **Ex. C, Anguiano Dep. 48: 4-49:6; 56:25-57:2**  Mr. Anguiano further stated that he was unable to estimate how often Mr. Amador would come and help cook during busy periods, but that, in general, Mr. Amador "never helped us." ***Id.* at 57:3-10.**

Shortly thereafter, the parties took a lunch break and returned to resume the deposition.  Upon returning from the break, Mr. Anguiano was asked by Defense Counsel: "Is there anything that you feel you need to correct or change in the testimony you gave this morning?"  and he responded: "No."  **Anguiano Dep. 69:14-16.**   Nevertheless, a few minutes later, Mr. Anguiano proffered the following non sequitur to a series of questions about how he would go about requesting a day off from work, stating:

> I have a question.  What I'm making reference to here, a few minutes ago, or about an hour ago, with regard to each station, and everyone in their own area, someone would work at the fryer, in the middle, and at the grill, and Ernesto would not help us out.  Because there wasn't sufficient people.

***Id.*  at 72:25-73:4.** Mr. Anguiano continued:  "Ernesto did work in his area, whether it's at the fryer, in the middle, or at the grill.  Each person had their job task to carry out.  That's why he couldn't help us." ***Id.* at 73:13-16.**

Defense counsel then reminded Mr. Anguiano of his prior testimony stating: "Okay.  And you also told me he wasn't always working with you in the kitchen, correct... Is that correct?  He wasn't always in the kitchen working with you guys, correct?" ***Id.* at 73:25 – 74:1.**   In response, Mr. Anguiano stated:  "I don't know that." ***Id.* at 74:2.**   Defense counsel then put on the record that it appeared that Mr. Anguiano "was coached at lunch." ***Id.* at 74:11-13.**

Thereafter, in response to this sudden variance in testimony, Defendants set out to locate additional witnesses to show that Mr. Anguiano was a clearly attempting to conceal the fact that KM's and AKM's were not always at a cooking station, but instead actively performing their management duties and that they spent significant periods of time not cooking on the line.  **Hall**

**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

**Decl., at ¶7.**  *See* also **Ex. B, Feb. Tr. at 23:12-19.**[4]  Defendants started by speaking to current employee, Efrain Navarro, an individual who had previously worked as cook under Mr. Amador. **Hall Decl., at ¶8.**   Mr. Navarro is currently employed as a cook with Defendants and was listed as a witness in Defendants' initial disclosures. *Id.*   When Defendants met with Mr. Navarro, he agreed to provide a declaration as to his time working for Mr. Amador and various other Kitchen Managers. *Id.*[5]

The next deposition Defendants took was of Opt-in Plaintiff and former KM, Demetrio Gonzalez on November 2, 2016. *Id.,* **at ¶9.**  In preparation for this deposition, Defendants identified Hugo Hernandez (non-Opt-in KM who used to work for Mr. Gonzalez) and Kristine Catron (a former District Manager and supervisor of Mr. Gonzalez) as potential witness that might be relevant depending on the testimony Defendants could adduce from Mr. Gonzalez. *Id.*  *See* also, **Feb. Tr. at 38:15-21.**[6]  Their relevance was thereafter confirmed when, during his deposition, Mr. Gonzales continued Plaintiffs' post-stay theme of outright denying that KM's or AKM's did anything other than cook.

To that end, Mr. Gonzalez testimony primarily consisted of repeated denials as to whether he had any management responsibilities. **Hall Decl., at ¶10.**  Whereas Plaintiffs deposed prior to the stay had admitted to doing significant management tasks (e.g. having discretion to run their

---

[4]    Transcript:  "After it was stayed, the parties went back to conducting discovery and we started noticing that the depositions that were being done after the stay were dramatically different, radically different, in fact, from the ones before. Plaintiffs opt-ins were now completely abdicating responsibilities they said that they did but were not primary responsibilities, now were responsibilities that they never had."

[5]    During the February 9, 2017, oral argument in this matter Defense counsel inadvertently stated that Mr. Navarro was one of the Supplemental Witness. He was not. Mr. Navarro was undisputedly identified in Defendants Initial Disclosures. However, his declaration was produced as part of the same disclosure that included the Supplemental Witnesses.

[6]    Transcript:  "[W]e started seeing inconsistent deposition testimony from plaintiff, we set out to find the people that could rebut that testimony, and we had to start interviewing these people and finding out if they had testimony that was going to be relevant."

**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179

kitchens, training, and hiring), Mr. Gonzalez came into the deposition with a mantra that he never managed anyone.  He denied training anyone, hiring anyone**,** and when asked about his role as a manager – twice repeated what appeared to be a memorized soundbite, to the effect:  "I was simply a manager of my right and left hand, just to carry out the work.  That's what I was manager of, of my own two hands." **Ex. D, Deposition of Demetrio Gonzalez ("Gonzalez Dep."), 33:16-18; 36:18-21; 57:18-20; 58:6-8.  *See also,* Defendants' Supplement to the January 11, 2017 Joint Case Management Report ("Defs.' Suppl.") (ECF No. 117), 9:21-10:13** (additional instance of Mr. Gonzalez providing testimony inconsistent to pre-stay depositions).[7]

After concluding Mr. Gonzalez's deposition, it became more apparent than ever that Defendants would be unable to obtain accurate testimony from any of the remaining KM or AKM Plaintiffs.  **Hall Decl., at ¶11.**   In response, Defendants set forth to interview other employees in order to demonstrate the Plaintiffs were being less than truthful in their testimony ***Id.***    In fact, immediately after Mr. Gonzalez's deposition, counsel for Defendants informed Plaintiffs' counsel that as a result of the post-stay shift in testimony being provided by Plaintiffs, Defendants would now be required to identify additional current and former employees to provide evidence of what KM and AKM actually did while at work.  ***Id.***

Consistent with Defense Counsel's representation to Plaintiffs, less than two weeks after Mr. Gonzalez's deposition, Defendants had been able to identify three such individuals, Shannon Johnson (bartender), Shannon Schmid (bartender), and Ryan Broman (General Manager).  **Hall**

---

[7]    During the course of Mr. Gonzalez's deposition he was also asked a series of questions regarding the manner in which he articulated the job duties stated in his Form I-140, an Immigration Petition for Alien Worker.  As part of this discussion, the record reflects that Mr. Gonzalez represented that he did not know what information had been submitted on that form, stating: "They never showed me anything.  They never read me anything.  They would communicate with the lawyer with regard -- regards to my immigration case."  ECF No. 117, 8:21-9:19   During this same time, Defendants informed Plaintiffs that Defense counsel had "every right to question [Mr. Gonzalez] regarding what he knew his job was to be in representations and in involvement with an attorney [Supplemental Witness Steven Brazelton], who made those representations to the federal government."  *Id.*

**Decl., at ¶12.**   Each of these individuals was interviewed on November 14, 2016 (<u>thirty-one days</u> before they were subsequently disclosed as witnesses) and provided declarations on that same day. Order, 6:1-14.   Around this same time, Defendants also made the determination to include Mr. Brazelton as a witness given Mr. Gonzalez's testimony abdicating any role in providing information on the Form I-140 that had been submitted on his behalf by Mr. Brazelton.   *Id.* **at ¶13.**

Approximately two weeks later, Defendants identified six additional witnesses who could rebut the testimony of Mr. Gonzalez and Mr. Anguiano: Francisco Galarza Martinez (cook); Roberto Galarza Martinez (cook); Mark O'Driscoll (General Manager of Bakemark Foods)[8]; Derek Larson (former General Manager); Alfredo Santiago Aparicio (Building and Maintenance Repair Person); and Yesenia Elizabeth Valle (cook).   *Id.* **at ¶14.**

It must be noted, however, that while the identities of each of these witnesses had been generally known to Defendants, Defendants had no cause to interview these individuals as to their specific knowledge regarding Plaintiffs' testimony until after the nature of Plaintiff's  testimony began to change.   The same is also true of the remaining Supplemental Witnesses: Rob Bills (former Regional Manager); Rick Jester (former Human Resources Director); Sara Satterlee (former General Manager); Jose Ortiz Galarza (current cook); and Rocio Alvarado Camacho (current cook).   While Defendants may not have had time to obtain declarations from all of these individuals prior to including them as Supplemental Witness, they were all identified after Defendants became aware the Plaintiffs were no longer willing to admit the true nature of the KM and AKM job responsibilities.   *See* **Feb. Tr. at  23:12-19; 38:15-21.**

---

[8]     Mr. O'Driscoll is of particular importance as he was the General Manager of one of Defendants largest food vendors.  Prior to the stay testimony had been given that ordering food from vendors was an integral responsibility of KM's and AKM's *see e.g.* **Ex. E, October 15, 2015, Deposition of Juan Carlos "Victor" Martinez Martinez, 32:1-33:6** (confirming that ordering from vendors was "solely a kitchen manager and assistant kitchen manager responsibility.")  Yet, during his deposition, Mr. Gonzalez abdicated responsibility for contacting vendors, stating he would only called them when a "manager requested me to do so." **Gonzalez Depo. at 41:1-2.** *See* also Def.'s Supp. (ECF No. 117) at 9:20 – 10:13.

**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179

Accordingly, it is undisputed that the names of all Supplemental Witnesses were provided to Plaintiffs (as part of Defendants' 18th Supplemental Disclosures) within weeks of those individuals being identified by Defendants as persons with information relevant to rebut Plaintiffs post-stay deposition testimony. As such, there is no evidence that the specific knowledge possessed by these individuals was ever made known to Defendants prior to that time and no basis to deem their disclosure (prior to the discovery cutoff) as an improper violation of Rule 26. Rather, it is clear that these witnesses were disclosed timely and in direct response to Plaintiffs decision to radically change the nature of Opt-in deposition testimony after Defendants refused to settle with the KM and AKM Subclasses.[9]

**B.      Plaintiffs' Conduct During Discovery Belies Any Claim That The Supplemental Witnesses Were Untimely Disclosed Or That Plaintiffs Were Prejudiced By Their Disclosure.**

To better illustrate how Plaintiffs manufactured the current discovery dispute, it is beneficial to divide the 19 Supplemental Witnesses into two categories: **Category 1 –** Individuals Subsumed In Plaintiffs' Initial Disclosure Categories as Current and/or Former Employees of Bully's Sports Bar & Grill, Inc. (15 witnesses); and **Category 2** – Individuals Not Included in Plaintiffs' Disclosure Categories Whose Relevance Became Known To Defendants in the Final Months of Discovery.

**1.      Category 1 Witnesses** [10]

_____

[9]  It is worth noting, that in the subsequent deposition of Opt-In AKM/KM Martha Barajas, she continued Plaintiffs' post-stay theme of denying that KM's and AKM's held even the most basic management responsibilities. *See* e.g. **Ex. F,** December 8, 2016, Deposition of Martha Barjas (asserting, among other things, that she "was not responsible for contacting vendors" (64:22-25); not involved in hiring (116:5-9); and did not train cooks (121:21-122:11). *See also* January 17, 2017, Joint Case Management Report (ECF No. 114) (referencing contentions made by Ms. Barajas in her deposition "that bartenders acted as de-facto manager, exercising the authority that Defendants claim was actually conveyed to kitchen managers and assistant kitchen managers." Thus, the testimony of cooks and vendors with whom she worked is vital to the Court's assessment of her time/job responsibilities.

[10]  The Category 1 witnesses are all current or former Bully's employees encompassed by the disclosure categories listed in Plaintiffs' Initial Disclosures. They are: (1) Ryan Broman; (2) Shannon Johnson; (3) Derek Larson; (4) Shannon Schmid; (5) Hugo Hernandez; (6) Yesenia Elizabeth Valle; (7) Roberto Galarza Martinez; (8) Francisco Galarza Martinez; (9) Alfredo Santiago

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

**a.      The Category 1 Witnesses Were Always Known To Plaintiffs And Subsumed in Plaintiffs' Own Rule 26 Disclosures Categories.**

On March 26, 2015, Plaintiffs served their initial Rule 26 disclosures of witnesses in this matter ("Initial Disclosures").  ECF No. 117-1.  These disclosures listed five groups of witnesses that "pursuant to Fed. R. Civ. P. 26(a),"  Plaintiffs deemed were "likely to have discoverable information . . . . *Id.* at 1:21-28; Fed. R. Civ. P. 26(a)(1)(A)(i).  The first group of witnesses disclosed was the following:

> A.  **Every person who** at any time during the relevant class period (three years prior to the date the complaint was filed) **worked for Defendant**, whether **as a salaried Kitchen Manager, Assistant Kitchen Manager, salaried Cook, salaried General Manager, salaried Assistant General Manager or hourly paid employee**.

ECF No. 117-1, 2:1-6 (emphasis added).

Plaintiffs asserted that these individuals were essential to the prosecution of their claims as they "are percipient witnesses who may have knowledge of Defendant's policies, practices and procedures with respect to the Plaintiffs and other Kitchen Manager, Assistant Kitchen Manager and salaried Cooks, regarding Defendant's sports bar locations." *Id.* at 21:6-9.

The second and third groups of witnesses listed in Plaintiffs disclosures were as follows:

> B.  Every salaried Kitchen Manager, Assistant Kitchen Manager and salaried Cook who worked for Defendant during the relevant class period. **These current and former employees are the most knowledgeable witnesses to testify** about the tasks they performed, how much time they spent performing such tasks and the hours they worked.

> C.  Plaintiffs' supervisors as well as the supervisors of current and former salaried Kitchen Managers, Assistant Kitchen Managers and salaried Cooks, including district and/or regional managers.  **These witnesses will have knowledge** about Defendant's policies and practices and expectations regarding Defendant's sports bar locations.   The names and contact information of these witnesses are exclusively in the custody and control of Defendant.

---

Aparicio; (10) Sara Satterlee; (11) Rick Jester; (12) Rob Bills; (13) Kristine Catron; (14) Rocio Alvarado Camacho; and (15) Jose Ortiz Galarza.

*Id.* at 21:12-22 (emphasis added).

The fourth group of witnesses was then succinctly identified as "[a]ll Witnesses identified by Defendant," and the final group of witnesses ("Additional Witnesses") listed the names of 29 specific individuals who Plaintiffs described as "**[a]dditional witnesses** with knowledge of Defendant's operating policies and procedures . . . ." *Id.* at 21:23-22:3 (emphasis added). [11]

### 2. Throughout The Litigation, Plaintiffs Represented To The Court And To Defendants That They Would Be Relying On The Categories Of Witnesses Listed In Their Rule 26 Disclosures.

Plaintiffs' Initial Disclosures included language reserving Plaintiffs' "right to augment, supplement, or modify these disclosures pursuant to Fed. R. Civ. P. 26(e)" (ECF No. 117-1, 1:23-27) which provides a party the opportunity to "supplement or correct" a disclosure where the "party learns that in some material respect the disclosure [] is incomplete…." Fed. R. Civ. P. 26(e)(1) – (e)(1)(A).  However, up and until the day before the discovery cutoff, Plaintiffs made no effort to alter or amend their reliance on the witness categories they had initially proposed and to which both parties had relied.

Plaintiffs' First Supplemental Rule 26 Disclosures were made on January 6, 2016, almost a year after the original Complaint was filed in this matter.  ECF No. 117-2.  That disclosure added two individuals to Plaintiffs' fifth category of Additional Witnesses.  *Id.*  No changes were made to any of the other witness categories.  *Id.*  The next day, on January 7, 2016, Plaintiffs served their Second Supplemental Rule 26 Disclosure.  ECF 117-3.  This disclosure added one individual to

---

[11]    The documents disclosed in Plaintiffs' Initial Disclosures reiterated their view that all current and former KM's, AKM's, cooks, and hourly paid employees (as well as those who supervised them) were essential witnesses to this matter.  To that end, the 26 categories of documents disclosed as relevant to this matter by Plaintiffs included: (1) Payroll and time records for all Plaintiffs and others similarly situated; (2) job descriptions for all positions within Defendant's sports bar locations; and (3) pay records for all hourly employees of Defendant.  ECF No. 117, 5:12-7-13.  Additionally, while Plaintiffs repeatedly attempt to assert they were prejudiced by not having any information about the Supplemental Witnesses, it must be noted that over the course of discovery Plaintiffs receive voluminous amounts of information about them.  *See* e.g. ECF No. 117, n.3.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

Plaintiffs' list of Additional Witnesses as well one additional document, but made no changes to the Plaintiffs' witness categories. *Id.*

In fact, and by Plaintiffs' own admission, it was not until December 15, 2016, through their Fifth Supplemental Rule 26 Disclosures ("Plaintiffs' Fifth Disclosures"), that Plaintiffs sought to remove the witnesses categories from their Rule 26 Disclosures. *See* Plaintiffs' Reply To The January 11, 2017 Joint Case Management Report ("Pltfs.' Reply") (ECF No. 118), 9:25-26 (acknowledging that <u>the day before the close of discovery</u>, Plaintiffs removed the "catch all" categories on which they had previously led Defendants to rely.)

Notably, Plaintiffs Fifth Supplement was made <u>the day after</u> Plaintiffs received Defendants' Eighteenth Supplemental Rule 26 Disclosures (which contained the Supplemental Witnesses). It is therefore telling that in addition to removing all references to prior witness categories, Plaintiffs also added a new category of witnesses in this disclosure: "All Witnesses identified by Defendants in their **<u>Seventeenth Supplemental Rule 26 Disclosures</u>**." (Emphasis added). In doing so, Plaintiffs intent was clear. They were aware that almost all of the Supplemental Witnesses were encompassed by Plaintiffs' prior disclosure categories, and therefore realized that by repeatedly asserting that all individuals in those categories were appropriate trial witness, Plaintiffs had waived any argument (or would likely be estopped from claiming) that the Supplemental Witnesses were untimely disclosed. Plaintiffs' awareness of this point is underscored by their subsequent efforts to conceal the truth from this Court when questioned as to when they became aware of the Supplemental Witnesses and why they waited almost three weeks after the Supplemental Witnesses were disclosed to allege a Rule 26 violation. To that end, during the January 17, 2017, oral argument on this matter, counsel for Plaintiffs told the Magistrate:

> The disclosure at issue was the 18th [served on December 14, 2016], which came in two days before the close of discovery. And **<u>frankly, or candidly</u>, <u>I didn't really look at the disclosure until between the Christmas vacation, in the middle of that week, Christmas and New Year's</u>. <u>That's when I realized that they were adding 19 new witnesses</u>** two days before the close of discovery. Immediately after discovering that, after the New Year holiday, I called the Court in order to set this conference as soon as possible, so that we could bring it to the Court's attention.

**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179

**Ex. G January 17, 2017, Transcript ("Jan. Tr."), 6:9-19** (emphasis added). There is simply no way Plaintiffs can reconcile this statement with the fact that they undeniably changed the entire structure of their Rule 26 disclosures (by eliminating the various categories and specifically excluding all the Supplemental Witnesses from those categories) <u>the day after</u> they received Defendants Eighteenth Supplemental Rule 26 Disclosures. *See e.g.* ECF No. 117-1; ECF No. 118-5. Moreover, pursuant to Plaintiffs' counsel's own statements to the Court, this fact should weigh heavily in determining whether it was reasonable for Defendants to rely on the witness categories that Plaintiffs both introduced and used throughout the litigation. **See Feb. Tr. at 70:19-24** (Plaintiffs' counsel stating it is important for the Court to weigh credibility based on whether a party had made misrepresentation to the Court).[12]

Since March 26, 2015, and up until the day before the discovery cutoff, Plaintiffs represented to Defendants that all five categories of individuals included in their Initial Disclosures, and all but one supplement thereto, were relevant percipient witnesses likely to be called at a trial in this matter. *See* e.g. ECF Nos. 117-1, 117-3, and 117-4. Thus, had either party called any of the Category 1 witnesses at trial, neither party could have objected since both parties had knowledge of these witnesses. This is the only plausible reason why Plaintiffs would: (1) make last minute revisions to remove previously identified witness categories from their Rule 26 Disclosures; and (2) purposefully mislead the Court as to when they had actual knowledge of the Supplemental Witnesses.

> **3.    Plaintiffs Were Well Aware That Defendants Had Adopted The Witness Categories Listed In Plaintiff's' Initial Disclosures As Viable Trial Witnesses.**

On May 22, 2015, Plaintiffs propounded their first set of interrogatories on Bully's ("First Set of Interrogatories"). *See* ECF No. 117-5. Request Nos. 4, 5, and 6 of this First Set of

---

[12] Transcript: "And I think it's important, when the Court is weighing the arguments that are made, and assessing the credibility of counsel, to reference the fact, as we stated in our reply brief, the [the other party]… made numerous false statements that are demonstrably false based upon the evidence we presented."

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179

Interrogatories asked Bully's to identify "all witnesses who support" its contentions that Kitchen Managers, Assistant Kitchen Managers, and Cooks were "exempt from the overtime pay requirements of the Fair Labor Standards Act." *Id.* at 3:24 - 4:7.   Similarly, Requests Nos. 10, 11 and 12, instruct Bully's to identify "all witnesses who support" its contentions that any unpaid overtime awarded to Kitchen Managers, Assistant Kitchen Managers, and Cooks "should be calculated in accordance with 29 C.F.R. section 778.114." *Id.* at 4:14 - 23.  Requests Nos. 21 through 24 then sought the identity of all witnesses in support of Bully's Fifth, Seventh, Ninth, and Twentieth Affirmative Defenses.  *Id.* at 5:17-24.

On July 15, 2015, Bully's responded to the First Set of Interrogatories.  ECF No. 117-6.  In response to Requests Nos. 4-6, Bully's identified 14 specific individuals and (in a similar fashion as Plaintiffs' Initial Disclosure) also identified "each of the General Managers, Assistant General Managers, Kitchen Managers, Cooks, and Assistant Kitchen Managers employed during the three years preceding this initiation of this lawsuit."  *Id.* at 11:19 - 13:1.  Thereafter, in response to Requests Nos. 10 - 12 and 21 - 24, Bully's again identified its own kitchen managers, assistant kitchen managers, and cooks (*Id.* at 14:14 - 15:16), as well as its "general managers" and "assistant general managers."  *Id.* at 20:1 - 21:16.

At no time did Plaintiffs object to the nature of these responses or seek to compel additional information regarding the witnesses identified therein.  **See Ex. H, Declaration of Calder Huntington ("Huntington Decl."), ¶¶7-8.**  Moreover, these same responses were later reiterated to Plaintiffs on October 11, 2016, when Bully's served its Supplemental Responses to Plaintiffs' First Set of Interrogatories.  *See* ECF No. 117-6.  Yet, again, no effort was made by Plaintiffs to object to any of the witnesses identified by Defendants.[13]  In fact, throughout the meet and confer

---

[13]     *See also,* Def.'s Reply, (ECF No. 118), n.4 (Explaining that in Defendants' responses and supplemental responses to interrogatories served on defendant Jo Sonner.  Ms. Sonner was also asked to identify witness in support of Defendants' various affirmative defenses and responded by identifying the same classes of individuals (General Managers, Assistant General Managers, Kitchen Managers, Cooks, and Assistant Kitchen Managers) that were previously identified by both Bully's and Plaintiffs.)

**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

1   conversation regarding Defendants' interrogatory responses, Plaintiffs' counsel never objected to

2   the fact the Defendants' responses that incorporated the witness categories list in Plaintiffs own Rule

3   26 disclosures. *Id.*   Additionally, with respect to witness testimony that would be relevant to this

4   matter, Defense counsel regularly discussed with Plaintiffs' counsel how testimony that had yet to

5   be adduced from current and former employees of Defendants would be integral and essential in

6   demonstrating the duties of KM's and AKM's. *Id.* at ¶6.[14]

7                    **2.    Category 2 Witnesses**

8           The relevance of the four Category 2 witnesses (Steven Brazelton, Mark O'Driscoll, Shila

9   Morris, and Jason Toloti) were made known to both parties over the course of deposition testimony

10  that occurred less than two months before the discovery deadline.  Accordingly, there is no merit to

11  any contention that these witnesses were secreted away from Plaintiffs.

12          As set forth in Section A of this Statement of Facts, the relevance of Mr. Brazelton and Mr.

13  O'Driscoll was established during the deposition of Opt-in Plaintiff Demetrio Gonzalez when he:

14  (1) denied being responsible for coordinating with food vendors; and (2) renounced his participation

15  in the submission of his own Form I-140.  **See supra, Section A, n.7; n.8.**  Similarly, the importance

16  of Ms. Morris and Mr. Toloti also came to light during a deposition that occurred less than two

17  months prior to the close of discovery.

18          To that end, during the November 10, 2016, deposition of Feliciano Ramirez Santos, he was

19  asked a series of questions regarding his current place of employment.   In response, Mr. Santos

20  indicated that he was currently working for two companies: (1) Squeeze In; and (2) Flowing Tide.

21  *See* ECF No. 117 Santos Depo. at 10:14-21.  Therefore, the inclusion of Shila Morris and Jason

22  Tolotti (two individuals who could attest to the nature of Mr. Santos current employment) a mere

23  eight days later can hardly be characterized as untimely or improper.  These individuals are the

24

25

26

---

27  [14]      *See* also, ECF No. 117, 7:1-8:15 (Detailing how the Joint Case Management Reports

28  Submitted by the parties made clear the Plaintiffs repeatedly represented that Category 1 Witnesses were intended to be viable trial witnesses).

respective owners or co-owners of the restaurants where Mr. Santos now works.  To the extent Mr. Santos represented to those individuals: (1) that he performed management duties while working for Defendants; (2) was accustomed to being managed by KM's or AKM's duties while employed at Defendants; or (3) to the extent he is currently performing management duties at those companies based on their belief that he is was former manager at Bully's – that information is highly relevant and Defendants are entitled to call Mr. Tolotti and Ms. Morris to testify on that issue.  There is no evidence that Plaintiffs had knowledge that Mr. Tolotti or Ms. Morris were relevant to this matter until Mr. Santos disclosed they were his current employers.  Accordingly, there is no basis under which to assert that these witnesses were untimely disclosed after being included in a supplemental witness disclosure approximately four weeks later.  See, Defendants' Eighteenth Disclosure (ECF No. 114-1).

## III.    ARGUMENT

### A.    Legal Standard For Objections And Reconsideration Of A Magistrate Judge's Ruling.

A party may serve and file objections to a magistrate's order on a non-dispositive pretrial matter within fourteen (14) days.  Fed. R. Civ. P. 72(a).  A district judge may reconsider a non-dispositive matter referred to a magistrate judge but may only modify the magistrate's ruling where it is shown to be "clearly erroneous or contrary to law."  LR IB 3-1; Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  Under this standard, "the district judge must affirm the magistrate judge unless it is left with the definite and firm conviction that a mistake has been committed." *Ideal Elec. Co. v. Flowserve Corp.*, 230 F.R.D. 603, 606 (D.Nev.2005) (citing *Burdick v. Comm'r Internal Revenue Serv.*, 979 F.2d 1369, 1370 (9th Cir.1992)) (internal quotations omitted).  An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Manley v. Zimmer*, No. 3:11-CV-00636-RCJ, 2014 WL 4471662, at *4 (D. Nev. Sept. 10, 2014) (citing *Tompkins v. R.J. Reynolds Tobacco Co.*, 92 F.Supp.2d 70, 74 (N.D.N.Y.2000).

However, were a magistrate judge rules on a dispositive motion, the magistrate does not make a final order, but instead issues findings and recommendations to the district judge.  Fed. R.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

Civ. P. 72(b).   Those findings and recommendations are then subject to de novo review by the district judge.  LR IB 3-2(b); Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

Here, under either standard of review, the  Order must be overturned as the exclusion of nineteen witnesses disclosed by Defendants prior to the close of discovery was not only erroneous but also inconsistent with the Federal Rules of Civil Procedure, as well as case law in this circuit which addresses the specific circumstances that are at issue here: (1) whether any of the nineteen witnesses were disclosed in violation of Rule 26; and (2) where a witness was disclosed in violation of Rule 26, what remedy would be appropriate pursuant to remedy the violation under Rule 37.

Moreover, the Order fails to address whether each individual witness was appropriately disclosed pursuant to Rule 26.  It also fails to address the five factors that the Ninth Circuit has held courts must be considered in fashioning an appropriate remedy for any alleged violation of Rule 26, before ultimately imposing the drastic sanction of excluding all Supplemental Witnesses. To that end, the Court's failure to consider these factors is most significantly demonstrated by the fact the Order also excludes Mr. Brazelton, despite the fact that there is no dispute regarding his inclusion as a witness. *See* Pls. Reply (ECF No. 118) at 15:9-10.  ("Plaintiffs have no objection to allowing Bully's to add Mr. Brazelton as a witness in this case.")

Additionally, the case law on which the Order does rely in imposing the most extreme sanction available under Rule 37 is readily distinguishable from the instant matter as it concerns extreme situations where one party made additional disclosures <u>years after the close of discovery</u>, <u>relied on its own improper categorization of witnesses</u>, or where <u>years of dilatory actions by counsel</u> warranted the exclusion of a witness.  None of this authority addresses disclosures made <u>prior</u> to the close of discovery or (as in this case) a situation where defendants sought to disclose individuals already included in witness categories originally proposed <u>by plaintiffs</u>.   Moreover, and despite the fact that the matter was fully briefed before the Court, the Court made no effort to apply the doctrines of equitable estoppel and/or judicial estoppel with respect to Plaintiffs' attempts to capitalize on a discovery dispute that was undeniably of their own making.   For these reasons and as further set forth herein, the Magistrate's February 15, 2017, order should be overturned.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

**B.**     **The Magistrate Judge's Ruling Is  Not Consistent With The  Law.**

     **1.**     **The Court Improperly Shifted The Burden Of Proving A Rule 26 Violation From Plaintiffs To Defendants.**

While it is unclear under exactly what standard the Court determined that a Rule 26 Violation occurred, case law provides that it is the party alleging a violation of Rule 26 that has the burden of showing that such violation occurred. *See e.g. Izzo v. Wal-Mart Stores, Inc.*, No. 215CV01142JADNJK, 2016 WL 409694, at \*2 (D. Nev. Feb. 2, 2016) (citations omitted) (Holding that the burden of persuasion under Rule 26(c) is on the party seeking the protective order); *Oskel v. Pardee*, No. 2:11-CV-154-GMN-NJK, 2013 WL 1315736, at \*2 (D. Nev. Mar. 28, 2013) ("The Plaintiff having filed the motion to strike, has the initial burden of showing how [the witness'] testimony violates Rule 26.") [15]

Here, however, irrespective of the standard being applied, the Court's Order effectively begins with the premise that because the names of Defendants' supplemental witnesses were disclosed two days prior to the close of discovery, those disclosures are *per se* untimely and in violation of Rule 26.[16]  To that end, without any analysis, the Court' improperly shifts the burden on Defendants to "justify their failure" to disclose theses witnesses.  Order, 7:19.  This mistake is critical.  In fact, the first two paragraphs of the portion of the Order devoted to "Legal Analysis and Discussion" commence with a recitation of Rule 26 and Rule 37, respectively.  Order, 7:1-18. The next paragraph then begins with the premise that Defendants' disclosures are untimely and then sets to explain how such conduct cannot be excused.  *Id.* at 7:19-22.

By failing to explain why the disclosures were *per se* untimely, before addressing whether witness exclusion is a proper remedy, the Court deprives Defendants of their due process rights

---

[15]     *See also* **Ex. G, Jan. 17, 2017 Tr., 12:17-21** (Court construing Plaintiffs' motion to exclude Supplemental Witnesses a motion for protective order); Order, 6:1-21 (Court subsequently construing Plaintiffs' motion as a motion to strike).

[16]     *cf.* **Feb. Tr., 33:8-11** (Court acknowledging that it was not until midway through oral argument that it realized the Supplemental Witnesses had actually been disclosed prior to the discovery cutoff.)

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

with respect to the fact that before a Rule 37 remedy can be put in place, a Rule 26 violation must be substantiated. *Oskel* 2013 WL 1315736, at *2. It also underscores one of the reasons that the Order must be set aside, namely because Plaintiffs have failed to offer any evidence that Defendants secreted the Supplemental Witnesses or somehow improperly disclosed them by including them in a supplement, served prior to the discovery cutoff. In fact, based on the information in the Order, the only evidence available as to when Defendants allegedly became aware that the majority of these witnesses had information relevant to trial was at most several weeks before a witness was included in Defendants' Eighteenth Supplement. *See* Order, 5:14-6:19 (citing to chart listing the dates of employment and dates that declarations were signed by eleven of the Supplemental Witnesses).

Importantly, based on the chart cited in the Order, the majority of the witnesses identified in the Eighteenth Supplement only provided declarations to Defendants a mere thirteen days before they were subsequently disclosed. Order, 5:14-6:19. These facts are not in dispute. Yet, they do not appear to have even been considered as part of the Court's analysis.

Instead, the Court appears to take the position that since the majority of the Supplemental witnesses were current or former employees of Defendants, Defendants should somehow have been able to: (1) interview them more quickly; or (2) divine what they would have testified to, prior to interviewing them. Again, neither notion is supported by any of the evidence presented to the Court or any of the authority cited in support of the Order. Moreover, both notions are contrary to case law previously provided to the Court by Defendants. *See Kirby v. Homax Prod., Inc.*, No. C06-1153 RSL, 2007 WL 2600838, at *3 (W.D. Wash. Sept. 7, 2007) (Rejecting a party's argument that nine witnesses identified nine days before the close of discovery was untimely.) As in this case, in *Kirby*, the party seeking to exclude the witnesses argued that the party disclosing them must have known what information they possessed well in advance of actually disclosing them. However, as the Court was presented with no evidence in support of that argument, it was summarily rejected:

> Though the Court agrees that Rule 26(e)(1) requires the plaintiff to supplement its initial disclosures "at appropriate intervals," defendant has not established that plaintiff's supplemental disclosure

in this case, made nine days before the close of discovery and well in advance of trial, was untimely. Indeed, the only evidence contained in defendant's motion indicating that the disclosures should have been provided sooner is defendant's assertion that the newly disclosed witnesses' "knowledge regarding Plaintiff's employment should have been known to Plaintiff long before July 27, 2007." Defendant offers no factual basis for this assertion, nor does it provide the Court with the context necessary to evaluate its accuracy. In his response, plaintiff contends that he disclosed the nine additional witnesses to defendant "within a short time of discovering their relevance" to the case. Defendant filed no reply. Without more, the Court cannot conclude that plaintiff's supplemental disclosure was untimely.

*Kirby*, 2007 WL 2600838, at *3 (internal citations omitted).

Similarly, in this matter, Plaintiffs have provided this Court with <u>no evidence</u> that Defendants knew anything about the nature of the testimony of the Category 1 Witnesses prior to interviewing them and/or obtaining their declarations. *See* Order, in its entirety. There is no evidence that the declarations were obtained years ago and kept hidden until the last moment. Or that Defendants interviewed these witnesses at any time prior to the date on which the declarations were signed. Rather, based on the dates of the declarations, the only fact that is clear – is that in the final two months of discovery (while numerous depositions were being taken), Defendants set out to interview additional witnesses in support of its defenses. Once Defendants became aware that these witnesses could provide testimony in support of its defense, they were disclosed – prior to the discovery cut off. *See e.g.* Feb. Tr. at 23:12-19; 38:15-21.

Accordingly, in holding – without any evidentiary support – that these witnesses were *per se* untimely disclosed, the Court appears to have arbitrarily drawn a bright line requiring a party to disclose a potential witness almost as soon as the witness has been interviewed. However, not only does no such rule exist, but it is also contrary to a legion of case law on the matter. *See* FN 16, *infra*. Such a holding is inconsistent with the fact that Plaintiffs themselves disclosed <u>five</u> additional witnesses <u>37</u> days before the close of discovery without any indication as to when they learned that these witnesses had information that Plaintiffs intended to use at trial. ***See* Ex. I, Plaintiff's Third Supplemental Rule 26 Disclosures;** ECF No. 117, 13:9-15. It is also inconsistent with the fact that Plaintiffs themselves have submitted documentation to the Court detailing how they interviewed witnesses 47 days and 24 days prior to disclosing them. ECF No.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

117, 13:3-22.  Accordingly, the Order must be reversed as it was improper for the Court to arbitrarily hold Defendants to a different discovery standard only to then impose the harshest sanction available against Defendants for violating that standard.  This is particularly true where Plaintiffs have also entirely failed to meet their burden to show that any of the Supplemental Witnesses were disclosed in violation of Rule 26.[17]

> ### 2.  The Order Must Be Reversed As The Court Neglected To Conduct An Individualized Inquiry As To Each Of The Supplemental Witnesses.

In finding that the Supplemental Witnesses were *per se* untimely, the Court failed to address the fact that Defendants' knowledge as to the relevance of each witness was ascertained at different points in time.  Moreover, the Order is devoid of any explanation as to why the Category 2 Witnesses, who were admittedly not employees of Defendant, should be included in the same analysis as the Category 1 Witnesses.  This fact is notably demonstrated by the Court's decision to strike Mr. Brazelton as a witness even though Plaintiffs do not contend he was improperly disclosed.[18]

As the relevance of each of the Supplemental Witnesses became apparent to Defendants at different times and based on different portions of Plaintiffs' deposition testimony, it is unclear how the Court is able to simply gather all these witnesses together and exclude them en masse.  In fact, the only way that such a holding could be proper would be for the Court to conclude that any witness not disclosed by a certain date, was disclosed in violation of Rule 26, irrespective of when a party may have first learned about whether the witness had relevant testimony.  Such an arbitrary

---

[17]   *See also*, ECF 117, 12:1 – 18:15, (articulating the disclosure requirements pursuant to Rule 26, including: (1) how a party is required to supplement their disclosures "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing"; (2) establishing that no rigid time frame exists for supplemental disclosures; (3) distinguishing inapplicable and misleading authority cited by Plaintiffs; and (4) explaining where one party has disclosed a witness, the failure of another to do so is harmless.)

[18]   ECF No. 118, at 15:9-10; ("Plaintiffs have no objection to allowing Bully's to add Mr. Brazelton as a witness in this case."); Feb. Tr. at 51:1-4 (Defense counsel stating: "And, also, Your Honor must know that the parties have basically agreed that Mr. Brazelton, one of the witnesses, is out, so we're talking, now, about [18 witnesses].")

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

rule is not only inconsistent with the parties obligation to continue to supplement their disclosures pursuant to Rule 26, it is also entirely incompatible with case law.[19]  Nevertheless, that appears to be what the Court elected to do by focusing a significant portion of the Order on a premise that Defendants were required to inform the Court of any planned Rule 26 supplements during the December 7, 2016 Case Management Conference ("December Conference").  Order, 4:9-5:13; 8:2-10.  *See also* Feb Tr. 7:12-14 (Court stating that, "defendants did not have leave to supplement their initial disclosures," despite the fact that discovery had not yet closed.)

> 3.    **The Court's Reliance On The December Conference Is Misplaced As At No Point In This Case Has The Court Ever Set A Moratorium On Supplemental Disclosures As Part Of Any Case Management Conference.**

As set forth in the Order, "based on their conduct throughout discovery, the parties demonstrated that their understanding that the court expected the parties to raise and resolve discovery disputes so the parties could complete their work."  Order, 9:6-8.  Defendants acknowledge this fact, and therefore respectfully submit that Court's reliance on the December Conference is misplaced.

While Defendants are now cognizant of the Court's view that any planned Rule 26 supplement should have been disclosed at the December Conference, Defendants respectfully submit that they were aware of no such requirement at the time they disclosed the Supplemental Witnesses.  **Hall Decl. ¶¶3-4; Huntington Decl. ¶9.**  This case has been before the Court for over two years and at no point have Defendants violated any order of this Court or been sanctioned for any untoward conduct.  Prior to the December Conference, the parties had held four other Case Management Conferences ("CMC's") (ECF Nos. 57, 85, 90, and 105).  At no point in any of these prior CMC's did the Court state that leave would be required before a party could supplement their Rule 26 disclosures. **Hall Decl. ¶¶3-4; Huntington Decl. ¶9.**  Similarly, after each of these prior

---

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179

---

[19]    *See* Def.'s Reply, 12:20-13:2 (Noting, *inter alia*, "[r]ule 26(e) does not specifically mandate when supplements must be made, only that they must be made in a timely manner." *Calvert v. Ellis,* 2015 WL 631284, *3 (D. Nev. Feb. 12, 2015) (internal citations omitted).

case conferences, the Court issued a Minute Order memorializing the substance of these Conferences.  ECF Nos. 57, 85, 90, and 105.  None of these Minute Orders impose any limitation on the parties ability to make supplemental Rule 26 disclosures.  *Id.*

It goes without saying, that had Defendants believed that they were required to make the Court aware of any additional witnesses during the December Conference, they would have done so.  However, as Defendants did not have such an understanding, they continued to make supplemental disclosures as they had always done, pursuant to Rule 26.  *See* Advisory Committee Notes to 1993 Amendments Fed. R. Civ. P. 26(e) ("Supplementations need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches.)  Where a court otherwise wishes to control the timing of Rule 26 supplements, "[i]t may be useful for the scheduling order to specify the time or times when supplementations should be made." *Id.*

As such, had the Court wished to set deadlines for Rule 26 Supplements it appeared to have that authority, and could have clearly done so through any of the numerous CMC's held in this matter.  Yet, it never did.  ECF Nos. 57, 85, 90, and 105.  For that reason, and given that no such restriction was ever imposed on the parties, Defendants had no cause to believe they were forbidden from supplementing their disclosures as otherwise contemplated by Rule 26.  Notably, Plaintiffs also appear to have held a similar belief as they too supplemented their Rule 26 disclosures after the December Conference.  *See* ECF No. 118-5, Plaintiffs' Fifth Supplemental Rule 26 Disclosures (served on December 15, 2016 – the day before the discovery cutoff – adding Nikki Nevarez as a witness and including "[a]ll Witnesses disclosed by Defendants in their Seventeenth Supplemental Rule 26 Disclosures" as additional witnesses).

Additionally, while the Court's Order notes that it had previously issued two discovery extensions with the admonition that "[t]here will be no further extensions" (ECF Nos. 62; 66), in neither of those instances did the Court condition the extension on a limitation of Rule 26.  *Id.*  Notably, not only does the December Order fail to include any language precluding further extensions, but that order is devoid of language suspending the parties' rights and/or obligations to supplement their disclosures in accord with Rule 26.  *See* ECF No. 112.  Rather, the December

**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

1    Order sets forth the fact that the parties had a discovery dispute, that the dispute has been

2    adjudicated by the Court and that a discovery extension has been granted until January 30, 2017.

3    *Id.*    With respect to the CMC Report filed on December 6, 2017 (ECF No. 110), in preparation

4    for the December Conference, there is similarly nothing in that document that purports to suspend

5    Rule 26 or any other rule of civil procedure.    Instead, the December Report memorializes the

6    parties' joint request, at that time, to extend the discovery cutoff to complete five discrete tasks.

7    *Id.*    That was because, at that time the report was submitted, those were the only discovery items

8    that the parties had identified as needing to be addressed.    There is nothing in the December Report

9    stating that the parties would be prohibited from supplementing their disclosures based on the

10    discovery that had yet to be done <u>or</u> any discovery that they intended to conduct <u>prior</u> to the

11    discovery cut off.    *Id.*

12        Moreover, the purpose of the CMC's was for the parties to bring their discovery disputes

13    and concerns to the Court's attention.    Where there were no discovery concerns, CMC's were

14    vacated or moved to subsequent dates.    *See e.g.* ECF Nos. 60, 94.    In this case, Defendants did

15    not believe there would be any dispute as to the Supplemental Witnesses given: (1) they were

16    disclosed prior to the discovery cutoff; (2) they were disclosed within weeks of being identified;

17    and (3) the majority were subsumed in Plaintiffs own witness categories.    Additionally, on

18    November 9, 2016 (approximately five weeks before the December 16, 2016 discovery cutoff),

19    Plaintiffs had supplemented their own disclosures to include five new witness, none of whom

20    Defendants objected to as all were current/former employees of Defendants, and therefore already

21    included in the witness categories that the parties had relied on since first introduced in Plaintiffs'

22    Initial Disclosures.    *See* **Ex. I**

23        Accordingly, to the extent that the Court contends that Defendants should have known that

24    any further Rule 26 disclosures would be foreclosed after the December CMC, Defendants

25    respectfully submit that their failure to do so was substantially justified as no such requirement

26    had even been made in regard to any prior CMC, including the two prior CMC's where the Court

27    stated that no further discovery extension would be granted.    ECF Nos. 62, 66.    *A fortiori*, to the

28    extent that Defendants were actually required to inform the Court of any planned supplemental

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179

disclosures during the December Conference, Defendants submit that their failure to do so was harmless as all of the Supplemental Witnesses were disclosed the following week. *See* ECF No. 117-1.  Again, there is no authority before this Court, and Defendants know of none, that would hold that as a result of this seven day delay, Plaintiffs were somehow subjected to irreparable prejudice.

> **4.** **Any Alleged Rule 26 Violation Would Have Been More Appropriately Remedied By A Short Extension Of Discovery.**

> **a.** **As A Threshold Matter, De Novo Review Of The Order Is Appropriate As The Magistrate Lacked The Authority To Impose Sanctions That Would Result In A Dispositive Outcome.**

"A judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court, **except a motion** for injunctive relief, for judgment on the pleadings, **for summary judgment**, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, **to dismiss or to permit maintenance of a class action**, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action." 28 U.S.C.A. § 636 (b)(1)(A).  Accordingly, where discovery sanctions to do not fall within the motions excepted in section 636(b)(1), they are within magistrates jurisdiction. However, were sanctions are characterized as dispositive, "then the magistrate had authority only to 'enter into the record a recommendation for disposition of the matter' to be reviewed by the district court de novo." *See  Maisonville v. F2 Am., Inc.*, 902 F.2d 746, 747 (9th Cir. 1990) (holding that a magistrate lacks authority to issue case dispositive sanctions);  LR IB 3-2(b); Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

Here, during oral argument, the Court acknowledged that exclusion of the Supplemental Witnesses would essentially amount to granting a dispositive motion against Defendants.  Feb. Tr. 49:6-10 ("Okay.  So I mean, the drastic sanction is to say you lose. I'm excluding all of these people.  Okay?  So that's one sanction.  And you're right, its drastic.  And the courts are loathe to have cases not litigated on their merits for whatever reason, but they do it.")  Accordingly, in recognizing that exclusion was akin to a dispositive ruling against Defendants, the Magistrate

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada  89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

exceeded her statutory authority in electing to strike all of the Supplemental Witnesses.    28 U.S.C.A. § 636 (b)(1)(A); *Maisonville* 902 F.2d at 747.

Instead, pursuant to Rule 72(b), if the Magistrate believed dispositive sanctions were appropriate, the Magistrate was required to "enter a recommended disposition, including, if appropriate proposed findings of fact," <u>not</u> a final order on the matter. Fed. R. Civ. P. 72(b)(1). Therefore, given that the Magistrate lacked authority to finally determine a dispositive matter, to the extent the Order should not immediately be set aside, it should more appropriately be construed as a report and recommendation subject to de novo review. Fed. R. Civ. P. 72(b)(3).

### 2.    The Court's Order Must Be Overturned As It Fails To Engage In The Proper Analysis Before Ruling That The Supplemental Witnesses Must Be Excluded.

Rule 37(c)(1) does not require courts, in all instances, to exclude evidence as a sanction for a late disclosure that is neither justified nor harmless.  In fact, the Ninth Circuit has identified five factors that courts may consider in deciding whether to impose Rule 37(c)(l)'s exclusion sanction: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [other parties]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Nihart v. Nat'l Park Serv.*, No. 2:12-CV-00291-APG, 2014 WL 1415198, at *1 (D. Nev. Apr. 10, 2014) (citing *Wendt v. Host International, Inc.*, 125 F.3d 806, 814 (9th Cir.1997).

However, under this circuit's law, where a Rule 37 sanction amounts to the dismissal of a claim, a court is "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith" and "also to consider the availability of lesser sanctions." *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247–48 (9th Cir. 2012) (citations omitted).  Here, not only is the Order silent as to any of the five elements that warrant consideration in fashioning a remedy under Rule 37, it is also devoid as to any mention of willfulness, fault or bad faith.  *See* Order, in its entirety.  *See also* Feb. Tr. 24:23-25:11 (Contrary to implying any bad faith on the part of Defendants, the Court acknowledged that through no fault of their own, Defendants

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179

discovery efforts were hampered when the associate who had worked on the matter since its inception accepted an in-house job in October of 2016).[20]

Additionally, with respect to the requirement that the Court consider less drastic sanctions, no such analysis is present in the Order. *Id.* This is striking as during oral argument the Magistrate stated on the record that trial of this matter needed to occur within three years of when the initial complaint was filed, in this case, by "January 2018." Feb. Tr. 40:15-20. Thereafter, Defendants suggested that a thirty or forty day discovery extension would allow Plaintiffs time to depose any of the Supplemental Witnesses "and still be very timely for the January [2018] deadline. Feb. Tr. 54:7-13.[21]

During oral argument the Court also noted that although discovery had been stayed for an extended period of time in this matter, that fact would not be construed against the parties. Feb. Tr. 4:3-6. However, in the Court's Order, the fact that discovery was stayed for an extended duration is only mentioned in passing and without any reference to whether the length of the say might warrant an additional discovery extension as an appropriate remedy pursuant to Rule 37. In fact, the Order makes no mention that the parties requests for a 67-day extension on November 13, 2015, was to "engage[] in mediation instead of continuing discovery." ECF No. 64 at 2:10-11. Similarly, the Order also mischaracterizes the duration of the stay as being from January 21, 2016 through May 2, 2016. Order at 2:14-16 (citing ECF No. 82 as the order lifting the stay). However, the stay was not actually lifted until over two months later, on July 18, 2016. ECF No. 85 at p.2 ("The Court lifts of [sic] the stay of discovery.")

---

[20]    Transcript:  "THE COURT: Isn't really what happened here that the associate working on this case left and went in-house and, as a consequence of that, a lot of the real -- [] -- discovery that was going on, confusion arose -- and understandably. Understandably. And so counsel for the defendants, in light of that, have been doing their best to repair that problem, the gap in the work that needed to be done in this case, and part of what occurred here was a function, a result of that unfortunate circumstance."

[21]    Pursuant to ECF No. 126, a bench trial of this matter is now set for December 4, 2017.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

To that end, while the Order twice notes that this matter is over twenty-four months old (Order at 1:20; n.1), at no point does the Order acknowledge that for approximately one third of that time (over 8 months), neither party was engaged in discovery.  *See* Order, in its entirety.   This further demonstrates why the Order must be set aside.  Not only were less drastic sanctions never specifically discussed by the Court, but to the extent an analysis of less drastic remedies is implied by the recitation of the procedural history of the matter, that procedural history is incorrect.  *See R&R*, 673 F.3d at 1248.  ("Because it does not appear that the district court conducted this inquiry [considering lesser sanctions or willfulness, fault, or bad faith], and because it did not make the requisite findings, it erred when it excluded [evidence pursuant to Rule 37].")[22]

### 3.    The Magistrate Misapplied The Applicable Case Law.

Assuming, arguendo, that the Magistrate did have the authority to issue a dispositive sanction without making a finding of willfulness, fault, or bad faith (and without considering less drastic sanctions), it is submitted the Order must still be set aside as: (1) the case law on which it relies does not support the sanctions issued by the Court; and (2) the Order entirely fails to address the fully briefed and unrebutted arguments set forth in Defendants' Reply regarding why Plaintiffs should be estopped from claiming a Rule 26 violation or any remedies pursuant to Rule 37.[23]

To that end, in support of its holding that Defendants violated Rule 26 by supplementing their witness disclosures two days prior to the close of discovery, the Court cites to a single case from the Northern District of California as well as two cases from the Eastern and Northern Districts of New York, respectively.  However, and in addition to the fact that none of these cases are binding on the Court, <u>all</u> of these cases involve factually disparate situations.

---

[22]    Surprisingly, *R&R* is one of the cases relied on by the Court in its legal analysis as to the requirements set forth by Rule 26.  Order, 7:7-9.

[23]    As these arguments were already fully briefed for the Court, Defendants hereby incorporate them by reference.  *See* Def.'s Reply, 18:3-20-2.

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000♦ Fax: (775) 786-6179

The Court first relies on *Benjamin v. B & H Educ., Inc.,* No. 13-CV-04993-VC, 2015 WL 6164891, at *2 (N.D. Cal. Oct. 16, 2015), for the proposition that a party is precluded from using a "catch-all" disclosure reference as a way to subsequently introduce declarations in support of its own motion for summary judgment.  Order, n.2.  However, the key element in *Benjamin* is that it was the same party that introduced the "catch-all" language who was later forbidden from taking advantage of it.  *See Benjamin*, 2015 WL 6164891, at *2 ("plaintiffs argue that they identified Nelson by including a catch-all reference to 'other current and former Student-Employees of Marinello Schools of Beauty' in their [plaintiffs] Rule 26 disclosures") (emphasis added). *Benjamin* does not involve a situation where plaintiffs  adopted  various witness disclosure categories  for use over an approximately two year period only to disavow their own category system the day before the discovery cutoff.  Additionally, *Benjamin* concerned a situation where one party had already filed for summary judgment before the other party attempted to disclose additional witnesses.  It did not involve witnesses being disclosed prior to the discovery cutoff.  Accordingly, as there is no similarity between *Benjamin* and this matter, it should not be considered persuasive authority for excluding 19 witnesses en masse without any consideration of an alternate and more appropriate remedy.

Similarly, the Courts citations to *Lujan v. Cabana Mgmt., Inc.,* 284 F.R.D. 50, 72-73 (E.D.N.Y. 2012), and *See Kullman v. N.Y.,* No. 07-CV-716 (GLS/DRH), 2009 WL 1562840. at *6-8 (N.D.N.Y. May 20, 2009), are also misplaced.  *Lujan* and *Kulman* stand for the proposition that a name mentioned in passing through discovery is insufficient to meet the disclosure standards of Rule 26.  However, Defendants are not arguing that the Supplemental Witness are timely because some of them may have been mentioned in depositions testimony or other documents submitted over the course of discovery.  To the contrary, Defendants are asserting that the Supplemental Witnesses are timely because they were disclosed shortly after Defendants learned they had testimony that could rebut Plaintiffs post-stay assertions that KM's and AKM's had essentially no management responsibilities.

Moreover, the fact of the matter is that, here, the identity of the Supplemental Witnesses were admittedly not limited to "passing references."  The majority were subsumed in categories identified

HOLLAND & HART LLP
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179

by Plaintiffs as witnesses, then re-disclosed over the course of discovery, and finally added to Defendants' own Rule 26 witness list prior to the discovery cutoff.  In other words, there is no basis to rely on *Lujan* or *Kullman* as persuasive authority for the sanction of exclusion where neither case is similar to this one.  *Lujan* concerned a case were 35 declarations were disclosed after the close of discovery and as part of an opposition to a Rule 23 motion to certify.  *Kullman* concerned a situation where the dilatory acts of plaintiffs' counsel (over a series of years) led to the preclusion of a witness.  In fact, the Court in *Kullman* specifically noted that but for the repeated bad acts of plaintiffs' counsel, a continuance would have most likely been the appropriate remedy – not exclusion.  *Kullman*, 2009 WL 1562840, at *9  ("the possibility of a continuance exists in every case to mitigate the effects of a party's delays, omissions, and defective discovery responses.  In nearly every case, a continuance provides the appropriate remedy.")

Accordingly, as *Benjamin*, *Lujan*, and *Kullman* appear to comprise the entirety of case law relied on by the Court to justify exclusion of all Supplemental Witness, it is respectfully submitted that this provides yet another basis for the Order to be overturned.  These cases are neither on point nor relevant to the instant inquiry.  If anything, they stand for the proposition that in entirely different situations, a sanction of exclusion may be appropriate – but only where a continuance otherwise would not suffice to cure any prejudice.  They are therefore of limited use in instances like the present, where supplemental disclosure were made before the discovery cutoff, where those disclosures were necessitated by the actions of the other party, and where there is no evidence of bad faith, fault, or willfulness.

## III.   CONCLUSION

For these reasons the Order should be set aside the Supplemental Witness should be allowed to provide testimony in this matter.

DATED February 27, 2017.

*/s/ Peter D. Navarro*_____
Anthony L. Hall, Esq.
Nevada Bar No. 5977
Peter D. Navarro, Esq.
Nevada Bar No. 10168
HOLLAND & HART LLP
*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on the 27th day of February 2017, I served a true and correct copy of the foregoing **DEFENDANTS' OBJECTIONS TO MAGISTRATE JUDGE'S RULING (ECF No. 122 )(LR IB 3-1)(LR IB 3-2) AND REQUEST FOR RECONSIDERATION BY THE DISTRICT COURT JUDGE** by electronic transmission to the parties on electronic file and/or depositing same in the United States mail, first class postage fully prepaid to the persons and addresses listed below:

Charles A. Jones, Esq.
Kelly McInerney
JONES LAW FIRM
9585 Prototype Court, Suite B
Reno, NV 89521
*Attorneys for Plaintiffs*

/s/ Marie Twist
Marie Twist

9573250_1

**HOLLAND & HART LLP**
5441 Kietzke Lane, Second Floor
Reno, Nevada 89511
Phone: (775) 327-3000◆ Fax: (775) 786-6179